## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Alan Braid M.D.** <br><br> v. <br><br> **Oscar Stilley** <br> **Felipe Gomez** <br> **et al.** | Case **#21cv5283** <br><br> *"Interpleader"*    **FILED**   CR <br> 10/11/2021 <br> THOMAS G. BRUTON <br> CLERK, U.S. DISTRICT COURT |

### Defendant F. Gomez FRCP 12(b)(1) Motion to Dismiss Interpleader Defendant Felipe Gomez For Lack of Controversy and Lack of Subject Matter Jurisdiction

NOW COMES INTERPLEADER DEFENDANT FELIPE GOMEZ, and respectfully MOVES this Court to immediately dismiss him from this matter, before further adversarial proceedings in this action, where Plaintiff's own complaint [1] pleads Movant out of Interpleader as read on its face, as controlled by its attachment [1-3]. *Attachment A - Complaint [1] With Attachments.*

To wit, Dr. Braid's sole jurisdictional "hook" is that Movant and Co-Defendants are allegedly competing over the same pot of money, the $10,000 that S.B. 8 states is available after a *successful* suit. *Complaint [1] at ¶5* (emphasis added here). Specifically, Dr. Braid asserts interpleader by asserting "a physician *may* be required to pay statutory damages only once. The three suits against Dr. Braid thus each assert entitlement to a single damages award." (Emphasis added). *Id.*

As Dr. Braid has established as a matter of public record for the Court here, the alleged claimants have only begun the process, and the complaint does not, and cannot, state, none of the alleged claimants have qualified for the award, such prerequisite made clear by the letter of S.B. 8 (assuming *arguendo* S.B. 8 was valid), and such being the necessary event prior to the Plaintiff here being subject to any claim.

The fact that he admits that he "may" be required to pay alone obviates

1

interpleader, as speculation cannot be the basis for the need for an actual Article III controversy allowing interpleader.

Worse for Dr. Braid's attempt at forum shopping (which undersigned does not frown on in and of itself), Movant's complaint, both that attached to the complaint, and the one's actually filed (presented in the Motion for Judicial Notice) DOES NOT seek the $10,000 in the claim for relief, or anywhere else, and this is a Verified Motion, and Movant states hereby, under oath, he is NOT presently seeking any monetary penalty or money from Dr. Braid, as the *Gomez v Braid* complaint attached to the Interpleader demonstrates.

This fact, alone, deprives this Court of any interpleader or other jurisdiction over Movant, as the claim that he is seeking money in competition with the others is false and belied by the attachment [1-3] to the complaint, which controls over the text of the complaint. *London v. RBS Citizens, N.A., 600 F.3d 742, 747 n.5 (7th Cir. 2010)* (noting that in event of conflict between complaint and attachment thereto that forms basis of plaintiffs' claims, attachment prevails and *dismissal is warranted if attachment negates plaintiffs' claims*).

Thus, no further inquiry is needed, as Article III mandates that an actual, present, case or controversy exist, and as does FRCP 22. Article III and Interpleader jurisdiction cannot be manufactured by merely claiming it exists in the complaint in conclusory fashion. Here, Attachment [1-3], clearly negates the complaint's claim that Movant has sought money from Dr. Braid, or anything for that matter, other than he appear in the State case instead of attempting to avoid that matter by filing here instead (and refusing to discuss settling the very complaint he complains of).

The Seventh Circuit has also warned against attempting to bring an interpleader to try to litigate pre-existing or foreign claims that rightfully should be litigated in the underlying matter, something that the complaint here makes quite clear is being attempted, at least in part.

2

Under the Constitution, federal courts have no Article III power over a person in front of it where, the at the time the complaint was filed, there was no standing, subject matter jurisdiction or Article III claim or controversy pleaded or in fact. *Bierman v. Marcus 246 F.2d 200, 203 (3d Cir. 1957)* (Cited by Judge Duffy in *duPont v O'Keefe, 365 F.2d 141, 143, (7th Cir 1966)* (lack of real fear of conflicting claims prevents standing and divests court of all article III power other than to dismiss).

That threshold mandate that jurisdiction and standing exist, for a Court to proceed beyond dismissing the complaint, applies in all cases, including FRCP 22 interpleader, and the alleged controversy mut be real, not fictitious.

Movant believes that *Bierman v. Marcus 246 F.2d 200, 203 (3d Cir. 1957),* which was cited by Judge Duffy in *duPont v O'Keefe, 365 F.2d 141, 143, (7th Cir 1966)* (lack of real fear of conflicting claims prevents standing and divests court of all article III power other than to dismiss), and the line of cases following it are controlling here, in determining that Braid is attempting to create a fictional adversity, where there was and can be none as Movant's complaint 21 CI19920 in fact DOES NOT seek the $10,000 that Briad asserts as the Article III and FRCP 22 hook.

In *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837(1984),* the High Court held that where a statute is unambiguous, and Congress has directly addressed the question at issue, a court must give effect to Congress' language and its stated intent as written.

FRCP 22 as written requires that there be a real case or controversy, just as Article III does, and also mandates that the pleader be "uninterested", and that interpleader not be used to try to avoid claims made elsewhere, and the attachments to the complaint here indicate that Braid] clearly was not disinterested, but in fact is attempting to avoid the state matters where he could make his arguments directly to a Texas Judge, and where Braid has refused to participate in the state court matters." .

3

Quite simply, the Doctors' attachments prove that his Complaint here is NOT ripe, by the fact that instead of competing judgments ending parallel claims, he has attached only the as of yet parallel, not competing, claims, again pleading himself out of Interpleader, as none of the alleged claimants has the right to any monetary claim merely by filing a lawsuit.

Thus, there is no right or reason to have Movant implead. Relatedly, FRCP 19(a) states:

(1)     Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A)     in that person's absence, the court cannot accord complete relief among existing parties; or

(B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)     as a practical matter impair or impede the person's ability to protect the interest; or

(ii)     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Movant asserts that FRCP 19(1)(A) does not require the further presence of Defendant Felipe Gomez, as the relief sought, a decision as to whose claim is superior, is not ripe as to Movant, and Movant makes no such claim to ripen. FRCP 19(a)(1)(B) is not applicable as Movant's state complaint asserts no interest in the $10,000 at this point, and thus being dismissed will not impair any such interest, and similarly there is no interest in the alleged funds at issue that undersigned can assert to expose Plaintiff to multiple risks or obligations

FRCP 21 (Misjoinder and Nonjoinder of Parties) states:

 "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

4

FRCP 21 allows the Court to drop undersigned, given the record here evinces that Plaintiff and undersigned have no Article III case or controversy or issues between them (here).

FRCP 57 (Declaratory Judgment) provides in relevant part that "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate", meaning that the fact that undersigned has state claims related to S.B. 8, is not a reason for interpleader, or for the case to be held over to attempt to prejudice other remedies. *Fulton Nat. Bank of Atlanta v. Hozier, 267 U. S. 276, 280 (1925)* ("[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit").

The fact that state cases exist, which cannot be enjoined by this Court as this is a FRCP 22 interpleader, allows Plaintiff a forum to object to same in, and wherein to seek resolution thereof, and not by bringing what amounts to a defense or counterclaim there, in apparent attempt to avoid appearing and defending as is required of any party defendant. *Id.; Amer. Gen Life v. Jones, 18cv0211, SDAL (11.13.2008).*

Article III of the Constitution, and FRCP 12(b)(1), limit the jurisdiction of the District Court to actual controversies, which fact FRCP 22 cannot be used to avoid given it is the Court, not the rule or statute, that is subject to Article III regardless of the nature of any action in front of it.

As there is no controversy between undersigned and any party as to the ownership of the as of yet Doctor Braid's judgment-free funds, none of the alleged claimants having any real claim in fact, there is no subject matter jurisdiction over undersigned, there being no actual or imagined controversy.

**WHEREFOR**, per Article III and FRCP 12(b)(1), and as set forth above, Movant respectfully requests to be dismissed from this matter, having no interest nor anything

to be had here, and there existing a proper forum for Dr, Braid to complain to which he was invited to do and has actively declined.

By: *s/ Felipe Gomez, PRO SE*   Date: 10.11.21

Felipe Gomez

fgomez9592@gmail.com

Chicago, IL 60657

312.509.2071

### NOTICE AND CERTIFICATE OF FILING AND SERVICE

I, Felipe Gomez, PRO SE, hereby notify and certify that I filed the foregoing Motion  with the Clerk of the Court through E-mailing it to the NDIllinois Pro Se Dropbox for filing into the CMF/EC system, and served a copy to Plaintiff 's and any Appearing  CoDefendant/ counsel  by way of the e-filing system, on  this date

Certified By: s/ *FLIPE GOMEZ,*    Date: **10.11.21**

Felipe Gomez Pro Se
1922 W. Belmont Ave 1F
Chicago IL 60657
312.509.2071
T312.509.2071@gmail.com

# ATTACHMENT A

# COMPLAINT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ALAN BRAID, M.D., | |
| Interpleader Plaintiff, | |
| v. | Case No: |
| OSCAR STILLEY; FELIPE N. GOMEZ; WOLFGANG P. HIRCZY DE MINO, PH.D., AKA TEXAS HEARTBEAT PROJECT, | |
| Interpleader Defendants. | |

## COMPLAINT FOR INTERPLEADER AND DECLARATORY JUDGMENT

Interpleader Plaintiff Alan Braid, M.D. brings this action for interpleader and declaratory judgment and states as follows:

## I.    PRELIMINARY STATEMENT

1.    On September 1, 2021, Texas Senate Bill 8 ("SB8"), codified as Texas Health & Safety Code §§ 171.201 *et seq.*, took effect, implementing a near total ban on pre-viability abortions in Texas in defiance of nearly fifty years of Supreme Court precedent and the protections enshrined in the United States Constitution. The Supreme Court has made clear that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992); *accord Roe v. Wade*, 410 U.S. 113 (1973). Texas's ban directly conflicts with this well-settled law and subjects abortion providers to ruinous monetary penalties through a civil enforcement

1

scheme uniquely crafted to evade judicial review and to harass abortion providers by subjecting them to enforcement proceedings in which they have no fair prospect of defending themselves.

2.      In an attempt to evade pre-enforcement review, Texas's ban bars government officials—such as district attorneys or the health department—from directly enforcing the prohibition and instead subjects abortion providers to civil actions that can be brought by "[a]ny person," seeking injunctive relief, a statutory penalty of at least $10,000, and costs and attorney's fees.  Tex. Health & Safety Code §§ 171.207(a), 171.208(a)–(b).

3.      The Texas Legislature and the law's proponents intended SB8 to interfere with healthcare providers' provision of abortion care by making it too costly and risky for providers to provide that care. So far, the law has had its desired effect. To date, nearly all Texas abortion providers have ceased providing healthcare prohibited by SB8, leaving women in Texas unconstitutionally deprived of abortion access.

4.      Interpleader Plaintiff Alan Braid, M.D., a licensed physician in Texas who has practiced as an OB/GYN for the past 50 years, is the exception. On September 18, 2021, the Washington Post published an opinion authored by Dr. Braid. In it, he described the difficult experiences his patients have encountered over decades of providing reproductive health care. Dr. Braid explained why, on September 6, 2021, he provided an abortion to a patient in violation of SB8's abortion ban.

5.      Three conflicting SB8 claims have now been asserted against Dr. Braid by three different claimants (the "Interpleader Defendants") from three different states in three different suits, each seeking the same damages award pursuant to SB8 for Dr. Braid's admitted violation on September 6. To SB8's proponents, the likelihood of strangers filing multiple, overlapping lawsuits against a provider is a feature of SB8, and not an accident. However, SB8 provides that,

2

for any given violation, a physician may be required to pay statutory damages only once. The three suits against Dr. Braid thus each assert entitlement to a single damages award; and Dr. Braid asserts that <u>none</u> of them has any right to damages because the law requiring that payment violates the United States Constitution.

6.     Dr. Braid brings this action in the nature of interpleader to determine who among the Interpleader Defendants and Dr. Braid has a right to the contested damages award and to avoid wasteful, vexatious and duplicative litigation and potentially conflicting rulings regarding entitlement to that stake.  Because Dr. Braid challenges the constitutionality of SB8 as a basis for asserting that none of the Interpleader Defendants is entitled to any recovery, he is filing and serving a notice of constitutional question under Fed. R. Civ. P. 5.1 concurrently with this Complaint.

## II.     THE PARTIES

7.     Dr. Braid is an individual residing in San Antonio, Texas and a citizen of Texas for diversity purposes. Dr. Braid is a licensed physician who has been providing reproductive health care, including abortion services, since the 1970s.

8.     Interpleader Defendant Oscar Stilley is an individual residing in Cedarville, Arkansas and a citizen of Arkansas for diversity purposes. On information and belief, Stilley has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

9.     Interpleader Defendant Felipe N. Gomez is an individual residing in Chicago, Illinois and a citizen of Illinois for diversity purposes. On information and belief, Gomez has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

10.    Interpleader Defendant Wolfgang P. Hirczy de Mino, Ph.D., aka Texas Heartbeat Project ("THP"), is an individual who resides in Bellaire, Texas and a citizen of Texas for diversity purposes. On information and belief, THP has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

## III.    JURISDICTION AND VENUE

11.    The Court has jurisdiction because Dr. Braid brings this Complaint for Interpleader and Declaratory Judgment pursuant to 28 U.S.C. §§ 1335, 1397, and 2361, with respect to the parties' competing claims to the $10,000 minimum penalty sought in Interpleader Defendants' respective complaints filed pursuant to SB8, Tex. Health & Safety Code § 171.208(a).

12.    Federal law authorizes Dr. Braid's claim for injunctive relief in 28 U.S.C. §§ 2202 and 2361. Dr. Braid's claim for declaratory relief is authorized by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Dr. Braid's claims for equitable relief are further authorized by the general legal and equitable powers of the Court.

13.    The claimants in this action are of minimally diverse citizenship as required for statutory interpleader actions; the amount in controversy exceeds $500.00; and Dr. Braid will, on the Court's authorization, deposit the amount in controversy with the Court's registry pending this action's resolution.

14.    Venue is proper in this District under 28 U.S.C. § 1397 because this is a civil action of interpleader or in the nature of interpleader under 28 U.S.C. § 1335 and is brought in a judicial district in which Gomez, one of the claimants, resides.

IV. **FACTS**

A. **SB8 Authorizes Individuals to Bring Civil Suit Against Healthcare Providers for Performing Prohibited Abortions.**

15.     SB8 § 3 added Subchapter H to Chapter 171 of the Texas Health & Safety Code. Newly-added § 171.204(a) of the Texas Health & Safety Code prohibits a physician from "knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child," or failed to perform a test to detect a so-called fetal heartbeat. The statute provides no exception for pregnancies resulting from rape or incest, or for fetal health conditions that are incompatible with sustained life after birth. Rather, the only exception is a very narrow "medical emergency" exception. Tex. Health & Safety Code §§ 171.204(a), 171.205(a).

16.     SB8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." *Id*. § 171.201(1). Embryonic cardiac activity can typically be detected beginning at approximately six weeks of pregnancy, measured from the first day of a patient's last menstrual period ("LMP"). Consequently, using SB8's "fetal heartbeat" definition, SB8 prohibits nearly all abortions after six weeks, which is before some individuals even learn of their pregnancy, and several months before viability.

17.     The embryonic cells that produce early cardiac activity described in SB8 have not yet formed a heart. The term "heartbeat" in SB8 thus covers not just a "heartbeat," but also early cardiac activity—more accurately, electrical impulses—present before full development of the cardiovascular system. Similarly, a developing pregnancy is properly referred to as an "embryo" until approximately ten weeks LMP, when it becomes a "fetus." So, despite SB8's use of the phrase "*fetal* heartbeat," the statute forbids abortion even when cardiac activity is detected in an embryo. *See id*. §§ 171.201(1), 171.201(7), 171.204(a) (emphasis added).

5

18.     No embryo is viable at the first point when cardiac activity can first be detected by ultrasound. Rather, viability generally does not occur until approximately 24 weeks LMP—approximately four months after the cutoff for abortions under SB8.

19.     SB8's enforcement provision empowers "Any person, other than an officer or employee of a state or local governmental entity" in Texas to bring a civil action against a physician who "performs or induces an abortion" in violation of SB8, as well as anyone who "knowingly engag[es] in conduct that aids or abets the performance or inducement of" an abortion that violates the statute, or who "intends" to provide, aid, or abet a prohibited abortion. Tex. Health & Safety Code § 171.208(a)(1)–(2). Liability for aiding and abetting abortion applies "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of" the statute. *Id*. § 171.208(a)(2).

20.     If a claimant prevails in an action brought pursuant to SB8's enforcement provision, a court "shall" award:

> (1)  injunctive relief sufficient to prevent the defendant from violating this subchapter or engaging in acts that aid or abet violations of this subchapter;
>
> (2)  statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter. . . and
>
> (3)  costs and attorney's fees.

*Id.* § 171.208(b)(1)–(3).

21.     Consequently, claimants filing suit pursuant to § 171.208(a) are awarded a minimum of $10,000 if they prevail on their suit. The statute does not set a maximum damages amount. However, while any person in the world may sue under SB8, only one claimant will be entitled to collect the statutory penalty for any given violation of SB8: Under § 171.208(c), a

court may not award relief in response to a violation of SB8 if the defendant shows that he or she previously paid statutory damages for that particular abortion performed or induced in violation of SB8.

**B.     Interpleader Defendants Filed Competing Suits Against Dr. Braid Alleging That He Violated SB8.**

22.     Dr. Braid is a physician who has been providing reproductive healthcare since 1972. On September 18, 2021, the Washington Post published Dr. Braid's op-ed entitled "Why I Violated Texas's Extreme Abortion Ban." In it, Dr. Braid described his and his patients' experiences and stated, "that is why, on the morning of Sept. 6, I provided an abortion to a woman who, though still in her first trimester, was beyond the state's new limit." Indeed, on September 6, 2021, Dr. Braid provided an abortion to a patient in her first trimester after detecting cardiac activity in the patient's pregnancy.

23.     After the Washington Post published Dr. Braid's opinion piece, three claimants—the Interpleader Defendants—filed competing suits against him, alleging that he provided abortion care in violation of SB8.

24.     Stilley filed his complaint ("Stilley Complaint") captioned *Oscar Stilley v. Alan Braid, MD*, Case No. 2021CI19940, in the 438th Judicial District Court of Bexar County, Texas, on September 20, 2021. A copy of the Stilley Complaint is attached as Exhibit A.

25.     The Stilley Complaint alleges that "On or about September 6, 2021," Dr. Braid performed an abortion and that "[t]he aborted fetus had a detectable heartbeat at the time of the abortion." The Stilley Complaint states that this violated SB8 and seeks "in no case less than the statutory minimum of $10,000," as well as an injunction prohibiting Dr. Braid from further violations of SB8 and costs and fees.

26. Gomez filed his complaint captioned *Felipe N. Gomez v. Dr. Alan Braid*, Case No. 2021CI19920, in the 224th Judicial District Court of Bexar County, Texas, on September 20, 2021. Gomez then filed an amended complaint ("Gomez Complaint"), adding additional defendants Planned Parenthood, South Austin; the United States; and the State of Texas, on September 23, 2021. A copy of the Gomez Complaint is attached as Exhibit B.

27. The Gomez Complaint alleges that Dr. Braid performed an abortion "on or about 9.6.21 where his patient was more than 6 weeks pregnant, and/or where the fetus had a detectable heartbeat, which Sec. 171.208(a)(1) declares is illegal." The Gomez Complaint cites to § 171.208, the enforcement provision of SB8 that provides that the court "shall award" injunctive relief, a minimum $10,000 damages payment for each violation, and costs and fees to a successful claimant.

28. THP filed its complaint ("THP Complaint") captioned *Texas Heartbeat Project v. Alan Braid, M.D.*, Cause No. 21-2276-C, on September 22, 2021 in the 7th Judicial District Court of Smith County, Texas. A copy of the THP Complaint is attached as Exhibit C.

29. The THP Complaint alleges that "before September 19, 2021, Defendant ALAN BRAID, M.D., knowingly performed an abortion in violation of SB8 and subsequently disclosed and/or publici[z]ed that fact. . ." The THP Complaint seeks a $10,000 statutory damages payment. While the THP Complaint does not identify September 6 as the date of the alleged abortion, the September 6 abortion is the only abortion that Dr. Braid performed after the effective date of SB8 and "disclosed and/or publici[z]ed" before September 19, 2021. Additionally, THP served a Request for Admission concurrently with his Complaint requesting an admission that "on or about September 6, 2021 you performed or induced an abortion on a patient after you detected cardiac activity in the fetus/embroy/unborn [sic] child in that patient's

womb." Ex. C at 6. On information and belief, the THP Complaint seeks damages for Dr. Braid's performance of the September 6 abortion.

**C.    An Interpleader Action Is Required to Resolve Conflicting Claims and to Avoid Duplicative Proceedings.**

30.    Each of the Interpleader Defendants, through their respective complaints (Exs. A–C), assert entitlement to a statutory damages payment for the abortion Dr. Braid disclosed performing on September 6, 2021. However, pursuant to § 171.208(c), Dr. Braid can only be required to pay the penalty in response to <u>one</u> claimant's suit and can assert that payment to one claimant as a defense to any other suits seeking damages for the September 6 abortion.

31.    SB8 violates the United States Constitution in light of, *inter alia*, the rights guaranteed under *Roe v. Wade*, 410 U.S. 113 (1973), and Dr. Braid is entitled to avoid or keep any payment allegedly owed for his violation of SB8.

32.    At least three claimants—the three Interpleader Defendants—each assert entitlement to the statutory damages payment for Dr. Braid's performance of the September 6 abortion, and Dr. Braid asserts that he is entitled to retain that money. Dr. Braid also faces a real risk of additional claimants, particularly in light of his highly publicized statements regarding the September 6 abortion and the fact that SB8 has a four-year statute of limitations, allowing for suits over this single act well into the future. Pursuant to § 171.208(c), only one claimant can collect the payment; Dr. Braid asserts that none can.

**D.    The Texas State Legislature Designed SB8 to Avoid Judicial Review Despite the Statute's Use of Judicial Officers to Implement Constitutional Violations.**

33.    The Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), establish that a state may not prohibit abortion before viability, and nearly 50 years of unbroken precedent has reaffirmed this

principle. Before SB8, courts have uniformly invalidated every state law that bans abortion at a point in pregnancy prior to viability.

34.     In light of SB8's clear violation of constitutionally protected rights, the Texas State Legislature has attempted to insulate SB8 from judicial review by shifting enforcement from the state to private citizens. SB8 thus does not provide for direct enforcement by law enforcement officials (and indeed purports to prohibit it), but instead deputizes private citizens to act as bounty hunters and sue any person whom the claimant believes has provided or aided or abetted an abortion in violation of the statute—or whom the claimant believes "intends" to do so.

35.     Public statements by SB8's drafters and supporters confirm that the intent behind the law was to "insulate the State from responsibility for implementing and enforcing the regulatory regime," *Whole Woman's Health v. Jackson*, 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021) (Roberts, C.J., dissenting). For example, the legislative director of Texas Right to Life stated that one of the "main motivations" for SB8's design is to block judicial review. *See* Emma Green, What Texas Abortion Foes Want Next, The Atlantic (Sept. 2, 2021), https://www.theatlantic.com/politics/archive/2021/09/texas-abortion-ban-supreme-court/619953/ (asserting that S.B. 8 was crafted out of "frustrat[ion]" with courts that "block[] pro-life laws because they think they violate the Constitution or pose undue burdens") (last visited Sept. 29, 2021).

36.     One of the attorneys principally involved in advising Texas on SB8 stated: "It is practically impossible to bring a pre-enforcement challenge to statutes that establish private rights of action, because the litigants who will enforce the statute are hard to identify until they actually bring suit." Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va. L. Rev. 933,

1001                n.270                (2018),                https://www.virginialawreview.org/wp-content/uploads/2020/12/Mitchell_Online.pdf (last visited Sept. 29, 2021).

37.     And Texas State Senator Bryan Hughes, one of the principal architects of SB8 in the Texas Legislature, confirmed this purpose when he informed reporters that he structured SB8 to avoid the fate of other "heartbeat" bills that have been struck down as unconstitutional. *See* Jacob Gershman, Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea, The Wall Street Journal (Sept. 4, 2021, 9:38 A.M.), https://www.wsj.com/articles/behind-texasabortion-law-an-attorneys-unusual-enforcement-idea-11630762683 (last visited Sept. 9, 2021). Senator Hughes made the point succinctly: "We were going to find a way to pass a heartbeat bill that was going to be upheld." *Id*. Senator Hughes elsewhere deemed the statute a "very elegant use of the judicial system." Jenna Greene, Column: Crafty lawyering on Texas abortion bill withstood SCOTUS challenge, Reuters (Sept. 5, 2021, 1:52 P.M.), https://www.reuters.com/legal/government/crafty-lawyering-texas-abortion-bill-withstood-scotus-challenge-greene-2021-09-05/ (last visited Sept. 29, 2021).

38.     While Texas has gone to unprecedented lengths to hide its attack on constitutionally protected rights behind a nominally private cause of action, it nonetheless has compelled its judicial branch to serve an enforcer's role. "It is doubtless true that a State may act through different agencies," including "its legislative, its executive, or its judicial authorities; and the prohibitions of the amendment extend to all actions of the State denying equal protection of the laws, whether it be action by one of these agencies or by another." *Virginia v. Rives*, 100 U.S. 313, 318 (1879). Awarding the monetary relief that SB8 authorizes (to plaintiffs who need not demonstrate any injury or other connection to the underlying abortion procedure) constitutes state activity designed to violate the Fourteenth Amendment rights of women in Texas. "That the

action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of th[e] [Supreme] Court." *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948). The Texas Legislature's attempt to distance government actors from any enforcement of its unconstitutional ban on pre-viability abortions, and thus to evade judicial review, ignores that judicial officers are government actors, too.

39.     Additionally, under the state-action doctrine, private actors may be found to function as agents or arms of the state itself and thus are bound by the Constitution's restrictions on state action. *See, e.g., Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). SB8 vests individuals with law-enforcement authority—a power traditionally reserved exclusively to a sovereign—in a manner that appears to be "unprecedented," *Whole Woman's Health v. Jackson*, 2021 WL 3910722, at *2 (Roberts, C.J., dissenting). Among other things, SB8 grants individuals with unsupervised authority to police SB8 violations, and enables them to obtain so-called statutory damages against violators without any showing of personal injury or even connection to an SB8 lawsuit.

40.     These individuals are also state actors to the extent they are significantly involved in conduct that would be unconstitutional if engaged in by the state itself or where Texas has sanctioned their conduct. *See, e.g., Reitman v. Mulkey*, 387 U.S. 369, 380-81 (1967) (finding state action where law "authorize[d] . . . racial discrimination in the housing market"). SB8 implicates this doctrine by expressly authorizing—indeed, empowering—individuals to engage in conduct that violates the constitutional rights of women throughout Texas when the state, itself, could not.

12

**E.**  **The Unique Enforcement Mechanisms and Procedures Provided in SB8 Weight Actions Brought Under the Statute Heavily Against Providers.**

41.  SB8 provides for enforcement mechanisms that differ significantly from those that typically apply to Texas litigants and which heavily tilt SB8 lawsuits strongly toward claimants. While the law contemplates that enforcement actions will be initiated by private actors, SB8's enforcement proceedings use Texas courts to enforce this unconstitutional law while imposing significant and unique burdens on defendants. These burdens help insulate SB8 plaintiffs from any costs or consequences of bringing suit, furthering the likelihood that defendants will face multiple, vexatious litigations over a single potential damages award.

42.  Venue in Texas usually lies only where the events giving rise to a claim took place or where the defendant resides, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), and a Texas state court may generally transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice," *id.* § 15.002(b).

43.  SB8 diverges from the general venue rules applicable in Texas. It allows "any person" to file an enforcement action in *their own* county of residence (if they are a Texas resident) and then block transfer to a more appropriate venue. *See* Tex. Health & Safety Code § 171.210(a)(4) (permitting suit in the claimant's county of residence if "the claimant is a natural person residing in" Texas); *id.* § 171.210(b) (providing that SB8 "action may not be transferred to a different venue without the written consent of all parties"). The claimant filing an enforcement action need not have any connection whatsoever to the defendant named in their suit—indeed, here, three claimants with no link to either Dr. Braid, the patient for whom he provided care, or to any patient of Dr. Braid's generally, filed separate enforcement actions in different counties after learning about the September 6 abortion from media outlets. As a result

13

of SB8's unique venue provision, abortion providers such as Dr. Braid may need to defend themselves in multiple, simultaneous enforcement proceedings in courts across the state.

44.    SB8 creates further imbalance by providing for one-way fee shifting in favor of SB8 claimants. Anyone who successfully brings a claim under the statute is entitled to recover costs and attorney's fees.  Yet defendants sued under SB8 cannot be awarded costs or attorney's fees if they prevail, regardless of how many times the defendant may have been sued or how meritless the claimant's suit may be in light of its contravention of federal law. *Id.* §§ 171.208(b)(3), 171.208(i).

45.    SB8 rigs proceedings against defendants in an astonishing manner by purporting to bar defendants from raising certain defenses. These include (1) that the defendant believed the law was unconstitutional; (2) that they relied on a court decision, later overruled, that was in place at the time of the acts underlying the suit; or (3) that the patient consented to the abortion. *Id.* § 171.208(e)(2), (3), (6). The statute also purports to prohibit defendants from asserting non-mutual issue or claim preclusion, or from relying as a defense on any other "state or federal court decision that is not binding on the court in which the action" was brought. *Id*. § 171.208(e)(4), (5). These provisions, not typically found in Texas legislation, are plainly intended to chill the provision of constitutionally protected services by making suits under SB8 uniquely difficult to defend such that a filed action is all but assured to lead to liability, with multiple, ruinous and vexatious litigation along the way.

46.    SB8 similarly contains a provision applying draconian, one-way fee-shifting measures to deter legal challenges to Texas abortion restrictions, including SB8, penalizing anyone who tries to bring such a challenge. Tex. Civ. Prac. & Rem. Code § 30.022 (this provision is the codification of SB8 § 4). Under this provision, anyone who seeks declaratory or

injunctive relief from enforcement of SB8 or any other "law that regulates or restricts abortion" can be forced to pay the attorney's fees of the party defending the restriction unless they win on *every* claim they bring. *Id*. If a court dismisses a claim brought by the law's challenger, regardless of the reason, or enters judgment in the other party's favor on that claim, the party defending the abortion restriction is deemed to have "prevail[ed]." *Id*. Even if a court enjoins the challenged abortion restriction, so long as the party defending the restriction prevails on a single claim—for instance, if the court rejects one claim pleaded in the alternative or dismisses another rendered moot by circumstance—the challenger and their attorney will be liable for the proponent's attorney's fees. No other law in Texas awards attorney's fees to the losing party or makes a party's own attorney jointly and severally liable for those fees.

47.     SB8 further treats abortion providers differently from other civil defendants by creating new rules of statutory construction and severability that only apply to state abortion laws and regulations. Tex. Health & Safety Code §§ 171.206, 171.212.

48.     The Texas Legislature's efforts to tip SB8 cases in claimants' favor have resulted in a statute that attempts to rewrite federal law. Under a consistent line of Supreme Court cases, states may regulate abortion services provided prior to viability, but they may not ban abortions. *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 269 (5th Cir. 2019), *cert. granted*, No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021). To determine the constitutionality of a state's abortion regulations, the Court has articulated an undue-burden balancing standard. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877–78 (1992). But as every court to consider a similar ban, including the Fifth Circuit, has concluded, a ban at six weeks can never survive constitutional review. *Jackson Women's Health Org. v. Dobbs* ("Jackson Women's II"), 951 F.3d 246, 248 (5th Cir. 2020) (striking six-week ban because "cardiac activity can be detected

well before the fetus is viable [and] [t]hat dooms the law"). Despite this precedent holding that pre-viability bans necessarily impose an undue burden, SB8 requires state courts to evaluate the burden anew *in every case* as part of an "affirmative defense" in enforcement actions—and even then would fundamentally "limit[]" that test. S.B. 8 § 171.209(c), (d).

49.     SB8 additionally directs state-court judges to ignore judgments and injunctions issued by federal courts, for example, by telling state courts to refuse to apply non-mutual collateral estoppel based on such judgments, and by mandating that they ignore whether a federal injunction expressly permitted activity by an abortion provider or other person sued in SB8 proceedings. Tex. Health & Safety Code § 171.208(e)(4), (5). In this manner too SB8 attempts to overrule federal authority via state law.

## FIRST CLAIM FOR RELIEF

### (Interpleader)

50.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

51.     The Interpleader Defendants and Dr. Braid assert conflicting claims to the statutory damages mandated by SB8 for Dr. Braid's performance of the September 6 abortion procedure. Dr. Braid cannot determine which of Interpleader Defendants is entitled to the statutory damages, as he believes none of them, or at most one of them, is entitled to those funds.

52.     Continued litigation of Interpleader Defendants' conflicting claims in separate courts will potentially expose Dr. Braid to conflicting judgments. It will further waste party and judicial resources, as Dr. Braid will be forced to defend simultaneously multiple actions over a single damages award.

53.     In the event one or more of Interpleader Defendants' claims are resolved, Dr. Braid will nevertheless be exposed to potential further vexatious litigation in light of his well-

16

publicized decision to violate SB8's provisions and the expansive enforcement mechanism allowing "any person" to sue for redress. While SB8 prohibits awarding the same statutory penalty for any given abortion more than once, the fact of prior payment is a defense to a lawsuit, not a bar to a new claimant initiating one. Dr. Braid may thus be forced to defend against multiple actions for the next four years, in addition to the three lawsuits he faces today.

54.     Dr. Braid will, on authorization from the Court, deposit the contested funds with the registry of the Court.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment – Fourteenth Amendment Substantive Due Process Defense)

55.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

56.     The Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), and decades of subsequent precedent, provide a constitutionally protected right to terminate a pregnancy before viability.

57.     SB8 prohibits pre-viability abortion when a "fetal heartbeat," as defined in the statute, is detectable. This occurs months before viability. SB8 consequently violates the substantive due process rights of Dr. Braid's patients to pre-viability abortion, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

58.     SB8 mandates that Texas's state judicial officers participate in and facilitate constitutional violations by requiring them to dispense remedies pursuant to SB8 that undeniably burden constitutionally protected rights.

59.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot not be subject to any other damages or injunction associated with the care he provided on

17

September 6, because SB8 is void for being in violation of the United States Constitution's substantive due process guarantee.

### THIRD CLAIM FOR RELIEF

**(Declaratory Judgment – Fourteenth Amendment Equal Protection Defense)**

60.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

61.     The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, thereby requiring the law to treat similarly situated persons in the same manner.

62.     SB8 treats abortion providers—and people who "aid or abet" the constitutionally protected right to abortion or "intend" to do so—differently from all other defendants in civil litigation in Texas.

63.     SB8 alters the procedural rules and limits the substantive defenses and arguments available to defend against suits filed under SB8, thereby singling out SB8 defendants for different treatment in violation of the United States Constitution's equal protection clause based solely on aiding patients in exercising a constitutional right. SB8's venue and fee-shifting provisions, its contemplation of claimants without any connection to an abortion, its elimination of defenses and arguments, and its attempt to rewrite federal law, each individually and in concert with one another subject SB8 defendants to disparate treatment.

64.     SB8's discriminatory enforcement provisions serve no legitimate government interest. Rather, they are animated by animus and are designed to burden the exercise of constitutional rights. SB8's enforcement provisions are also not narrowly tailored. On the contrary, they allow for broad enforcement by any person in the world against any person who provides, or aids and abet, or intends to do any of those things, without inquiry into actual harm

caused or other attendant circumstances. SB8's enforcement scheme consequently violates Dr. Braid's equal protection rights.

65.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6, because SB8 is void for violating the United States Constitution's equal protection clause.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment – Fourteenth Amendment Void for Vagueness Defense)

66.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

67.     SB8 imposes quasi-criminal penalties on persons who provide an abortion in violation of the statute's terms, aids or abets an abortion that violates those terms, or intends to do these things. These penalties include a punitive minimum damages award of $10,000, without any showing of harm and no maximum; an injunction prohibiting a provider from providing abortion care; and a requirement that the defendant pay costs and attorneys' fees.

68.     A law that imposes quasi-criminal penalties is void for vagueness, and thus violates the federal guarantee of due process, if it authorizes or encourages arbitrary and discriminatory enforcement, or fails to provide fair warning of its prohibitions so that ordinary people may conform their conduct accordingly.

69.     SB8 empowers arbitrary and discriminatory enforcement in violation of the Constitution by authorizing private individuals to enforce state law in violation of clearly established constitutional rights. Its terms incentivize plaintiffs to force abortion care providers—or even individuals a claimant believes "intend" to provide or assist an abortion—into court to

defend themselves, and to do so without the legal, procedural, and practical controls that might provide some check on government enforcement.

70.    SB8 fails to adequately inform regulated parties or potential claimants of what conduct the statute prohibits. Under SB8's terms, defendants may be held liable for violating the statute if a court decision permitting their conduct at the time it occurred is later overruled on appeal or by a subsequent court. Tex. Health & Safety Code § 171.208(e)(3). Similarly, under SB8, aiding-and-abetting liability may attach "regardless of whether [a] person knew or should have known that the abortion" they aided "would be performed or induced in violation" of the statute's ban. *Id.* § 171.208(a)(2). And the statute does not limit what conduct may constitute "aiding or abetting" a violation, leaving yet further questions as to what is prohibited. It does, however, provide liability for aiding or abetting a prohibited abortion—including by paying for it—"regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter." Imposing quasi-criminal penalties under such circumstances compounds the statute's failure to provide notice of what is prohibited.

71.    In all of these circumstances, the only way for people to ensure they do not run afoul of SB8 is by refusing to perform or assist with any abortion (or "intend" to do either)— though in light of the arbitrary enforcement mechanism allowing for any citizen to bring suit based on a defendant's perceived "intent," it is not clear how healthcare providers can ever ensure they will avoid suit. Due process does not permit such uncertainty, particularly where, as here, the challenged law threatens to inhibit the exercise of constitutionally protected rights.

72.    Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on

September 6, because SB8 is void for vagueness under the Fourteenth Amendment of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment – Federal Preemption Defense)

73.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

74.     The United States Constitution is the supreme law of the land, and the Supreme Court is the final arbiter of its meaning. State statutes inconsistent with rights conferred by the United States Constitution or other federal law must give way. SB8 defies this core principle undergirding the rule of law.

75.     SB8's terms require the defendant in an enforcement action to affirmatively prove that an award of relief in that action will impose an undue burden in order for that defendant to argue that the statute's terms violate the constitutional right to abortion. This conflicts with the Supreme Court's constitutional precedents, which hold that states may not prohibit pre-viability abortions and that the undue burden test should not be applied on a case-by-case basis in the face of such a ban.

76.     SB8's terms also disregard and purport to redefine the undue-burden standard articulated by the U.S. Supreme Court, in conflict with the Supreme Court's constitutional precedents, specifying the limited circumstances under which a court may find an undue burden and purporting to prohibit certain arguments to establish burden. Tex. Health & Safety Code § 171.209(c)–(d).

77.     SB8 additionally directs state-court judges to ignore judgments and injunctions issued by federal courts, *id.* § 171.208(e)(4), (5), contrary to decades of U.S. Supreme Court precedent. States cannot simply give federal-court judgments in federal-question cases "whatever

effect they would give their own judgments," but instead "must accord them the effect" that federal law provides. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001).

78.     SB8 violates the Supremacy Clause and is preempted because it is contrary to the Fourteenth Amendment to the U.S. Constitution.

79.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6, because SB8 conflicts with U.S. Supreme Court interpretations of the federal constitution that confer clear rights on Dr. Braid and his patients.

### SIXTH CLAIM FOR RELIEF
**(Declaratory Judgment - First and Fourteenth Amendments, Freedom of Speech and the Right to Petition)**

80.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

81.     Section 4 of SB8, codified at Texas Civil Practice & Remedies Code § 30.022, would make Dr. Braid and his attorneys jointly and severally liable to pay the costs and attorney's fees of any other party to this litigation if the Court either dismisses Dr. Braid's claim for such equitable relief or enters judgment in that party's favor. Asserting these equitable remedies as part of his defense against Interpleader Defendants' claims is a means for Dr. Braid and his attorneys to achieve a lawful objectives through the court system and serves as a form of political expression.

82.     Under § 30.022, only litigants seeking to block the enforcement of laws that "regulate[] or restrict[] abortion" or laws that provide funding to entities who "perform or promote" abortion are punished for taking a particular litigation position. In contrast, SB8 does

not impose a penalty on litigants whose goal is to uphold such laws, or who challenge laws that expand access to abortion or provide funding to abortion providers or advocates.

83.     In both its purpose and effect, § 30.022 is a viewpoint- and content-based restriction on Dr. Braid's expression in petitioning this Court. By threatening Dr. Braid and his attorneys with massive liability for fees and costs, § 30.022 necessarily chills the exercise of rights to free speech and to petition protected by the First Amendment.

## V.     **PRAYER FOR RELIEF**

WHEREFORE, Interpleader Plaintiff Alan Braid, M.D., requests that the Court enter an order or judgment against Interpleader Defendants including the following:

a.     Authorizing Dr. Braid to deposit the contested minimum damages amount of $10,000 to the registry of the Court;

b.     Determining who among the parties is entitled to the statutory damages award associated with a successful suit against Dr. Braid for his performance of the September 6 abortion, or any part of that award;

c.     Restraining all claimants from instituting or prosecuting any proceeding in any State or United States court affecting the contested damages award until further order of the Court;

d.     Discharging Dr. Braid of any further liability under SB8 for the care he provided to his patient on September 6;

e.     Declaring that Dr. Braid's conduct does not support imposition of an injunction restraining Dr. Braid's ability to provide abortion care;

f.     Declaring the Texas Heartbeat Act, §§ 171.201 *et seq*., unconstitutional;

g.     Awarding Dr. Braid costs and reasonable attorney's fees; and

h.     Granting any further relief as may be just and proper under the circumstances of

this case.

Dated: October 5, 2021

Respectfully submitted,

*/s/ Suyash Agrawal*

Suyash Agrawal
Alethea Anne Swift
MASSEY & GAIL LLP
50 E. Washington Street
Suite 400
Chicago, Illinois 60602
(312) 283-1590
sagrawal@masseygail.com
aswift@masseygail.com

Marc Hearron*
CENTER FOR
REPRODUCTIVE RIGHTS
1634 Eye St., NW
Suite 600
Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
CENTER FOR
REPRODUCTIVE RIGHTS
199 Water Street
22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org

Neal S. Manne*
Mary Kathryn Sammons*
Abigail C. Noebels*
Katherine Peaslee*
Richard W. Hess*
SUSMAN GODFREY LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 653-7827
nmanne@susmangodfrey.com
ksammons@susmangodfrey.com
anoebels@susmangodfrey.com
kpeaslee@susmangodfrey.com
rhess@susmangodfrey.com

Shannon Rose Selden*
Meredith E. Stewart*
Ebony Ray*
DEBEVOISE & PLIMPTON LLP
919 Third Ave.
New York, NY 10022
(212) 909-6000
srselden@debevoise.com
mestewart@debevoise.com
eray@debevoise.com

*Counsel for Interpleader Plaintiff Alan Braid, M.D.*
*Application for admission *pro hac vice* forthcoming

24

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

Alan Braid, M.D.

**DEFENDANTS**

Oscar Stilley, Felipe Gomez, Wolfgang P. Hirczy de Mino, Ph.D.

**(b)** County of Residence of First Listed Plaintiff  Bexar
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved

**(c)** Attorneys *(firm name, address, and telephone number)*
Suyash Agrawal and Alethea Anne Swift, Massey & Gail LLP
50 E. Washington St., Ste 400, Chicago IL 60602, (312) 283-1590

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Check one box, only.)*

☐ 1  U S Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government not a party.)*

☐ 2  U S Government
       Defendant

☑ 4  Diversity
       *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

| CONTRACT | TORTS | | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 530 General | ☐ 530 General | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 535 Death Penalty | | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 410 Antitrust |
| | ☐ 330 Federal Employers' Liability | | ☐ 540 Mandamus & Other | ☐ 751 Family and Medical Leave Act | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 345 Marine Product Liability | | ☐ 555 Prison Condition | ☐ 791 Employee Retirement Income Security Act | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans) | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | | | ☐ 480 Consumer Credit |
| | ☐ 360 Other Personal Injury | ☐ 370 Other Fraud | | | ☐ 485 Telephone Consumer |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 362 Personal Injury - Medical Malpractice | ☐ 371 Truth in Lending | | **PROPERTY RIGHTS** | Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | | ☐ 380 Other Personal Property Damage | | ☐ 820 Copyright | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | | | ☐ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 840 Trademark | ☐ 891 Agricultural Arts |
| | | | | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **SOCIAL SECURITY** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 861 HIA (1395ff) | |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations | **IMMIGRATION** | | ☐ 864 SSID Title XVI | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/ Disabilities- Employment | ☐ 462 Naturalization Application | | ☐ 865 RSI (405(g)) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | ☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition) | | **FEDERAL TAXES** | |
| | ☐ 448 Education | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| | | | | ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Check one box, only.)*

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District (specify)  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION (Enter U S Civil Statute under which you are filing and write a brief statement of cause.)
Complaint for Interpleader and Dec. Judgment under 28 U.S.C. §§ 1335, 1397, 2361

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:
☐ Check if this is a class action under Rule 23, F.R.C.V.P.

**Demand $**

CHECK Yes only if demanded in complaint:
Jury Demand: ☐ Yes  ☑ No

## IX. RELATED CASE(S) IF ANY *(See instructions):*   Judge _____   Case Number _____

## X. Is this a previously dismissed or remanded case?  ☐ Yes  ☑ No  If yes, Case # _____  Name of Judge _____

Date:  October 5, 2021       Signature of Attorney of Record  /s/ Suyash Agrawal

# Exhibit A

FILED
9/20/2021 11:16 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin
Bexar County - 438th District Court

**2021CI19940**

## IN THE DISTRICT COURT OF BEXAR COUNTY, TEXAS
_____ DISTRICT

OSCAR STILLEY                                                                    PLAINTIFF

v.                                    Case No. _____

ALAN BRAID, MD                                                              DEFENDANT

### PLAINTIFF'S COMPLAINT

Comes now Plaintiff Oscar Stilley (Plaintiff) and for his complaint states:

### JURISDICTION, PARTIES, VENUE

1.      Plaintiff brings this action pursuant to Texas Senate Bill 8, which became effective 9-1-2021.  The gravamen of this bill is a prohibition on any abortion after a fetal heartbeat is detectible, enforceable not by the state but by private citizens.

2.      Senate Bill 8 provides in pertinent part:

> Sec. 171.208.  CIVIL LIABILITY FOR VIOLATION OR AIDING OR ABETTING
> VIOLATION. (a)  *Any person*, other than an officer or employee of a state or local
> governmental entity in this state, may bring a civil action against any person who:
>       (1)  performs or induces an abortion in violation of this subchapter;
> (Emphasis added)

3.      Plaintiff is a disbarred and disgraced former Arkansas lawyer, residing at the address set forth at the bottom of this complaint.

4.      Plaintiff is currently on home confinement, in the custody of the United States Department of Justice-Federal Bureau of Prisons, (DOJ-FBOP) serving the 12 year of a 15 year federal sentence on utterly fraudulent federal charges of "tax evasion" and "conspiracy," all of which repeatedly changed and morphed away from the purported grand jury indictment, to whatever new theory the government chose to espouse at a given time.  Even so, the final

1

Copy from re:SearchTX

judgment and commitment order was based upon false testimony, claimed evidence which was clearly contradicted by the record, etc., all of which the government steadfastly refuses to acknowledge and correct despite ethical obligations promptly so to do.

5.    Plaintiff has consistently demanded due process, and continues his attack on the baseless felony conviction and sentence that has placed him in various federal prisons, and now on home confinement.  Plaintiff periodically makes mention of these efforts at www.bustingthefeds.com, often but not exclusively on the blog at that website.

6.    Plaintiff currently carries the appellation "federal felon," but remains confident that he will eventually receive total exoneration of all counts of conviction.

7.    Plaintiff despite all his legal troubles is ***NOT*** an officer or employee of any state or local governmental entity of the great State of Texas.

8.    Senate Bill 8 confers a private right of action upon "any person," without limitation as to residency or citizenship in the State of Texas, status as a felon, condition of "official detention," disbarment from the practice of law, public disgrace, difficulties getting due process, etc.

9.    Senate Bill 8 imposes no requirement of injury in fact.

10.    Plaintiff is therefore a qualified and suitable plaintiff, within the meaning of applicable law.

11.    Defendant Dr. Alan Braid, MD, (Defendant) is a doctor residing and practicing medicine within the geographical confines of Bexar County, Texas.

12.    Therefore this Court has jurisdiction and venue with respect to the Plaintiff's cause of action.

### COUNT 1 -    DEFENDANT HAS PERFORMED AN ILLEGAL ABORTION

2

Copy from re:SearchTX

13.     On or about September 6, 2021, Defendant performed an abortion on a woman more than 6 weeks pregnant, but within the first trimester of her pregnancy.

14.     The aborted fetus had a detectible heartbeat at the time of the abortion.

15.     Defendant knowingly performed this abortion contrary to the clear and unmistakable provisions of Senate Bill 8.

16.     On information and belief, Defendant is kind and patient and helpful toward bastards, but ideologically opposed to forcing any woman to produce another bastard against her own free will.

17.     On information and belief, Defendant has some understanding of the cruelty and abuse heaped upon bastards and social misfits, in Texas prisons.

18.     On information and belief, Defendant is ideologically opposed to cruelty and abuse of persons based upon their status as bastards or social misfits.

19.     On information and belief, Defendant would willingly devote substantial parts of his own personal resources, to assist in improving the correctional outcomes of Texas state prisons.

20.     On information and belief, Defendant is thoroughly convinced that his acts, which form the basis for this lawsuit, contribute mightily to human happiness and the advancement of human society.

21.     On information and belief, Defendant believes that his Elohim ("mighty ones," AKA "God" is entirely capable of giving a new body to replace a defective fetus, in the here and now, and not only "when you die bye and bye."

22.     On information and belief, Defendant believes that his Elohim ("mighty ones," AKA "God" is not offended because he aborts a defective fetus, at the request of the pregnant woman.

3

Copy from re:SearchTX

23.     On information and belief, Defendant has allowed his own personal ideology to cause him to violate the express provisions of Senate Bill 8, despite the potential consequences.

24.     Therefore, Defendant has extended to Plaintiff (and logical extension all other "persons") a complete and present cause of action for money damages and injunctive relief.

25.     Plaintiff on the morning of September 20, 2021 placed a call to the office of Defendant, to inquire whether or not Defendant might repent of his ideology as well as his deeds, and agree never to perform another abortion contrary to the enactments of the Texas legislature in general, and the requirements of Senate Bill 8 in particular.

26.     Plaintiff wasn't able to secure any such agreement despite respectful efforts.

27.     Plaintiff therefore brings this cause of action, for money damages and injunctive relief. WHEREFORE, premises considered, Plaintiff requests that this Court order Defendant to pay to Plaintiff the sum of $100,000, but in no case less than the statutory minimum of $10,000; for an injunction prohibiting Defendant from performing any more abortions contrary to the terms of Senate Bill 8; should Plaintiff retain a licensed attorney to prosecute this action, for reasonable attorneys fees actually expended; for all costs and expenses reasonably laid out, in the prosecution of this action; and for such other and further relief as may be appropriate, whether or not specifically requested.

By: /s/ Oscar Stilley                    September 20, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

4

Copy from re:SearchTX

**Exhibit B**

# IN THE DISTRICT COURT OF TEXAS
## BEXAR COUNTY

| | |
|---|---|
| **Felipe N. Gomez**<br>**Taxpayer/Pro Choice Plaintiff**<br><br>**v.**<br><br>**Dr. Alan Braid,**<br>**Provider**<br>**Planned Parenthood, So. Austin**<br>**Provider**<br>**United States of America**<br>**Interested Party**<br>**The State of Texas**<br>**Interested Party** | **Case No: 21CI 19920**<br><br>Uniform Declaratory Judgment Act, TCPRC Sec. 37<br><br>Texas Heartbeat Act (S.B. 8) Sec. 171.208 |

## FIRST AMENDED COMPLAINT

NOW COMES FELIPE GOMEZ a U.S.A. Citizen, and "person", as defined in Texas Heartbeat Act, Sec. 171.208, and per Tex. Civ. Prac. & Rem. Code Ann Sec 37 (Declaratory Judgement Act) as to interpreting S.B. 8, and Sec.171.208 COMPLAINS and PRAYS as follows:

1.  On information and belief Texas resident Defendant Dr. Alan Braid, 4499 Medical Drive, 230, San Antonio, TX 78229, admitted he performed an abortion in Texas on or about 9.6.21 where his patient was more than 6 weeks pregnant, and/or where the fetus had a detectable heartbeat, which Sec. 171.208(a)(1) declares is illegal.

2.  On information and belief, Defendant Planned Parenthood, South Austin Abortion Center, Austin TX, also has performed abortions past the 6 week deadline or when there was a detectable heartbeat, after 9.1.21, which S.B. 8

also holds is illegal.

3.     Plaintiff, a USA citizen and llinois resident, is not coordinating with Right to Life

or and Pro or Anti abortion group, is acting independently, and is a "person" as

defined in the Texas Hearbeat Act, which provides in relevant part:

> "Sec. 171.208.  (CIVIL LIABILITY FOR VIOLATION OR AIDING OR
> ABETTING VIOLATION). (a)  Any person, other than an officer or
> employee of a state or local governmental entity in this state, may bring a
> civil action against any person who: (1)  performs or induces an abortion
> in violation of this subchapter;  (b)  If a claimant prevails in an action
> brought under this section, the court shall award:  (1)  injunctive relief
> sufficient to prevent the defendant from violating this subchapter or
> engaging in acts that aid or abet violations of this subchapter;
> (2)  statutory damages in an amount of not less than $10,000 for each
> abortion that the defendant performed or induced in violation of this
> subchapter, and for each abortion performed or induced in violation of
> this subchapter that the defendant aided or abetted;

4.     Plaintiff asserts that Plaintiff, suing on the admission of defendant, clearly will

likely qualify  as "prevaling party" (also qualifying for a TRO, which Plaintiff

would agree, to in order for Texas Court(s) to have first call on the legality of a

state statute), should this matter proceed under S.B. 8.

However, prior to litigating that claim, Plaintiff  has a conflict as to what law

applies in this matter, *Roe v Wade*, 410 U.S. 113 (1972), or S.B. 8, in regards to

inter alia, whether prosecuting this complaint under S.B. 8 would be in violation

of Federal Law as espoused in *Roe*, which confirms that the protections against

invasion of privacy cannot be infringed by any State.

5.     To wit, and underlying Plaintiff's request for a declaratory judgement prior to

proceeding under S.B. 8, a Plaintiff intending to pursue an S.B. 8 action must

consider that he or she may in fact be infringing an established personal

Constitutional Right, with assistance from Texas, which, if S.B. 8 were ruled

illegal, might lead to a 42 USC 1985 lawsuit.

6.     Plaintiff asserts one major reason no practicing attorney has filed (in addition to a lack of witness/plaintiffs), is that an attorney has taken an oath to uphold and obey all valid laws, including the Texas and U.S. Constitution, and thus signing an S.B. 8 complaint, where there is already a TRO on Right to Life and any of its operatives (See 9.3.21 Judge Gamble Order in *Planned Parenthood v Right to Life*, D-1-GN-21-004632 (Travis Co, 53rd Dist), is something an attorney may not be willing to risk, until the conflict is resolved.

7.     Relatedly, Plaintiff here is respectful of the spirit of Her Honor Gamble's just reviewed order, which by inference might be arguably extended to this complaint, and any complaint under S.B. 8, until the issues of whether S.B. 8 is legal under Federal Law is resolved.

8.     Plaintiff alleges that, by the letter of Federal Law, Defendant did not violate *Roe v Wade*, and that by that same letter, S.B. 8 appears to be Unconstitutional as written and as applied here until *Roe v Wade* is reversed or modified, or until a Texas or other Court clarifies and declares the relative import that a filing attorney or person need give to *Roe* when filing under S.B. 8.

9.     On information and belief Interpleader Defendants USA, Planned Parenthood and resident Defendant Braid oppose S.B. 8, and proposed additional party defendant Texas supports it, claiming an overriding interest in protecting "life" (despite it being the Law of the Land  a fetus is not viable at 6 weeks and is not "alive", albeit autonomous bodily functions have started) creating competing claims and interests, which could need to be determined before any suit can proceed under S.B. 8.

10.    USA is hereby joined as it has an interest, as an agent for The People, to speak

to its interests in enforcing the Constitution as expressed in *Roe v Wade,* or against S.B. 8, as well as Texas, in favor thereof, on behalf of (some) of the majority of The People, implicating the UDJA and TRCP 39(2)(i), where issues, objections or supporting evidence not preserved on the trial record, where there was an opportunity to make that record, may be considered waived on appeal.

11.     Defendants Planned Parenthood and Dr. Braid face inconsistent obligations, the latter to his practice and patients and his oath, the former to its patients, and both also are obligated to try to obey conflicting Texas and Federal Law, as to how and when he can perform an abortion, thus implicating TRCP 39(2)(ii).

12.     Plaintiff also faces inconsistent obligations and multiple risks, as *Roe v Wade* would seem to bar this lawsuit (and potentially lead to sanctions for signing a complaint where the underlying law appears to violate the Constitution and a lawyer is charged with knowing that before trying to use a law to gain legal precedent or monetary gain), given *Roe* positively declares that abortions are legal under these facts, yet S.B. 8 attempts to assert the opposite, in ignorance of the Supremacy and Commerce Clauses, as well as the Right of a person to be inviolate in their bodies for government intrusion.

WHERFORE, PLAINTIFF seeks the Court Declare whether the TRO in Planned *Parenthood v Texas Right to Life*, D-1-GN-21-004632 (Travis Co, 53rd Dist)  should be extended to this, and all other suits under S.B. 8 until the issues there, here, and in *USA v Texas*, 21cv796, and other cases are decided, after briefing by the stakeholders, as to whether the Act is legal, and enforceable, under Federal Law, as written and/or as applied to the instant facts.

Submitted By: s/ *Felipe Gomez,*  Pro Se          Date: 09.23.21

Felipe Gomez

1922 W. Belmont Ave 1F

Chicago IL 60657

312.509.2071

fgomez9592@gmail.com

# Exhibit C

Penny Clarkston, Smith County District Clerk
Reviewed By: Gina McClung
9/22/2021 12:12 PM

CAUSE NO. 21-2276-C _____

| | | |
|---|---|---|
| TEXAS HEARTBEAT PROJECT, | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| v. | § | OF SMITH COUNTY |
| ALAN BRAID, M.D., | § | |
| *Defendant*. | § | _____ JUDICIAL DISTRICT |

# ORIGINAL PETITION AND REQUEST FOR ADMISSIONS

## NATURE OF CASE

This civil action is not a health care liability claim,
but a private suit brought pursuant to Senate Bill 8, now officially
known as the **Texas Heartbeat Act** ("**SB8**" herein).

1. The Plaintiff is sympathetic to the pro-life movement and takes the position that abortion is morally wrong. Morality does not equate to legality or constitutionality, however. Nor are private opinions on the matter determinative of legality. Only a court of competent jurisdiction can resolve such questions, and the assigned court is hereby being presented with an opportunity to do so in an adversarial case, as distinguished from collusive "friendly" lawsuit by a pro-choice plaintiff.

2. Serious constitutional and antecedent procedural questions have been raised about SB8, but only three U.S. Supreme Court Justices

Copy from re:SearchTX

seem to have concluded that SB8 is blatantly unconstitutional at first glance.

3. In any event, the Plaintiff and all other Texas residents, are entitled to rely on the presumption of regularity and constitutionality of statutes enacted by the Texas Legislature and signed by the Governor. All persons present in this state are, after all, subject to all laws of general applicability in force in the State of Texas, whether they agree with them or otherwise.

4. It is expected that the Defendant will seek to rebut the presumption of constitutionality, and will challenge SB8 as unconstitutional under the Fourteenth Amendment, or under the Texas Bill of Rights, or both. In that case, it can be expected that the Texas Attorney General will defend the statute at issue on behalf of the State of Texas.

5. Through this petition, Plaintiff is not challenging the constitutionality of SB8, and does not file the written notice required for constitutional challenges of state laws, nor is he giving the Attorney General notice of this private action informally. Plaintiff does not agree with the current Texas Attorney General on many matters and does not wish the AG to act in his stead or on his behalf in an EX REL capacity or otherwise.

6. To the extent SB8 is deemed to conflict with Roe v. Wade and Casey v. Planned Parenthood, Plaintiff avers that the governing court rules and standards allow for the good-faith advocacy of a change in judge-made constitutional and common law that currently constitutes binding precedent, and that such advocacy and petitioning would also be protected by the First Amendment and its state constitutional counterpart, including but not limited to the open courts provision of

2

Copy from re:SearchTX

the Texas constitution.

## RULE 47 STATEMENT

7. This is a discovery level 1 case that seeks solely monetary relief not to exceed $100,000 and falls under the Expedited Action Rule.

## RULE 28 STATEMENT

8. Texas Heartbeat Project is a project name and -- for purposes of this lawsuit and in line with TRCP 28 -- an assumed name of the natural-person Plaintiff, identified by his true name in the signature block below. As such, Texas Heartbeat Project is not a separate legal entity.

## PARTIES AND SERVICE

9. Defendant ALAN BRAID, MD is a licensed physician and may be served with citation at the following address:

> 7402 John Smith Dr., Ste 104 San Antonio, TX 78229

10. No issuance of service of process is requested at this time. Defendant has goaded the public to sue him, presumably so as to put him into the position to mount a constitutional challenge to SB8, and is expected to enter an appearance through counsel already retained for that purpose.

11. Plaintiff, proceeding under the designation "TEXAS HEARTBEAT PROJECT" in lieu of JOHN DOE is a natural person and resident of Texas, whose mailing address is shown in the signature block below.

12. Plaintiff elects to proceed through an assumed name and prefers that his residential address and other sensitive personal information not be disclosed to the public so as to reduce the risk of being

3

Copy from re:SearchTX

targeted for harassment, threats of violence, and actual violence by extremists on the abortion issue.

## CLAIM FOR RELIEF AND DISCLAIMER AS TO FEDERAL CLAIMS

13. The sole legal basis for Plaintiff's complaint is the private cause of action created by the Texas Legislature through SB8, which entitles any person to sue a Texas physician for inducing or performing an abortion proscribed by SB8.

14. Plaintiff is such a qualified person and sues the Defendant for one such alleged violation.

15. Plaintiff does not assert any claim for affirmative relief under federal law. This is accordingly not a removable case.

## FACTUAL BASIS

16. On September 1, 2021, the Texas Heatbeat Act became law.

17. After the effectiveness date and before September 19, 2021 Defendant ALAN BRAID, M.D., knowingly performed an abortion in violation of SB8 and subsequently disclosed and/or publicised that fact -- a fact of which he would have personal knowledge -- according to numerous press reports.

## CONFIDENTIALITY AND RECORD SEALING CONCERNS

18. In light of the fact that ALAN BRAID, M.D., has himself disclosed the operative facts giving rise to a claim under SB8 against him, he is not entitled to confidentiality as to his own conduct as it pertains to the claim herein presented, or his identity. Nor could he invoke the right to avoid self-incrimination, given that SB8 is not a criminal statute and may not be enforced by state actors even under civil law

4

Copy from re:SearchTX

and procedure. To the extent admissions or stipulations suffice, patient records and HIPAA may not present a problem.

## CIVIL LIABILITY ON SOLE COUNT

19. Pursuant to SB8, Defendant ALAN BRAID, M.D. is liable as a matter of civil law for having committed at least one violation of SB8, by causing or inducing the demise of what SB8 defines as an "unborn child" with a detectable heartbeat.

## RELIEF SOUGHT

20. Plaintiff pleads for the minimum amount of statutory damages in the amount of $10,000 for one specific violation of SB8 by the Defendant named herein, and no more.

21. Plaintiff is not represented by an attorney of the court pursuant to Rules 7 and 8, and does not plead for an award of attorney's fees authorized by SB8.

22. Plaintiff requests that costs be taxed against the Defendant.

## REQUEST FOR ADMISSIONS 1 THRU 9

23. Pursuant to rule 198 of the Texas Rules of Civil Procedure, Defendant ALAN BRAID, M.D. (herein "you") is requested to admit or deny the following:

> RFA No. 1: That, on September 1, 2021, you were a licensed physician in the State of Texas.
>
> RESPONSE: ADMIT _____ DENY _____
>
> RFA No. 2: That, on September 1, 2021, you were aware of the September 1, 2021 effectiveness date of the SB8, the Texas

5

Copy from re:SearchTX

Heartbeat Act.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 3: That on or about September 6, 2021 you performed or induced an abortion on a patient after you detected cardiac activity in the fetus/embroy/unborn child in that patient's womb.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 4: That on or about September 7, 2021 you performed or induced an abortion on a live fetus/embryo.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 5: That, while performing an abortion during the time period beginning on September 2, 2021 and ending September 10, 2021, you were aware that your actions fell within the prohibition imposed by SB8, the Texas Heartbeat Act.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 6: That you have openly and publicly admitted that you violated SB8 in Texas after this law went into effect.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 7: That you publicized the fact that you performed an abortion after the SB8 effectiveness date in order to increase the likelihood of being sued for violating SB8.

    RESPONSE: ADMIT _____     DENY _____

RFA No. 8: That you publicized the fact that you performed an abortion despite SB8 being in effect in order to attract supportive or favorable comment from the public on medical review and comment fora on the internet.

Copy from re:SearchTX

RESPONSE: ADMIT _____     DENY _____

RFA No. 9: That you publicized the fact that you performed an abortion despite SB8 being in effect in order to attract additional abortion clients to your practice or clinic.

RESPONSE: ADMIT _____     DENY _____


**PRAYER FOR RELIEF**

WHEREFORE, PREMISES AND ADMISSIONS CONSIDERED, the undersigned Plaintiff prays that the Court enter judgment on liability against Defendant and award Plaintiff statutory damages in the flat amount of $10,000 against the Defendant in consideration of Plaintiff's trouble in bringing this test case and/or award such damages solely as intended by the Texas Legislature without regard to any Plaintiff-specific considerations, such as his willingness to bring this test case in the public interest to clarify the law as it governs abortions in the State of Texas.

September 20, 2021

Respectfully submitted,

TEXAS HEARTBEAT PROJECT

An advocacy vehicle
[and assumed name for purposes of Rule 28]
of the undersigned complainant.

*Wolfgang P. Hirczy de Miño*

_____
Wolfgang P. Hirczy de Mino, Ph.D.

7

Copy from re:SearchTX

P.O. BOX 521
BELLAIRE, TX 77402-0521
Email: wphdmphd@gmail.com

8

Copy from re:SearchTX