**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ALAN BRAID, M.D.,

                Interpleader Plaintiff,

     v.

OSCAR STILLEY; FELIPE N. GOMEZ;
WOLFGANG P. HIRCZY DE MINO, PH.D.,
AKA TEXAS HEARTBEAT PROJECT,

                Interpleader Defendants.

Case No: 1:21-cv-05283

Hon. Jorge L. Alonso

**INTERPLEADER PLAINTIFF DR. BRAID'S OPPOSITION TO DEFENDANT F.
GOMEZ'S FRCP 12(b)(1) MOTION TO DISMISS FOR LACK OF CONTROVERSY
AND LACK OF SUBJECT MATTER JURISDICTION**

## I.    INTRODUCTION

Defendant Felipe Gomez and his fellow defendants in this action (together, "Interpleader Defendants") have separately filed suit against Dr. Braid in three different cases, each seeking liability under the same statute and entitlement to the same single damages award for Dr. Braid's provision of an abortion in violation of Texas Senate Bill 8 ("SB8"), codified as Texas Health & Safety Code §§ 171.201 *et seq*. Dr. Braid filed this suit in the nature of interpleader to resolve Interpleader Defendants' conflicting claims in a single proceeding and to stay their competing suits pending global resolution in this forum. Gomez now seeks dismissal of Dr. Braid's complaint under Federal Rule of Civil Procedure 12(b)(1), on the basis that this Court purportedly lacks subject matter jurisdiction. The Court should deny Gomez's motion for at least three reasons.

*First*, an actual Article III controversy exists between Dr. Braid and Gomez. Gomez has sued Dr. Braid, asserting a claim under SB8 that would entitle Gomez to the same $10,000 minimum "damages" award sought by the other interpleader defendants.[1] Gomez's complaint filed in Texas state court seeks to hold Dr. Braid liable under SB8 for the abortion Dr. Braid provided on September 6, 2021; and, per that statute, if Gomez succeeds in his action, the court "***shall*** award" damages "in an amount of not less than $10,000" for each violation. Tex. Health & Safety Code § 171.208(b)(2) (emphasis added). Gomez has accordingly asserted entitlement to the statutory penalty. That he inconsistently and strategically claims no desire to actually possess the money does not impact his legal claim to that stake and Dr. Braid's corresponding exposure to liability.

---

[1] While SB8 refers to the $10,000 minimum payment as "statutory damages," the payment is untethered to any showing of harm to the claimant (or to anyone else) and requires only a finding of liability. Tex. Health & Safety Code § 171.208(b)(2). The payment is thus in substance a minimum statutory penalty.

*Second*, this action in the nature of interpleader is ripe now. The three competing claims filed by Interpleader Defendants need not have been reduced to judgments in order for this Court to properly resolve them in an action in the nature of interpleader. Indeed, interpleader serves to **avoid** future conflicting judgments; it does not require any litigation to be reduced to judgment first. That would defeat the purpose of a statutory interpleader.

*Third*, interpleader provides the most efficient method of resolving Interpleader Defendants' conflicting claims against Dr. Braid in a manner that will conserve party and judicial resources, avoiding multiple and vexatious litigation.

The Court should deny Gomez's motion to dismiss and afford the parties the opportunity to litigate their positions here in a single unified proceeding.[2]

## II.  BACKGROUND

On September 1, 2021, SB8 took effect, implementing a near total ban on pre-viability abortions in Texas that conflicts with nearly fifty years of Supreme Court precedent and the protections guaranteed by the United States Constitution. ECF No. 1, ¶ 1. In order to chill the provision of abortions in the state of Texas, SB8 subjects abortion providers (and those who "aid or abet" an abortion) to a civil suit brought by "[a]ny person" across the United States, and entitles successful claimants to injunctive relief, "statutory damages" of at least $10,000, and costs and attorney's fees. ECF No. 1, ¶ 2; Tex. Health & Safety Code §§ 171.207(a), 171.208(a)–(b). While an abortion care provider may be sued multiple times for a single alleged violation of the statute,

---

[2] Dr. Braid does not oppose Gomez's Motion for Judicial Notice of the Third Amended Complaint (ECF No. 18), or his Motion to Expedite to the extent it seeks to expedite consideration of that Motion for Judicial Notice (ECF No. 20). Dr. Braid understands based on Gomez's representations at the hearing on November 19, 2021, that Gomez's Motion for Judicial Notice at ECF No. 14 is withdrawn, and therefore takes no position on that motion. Dr. Braid opposes Gomez's Motion to Expedite consideration of his Motion to Dismiss (ECF No. 20) to the extent Gomez seeks a deadline for Dr. Braid's opposition different from that entered by the Court at the November 19 hearing, but otherwise does not oppose the relief sought.

a provider may assert the fact that he or she has already paid the statutory penalty for a given abortion as a defense in future suits seeking damages for that samw violation. ECF No. 1, ¶ 30. Specifically, SB8 provides that a court may not award the statutory penalty "if the defendant demonstrates that the defendant previously paid the full amount of statutory damages . . . in a previous action for that particular abortion." Tex. Health & Safety Code § 171.208(c).

On September 18, 2021, the Washington Post published an opinion authored by Dr. Braid in which he explained that he provided an abortion to one of his patients on September 6, 2021, in violation of SB8. *Id*. ¶ 4. Since then, three different parties have sued Dr. Braid under SB8 for the September 6 abortion: Interpleader Defendant Oscar Stilley, who resides in Cedarville, Arkansas, *id*. ¶¶ 8, 24; Interpleader Defendant Dr. Wolfgang Hirczy de Mino, who resides in Bellaire, Texas (who filed under the pseudonym "Texas Heartbeat Project"), *id*. ¶¶ 10, 28; and Interpleader Defendant Felipe Gomez, who resides in Chicago, Illinois, *id*. ¶¶ 9, 26.

To resolve Interpleader Defendants' competing claims to the same single statutory damages award arising out of the same set of factual allegations, Dr. Braid filed this action in the nature of interpleader in this Court on October 5, 2021. ECF No. 1. Gomez now seeks dismissal under Rule 12(b)(1) on the basis that Dr. Braid has not alleged an Article III case or controversy and that this Court lacks subject matter jurisdiction. ECF No. 15. For the reasons stated here, the Court should deny his motion.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides a means for defendants to raise a court's purported lack of subject-matter jurisdiction as a defense. This defense can take the form of a facial or a factual attack on the plaintiff's jurisdictional allegations. *Bazile v. Fin. Sys. of Green Bay, Inc*., 983 F.3d 274, 279 (7th Cir. 2020). Where, as here, a defendant launches a facial attack on

jurisdiction but does not contest the underlying facts, a court treats the plaintiff's allegations as true for the purpose of adjudicating the motion. *Id*.

Federal law provides for two types of interpleader actions: statutory interpleader under 28 U.S.C. § 1335, and "rule" interpleader under Federal Rule of Civil Procedure 22. 1 FED. R. CIV. PROC., Rules and Commentary, Rule 22. Dr. Braid's complaint asserts the former. *See, e.g.,* ECF No. 1, ¶¶ 11, 14. The interpleader statute, 28 U.S.C. § 1335, provides that "district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader" filed by any plaintiff possessing a stake of $500 or more where (1) "[t]wo or more adverse claimants, of diverse citizenship . . . are claiming *or may claim* to be entitled to such money or property," and (2) the plaintiff has deposited the contested money or property into the registry of the court. *Id*. § 1335(a) (emphasis added).

A plaintiff properly brings an action for interpleader or in the nature of interpleader when that plaintiff has a "real and reasonable fear" of multiple liability or conflicting claims to a stake. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). The adverse claims must meet a "minimal threshold level of substantiality." *Id*. However, satisfying this threshold does not require showing that any given claimant might eventually prevail. *Id*. Indeed, federal interpleader is especially designed for the efficient resolution of multiple tenuous claims: "The purpose of an interpleader bill is as much to protect a stakeholder from the expense of double litigation, however groundless, as it is to protect him from the risk of double liability." *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc*., 448 F.2d 501, 504 (7th Cir. 1971).

The minimum substantiality needed to implead adverse claims exists where the claims are merely anticipated, even if they have not already been asserted. *See Aaron*, 550 F.3d at 666 (affirming district court's conclusion that interpleader was appropriate "because there were

4

adverse claimants who claimed *or might claim* to be entitled to the funds held by the stakeholder.")
(emphasis added). "To effect its purpose of protecting stakeholders from multiple liability or
conflicting claims, the interpleader statute must 'be liberally construed." *JPMorgan Chase Bank,
Nat'l Ass'n v. Black*, 18-CV-03447, 2021 WL 4459482, at *5 (N.D. Ill. Sept. 29, 2021) (quoting
*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)); *see Auto Parts Mfg. Mississippi,
Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 194 (5th Cir. 2015) ("Statutory interpleader
under § 1335 is especially liberal, permitting a valid interpleader action if two claimants may claim
to be entitled to the interpleader funds, even if there is not yet a claim."). Thus, adverse claimants
"need not have obtained a judgment with respect to the subject matter of the interpleader action,"
nor must they "have actually initiated legal action against the stakeholder with respect to the
disputed property." *Star Ins. Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 41 (D.D.C.
2002) (citing *State Farm Fire*, 386 U.S. at 532).

An interpleader plaintiff must, like all plaintiffs, have constitutional standing: they must
"allege an actual 'case or controversy' within the meaning of Article III." *Massey v. Helman*, 196
F.3d 727, 739 (7th Cir. 1999). For a justiciable case or controversy to exist, a plaintiff must have
"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,
and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578
U.S. 330, 338 (2016), *as revised* (May 24, 2016).

## IV.    ARGUMENT

### A.    A Real and Present Conflict Exists Between Dr. Braid and Interpleader Defendants.

Gomez argues that he should be dismissed from this action on the purported basis that no
conflict sufficient to confer either constitutional or statutory standing exists between him and Dr.
Braid; and that the Court should dismiss this action entirely because Interpleader Defendants'

5

competing claims have not been reduced to judgments in any court. Both of these arguments misunderstand interpleader law. Each of the Interpleader Defendants has filed suit against Dr. Braid asserting a claim that, if successful, "shall" result in the imposition of a $10,000 minimum damages award. These filed complaints create real, present adversity between Dr. Braid and the respective defendants sufficient to confer standing to make this action in the nature of interpleader ripe. Interpleader Defendants' competing complaints do not just give rise to a "real and reasonable fear" of conflicting claims (though that is all that is required)—they *are* conflicting claims. Interpleader under § 1335 exists to resolve exactly this sort of situation.

> **1.    Dr. Braid Has a Real and Reasonable Fear of Conflicting Claims to a Single Stake Because SB8 Requires that a Liable Party "Shall" Pay a Minimum $10,000 Damages Award Once Per Violation.**

SB8 states that "[i]f a claimant prevails in an action brought under this section, the court *shall* award" statutory damages "in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter." Tex. Health & Safety Code § 171.208(b)(2) (emphasis added). The statute does not set forth any pre-requisite for receiving this award other than prevailing on a claim. Thus, a claimant filing suit under this provision necessarily asserts a claim to a minimum of $10,000 from the defendant.

Gomez nevertheless argues in his instant motion that he is not pursuing the $10,000 award and that consequently no case or controversy exists between him and Dr. Braid. Mot. at 1–3. However, Gomez's (inconsistently, *see infra*) proclaimed (dis)interest in the stake at issue does not change the legal status of his asserted entitlement to that stake. Gomez has filed a complaint against Dr. Braid in Texas state court alleging Dr. Braid's liability under SB8. *See* ECF No. 1, Compl. Ex. B. SB8 directs courts to award a minimum $10,000 award to successful claimants. Whether Gomez currently hopes to collect the funds to which success will entitle him is entirely

6

beside the point; he (along with at least two other claimants) has asserted legal title to the stake, and Dr. Braid has brought this action in the nature of interpleader to resolve those conflicting claims of entitlement. The conflict between Dr. Braid and Gomez, and between Gomez and his fellow interpleader defendants, derives not from "fiction," but from Interpleader Defendants' respective signed and filed complaints each asserting Dr. Braid's liability under SB8 and their consequent legal claims to the same $10,000 damages award. Section 1335 contemplates resolving exactly this sort of conflict through the use of interpleader.[3]

Even if Gomez did not have a present claim to the contested damages stake (which he does by virtue of his own signed and filed complaint), that would not matter: statutory interpleader exists to resolve not only present, but also *potential*, claims. *See* 28 U.S.C. § 1335(a)(1) (providing for interpleader jurisdiction where multiple claimants "are claiming *or may claim* to be entitled to such money or property" (emphasis added)); 16A COUCH ON INS. § 232:74 ("By allowing an interpleader claim against potential claimants, statutory interpleader provides relief for those who have a real reason to fear double liability, even though the potential claimants have yet to bring a formal claim to the money or property."). Gomez unequivocally has a potential claim, a fact that he himself has repeatedly acknowledged. For instance, on November 19, 2021, Gomez filed an "Affidavit Disavowing Any Demand for $10,000 on Dr. Braid," which states that "in the event

---

[3] Gomez argues that Dr. Braid has conceded the supposedly discretionary nature of SB8's minimum $10,000 damages award because Dr. Braid's interpleader complaint states that "a physician *may* be required to pay statutory damages only once." Mot. at 1 (emphasis by Gomez). Gomez misapprehends the manner in which Dr. Braid has used "may." Dr. Braid has used the word "may" to mean "is permitted to"—in other words, a physician is permitted under the statute to be required to pay damages only once; he, according to the statute, may not be required to pay multiple times if he can demonstrate past payment of the full penalty amount for a given abortion. Tex. Health & Safety Code § 171.208(c). As made clear by the use of "shall" in the provision providing for damages, a court's imposition of a minimum $10,000 penalty upon finding liability under the statute is neither discretionary nor conditional. Tex. Health & Safety Code § 171.208(b)(2).

Affiant elects to seek the SB8 snitch award of $10,000, it will be done by amendment in *Gomez v Braid, 21C119920*." ECF No. 27 ¶ 5; *see* Peaslee Decl. Ex. A,[4] at 3 (November 20, 2021 email from Gomez stating, "My disavowment is a current disavowment, but my pleadings are set up such that my right to claim that money is preserved once my judge gives me the go-ahead."); *id.* Ex. B (November 2, 2021 email from Gomez stating, "Seriously the obstinence of Dr braids attorneys are making me actually consider going for the $10,000" (spelling and grammar as in the original)); Ex. C (November 30, 2021 email from F. Gomez stating, "I'm going to take a chunk of the $10,000 if I can get it. . ."). Gomez's testimony that if he "elects to seek" the contested damages he will do so through his pending Texas state court case—in which, unlike in federal court, he may liberally amend (as he has already done twice)—highlights both why interpleader is appropriate here, and why § 1335 permits interpleader of potential future claims: otherwise, claimants could frustrate the purpose of interpleader by disavowing an entitlement to the stake to escape jurisdiction, then simply reassert their competing claim back in their chosen forum. Indeed, this is exactly what Gomez explains he could do here. *See, e.g.,* ECF No. 27 ¶ 5; Ex. A, at 3.

Gomez seeks to paint Dr. Braid as "forum shopping," but Gomez has himself noted his own grounds for wanting to avoid litigation in this District for reasons unrelated to the efficient adjudication of competing claims. *See* Ex. D (November 30, 2021 email from Gomez to this Court stating, "I have ongoing litigation involving the chief judge, I'm going to sue judge Durkin soon, and I filed judicial complaints against both of them" and that Gomez "has sworn to stay out of" the N.D. Illinois courthouse where "he's been banned from as an attorney"); Ex. C ("I also intend to tell the judge does he know that I am involved in litigation with [ ] his boss and cannot be

---

[4] All exhibits are attached to the Declaration of Katherine Peaslee, filed concurrently with this memorandum, unless otherwise specified.

litigating in this building as a party until that is resolved."); Ex. A, at 1 ("[T]he chief judge of this district is the chief reason I'm no longer practicing law . . . and I have in fact attempted to sue her before and likely will again," and "the chief judge here and I are at war"); Ex. E, at 2 (Gomez email dated November 21, 2021, stating, "I don't want to have any cases pending as [plaintiff or] defendant while judge Palmeyer [sic] is chief judge"); *cf. In re Gomez*, 829 Fed. Appx. 136, 137 (7th Cir. 2020) (affirming Gomez's disbarment in this district for "his pattern of sending harassing and threatening communications to other lawyers"); *Gomez v. Pallmeyer*, 1:21-cv-00070 (Gomez's lawsuit against Chief Judge Pallmeyer).

But putting aside Gomez's particular relationship with this District, *every* interpleader defendant would—like Gomez—prefer to litigate their asserted right individually, in their chosen forum, without having competing claims be simultaneously presented to the court. Gomez's strategic disavowal of any desire to collect the statutory damages to which his filed claim entitles him in order to avoid litigating in his home District does not provide any basis for denying the efficiency gains provided by interpleader.

The law avoids precisely this problem of an interpleader defendant's strategic abandonment of his claim to escape interpleader jurisdiction—and his potential reassertion of that claim down the line—both by allowing a plaintiff to interplead potential future claims, 28 U.S.C. § 1335(a)(1), and also by premising jurisdiction on the parties' positions at the time of the complaint: "interpleader jurisdiction is determined at the time suit is filed and subsequent events do not divest the court of jurisdiction once properly acquired." *Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir. 1983) (holding in claimants' appeal in an interpleader action that the "district court was correct in continuing to exercise jurisdiction over this case after appellants waived their claim against plaintiff"). Gomez could, as he himself acknowledges, pursue the statutory penalty in his

Texas state court SB8 action against Dr. Braid at any time. *See, e.g.,* ECF No. 27 ¶ 5; Ex. A, at 3. Gomez by his own admission has a potential (and in fact has a currently asserted) claim against Dr. Braid and is properly included as a defendant in Dr. Braid's action in the nature of interpleader.

To the extent Gomez's apparent ambivalence toward the ramifications of his own filed suit make that suit less likely to succeed on the merits, this does not obviate the need for Dr. Braid to include Gomez in the present action. On the contrary, for the purpose of interpleader, "[i]t is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Wright & Miller, FED. PRAC. AND PROC. § 1704 (3d ed. 2001). Dr. Braid has a significant interest in collecting all of the SB8 disputes filed against him into one proceeding to avoid the considerable expense of resources that will be required to defend against the same claims across multiple jurisdictions. Interpleader serves to resolve all claims to the stake, no matter how attenuated or robust. That includes the claim filed against Dr. Braid by Gomez.

Gomez's citation to *Bierman v. Marcus*, 246 F.2d 200 (3d Cir. 1957) does not counsel against interpleading Gomez. In that case, the Third Circuit found interpleader improper where the plaintiffs filed for interpleader on the basis that a company, Milmar, Inc., might assert a conflicting claim to the purchase price of certain shares; but the plaintiffs asserting interpleader were themselves "the sole stockholders of Milmar, Inc., and in complete control of that corporation." *Id.* at 203. Under these facts the plaintiffs clearly "did not believe or assert in good faith" a risk of any "vexatious demand by a rival claimant." *Id.* Similarly, *Francis I. duPont & Co. v. O'Keefe*, 365 F.2d 141 (7th Cir. 1966) stands only for the proposition that an interpleader plaintiff must have "some real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Id.* at 143. Not only does Dr. Braid have a "good faith" belief and "real and reasonable

10

fear" that he will be the subject of multiple, vexatious demands; conflicting demands have already been made by the three Interpleader Defendants in this action.

Gomez asserts related arguments under Rules 19 and 21, arguing that he does not believe himself a required party under the former rule and that the Court has authority to drop him under the latter. Mot. at 4–5. But the analysis on a facial challenge to the sufficiency of pleadings under Rule 12 does not ask whether Rule 19 requires the moving party, but rather whether the plaintiff has alleged facts sufficient to state a valid claim that falls within the Court's jurisdiction. *See, e.g., Cates v. Manning*, 19 C 5248, 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) ("It may well be that the County is not a necessary party, but defendants have not explained, and the Court does not see, why it follows from the fact that the County is not a necessary party under Rule 19 that the County must be dismissed on a Rule 12(b)(6) motion for failure to state a claim."). Dr. Braid consequently construes Gomez's argument under Rules 19 and 21 as asserting that Dr. Braid has failed to state facts sufficient to establish Gomez as a proper interpleader defendant. That fails for the same reasons already discussed: Gomez filed an SB8 claim that, if successful, would lead to the same statutory penalty of at least $10,000 that two other claimants are also seeking. The need to resolve these conflicting claims and the threat of multiple, vexatious litigation against Dr. Braid make interpleader appropriate.

### 2. The Controversy Between the Parties Is Ripe for Adjudication.

Gomez next asserts that Dr. Braid's action in the nature of interpleader has not yet ripened because none of Interpleader Defendants' competing claims have been reduced to a judgment. Mot. at 4. But "every court confronted by the question" has concluded that under the current interpleader statute, a plaintiff need not wait until claimants have "reduced their claims to judgments." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 532–33 (1967). Indeed, the fact

that the conflicting claims against Dr. Braid have not yet been adjudicated makes interpleader the most appropriate and efficient means of proceeding. As one court in this circuit explained, "interpleader benefits both the interpleading party and the claimants to the interpleaded funds" because "a bill in the nature of interpleader, filed *before* numerous judgments have ripened" assures fair resolution of competing claims. *Chicago Ins. Co. v. Abstract & Title Guar. Co., Inc*., 1:03-CV-00590-JDT-TA, 2004 WL 2750258, at *2 (S.D. Ind. Oct. 12, 2004) (citation omitted). Indeed, the Supreme Court has long acknowledged that competing claims need not have even been *filed* in order for a stakeholder to appropriately file an action in interpleader. *See, e.g., Texas v. Florida*, 306 U.S. 398, 406 (1939) (to bring an interpleader action, "[a] plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial"). If conflicting claims need not have been filed, certainly they need not have been reduced to judgments.

The fact that the contested stake here consists of an award of a statutory penalty if Interpleader Defendants prevail in their parallel suits—rather than, for instance, a piece of real property—does not give rise to any requirement that the competing claims have been adjudicated. *Cf.* 7 FED. PRAC. & PROC. CIV. § 1704 (3d ed.) (a stake may consist of "any protectable property interest," and "interpleader seldom will be rendered inappropriate because of the nature of the stake"). The Interpleader Defendants, as competing claimants, will not be entitled to possess the statutory award unless and until they prevail on their claims currently pending in multiple Texas state courts; but they have unequivocally asserted their respective claims to that single fund of money via their filed suits. This is no different than competing claimants asserting contested title to a piece of property: none may have quiet title until a court rules on their competing claims, but each claimant takes the position that they do in fact have a valid claim. That moment—when

multiple claimants have potential claims but competing judgments have not yet been rendered—is precisely the moment that interpleader can offer a means of streamlining proceedings and avoiding inconsistent rulings. *See, e.g., Chicago Ins. Co.*, 2004 WL 2750258, at *2.

**B. Interpleader Provides an Efficient and Appropriate Vehicle for Resolving the Parties' Competing Claims.**

Interpleader offers an efficient and economical remedy for a stakeholder that faces the potential for multiple conflicting claims and expensive, duplicative litigation. *Hamilton Steel Prods.*, 448 F.2d at 504. Dr. Braid finds himself in precisely this scenario; interpleader is the appropriate solution.

Contrary to Gomez's assertion, this Court can—and should—enjoin each of the Interpleader Defendants' parallel state proceedings in which they assert their competing claims while the issues are consolidated before this Court. 28 U.S.C. § 2361 contemplates exactly this, specifically authorizing the district court in an action under § 1335 to enter an order restraining claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." *See Assoc. Tr. Co., N.A. v. Prime Receivables, LLC*, 09 C 2259, 2009 WL 3444779, at *3 (N.D. Ill. Oct. 21, 2009) (enjoining claimants in interpleader action "from pursuing or commencing any litigation against Associated Trust with regard to these funds while this case remains pending"). Indeed, avoiding the expense of multiple litigations—regardless of whether the competing claims have sufficient merit to result in multiple liability—is one of interpleader's primary purposes. *Hamilton Steel Prods.,* 448 F.2d at 504.

Notwithstanding this, Gomez asserts a number of arguments for why he believes interpleader should not be permitted—either as to him, or at all. None merits dismissal.

Gomez first argues that interpleader may not be used to resolve "pre-existing or foreign claims," or to avoid claims filed elsewhere. Mot. at 2–3. Gomez cites no authority for these assertions. Setting that aside, competing claims must "pre-exist" an interpleader insofar as they must exist before an interpleader can resolve them. With regard to the interpleaded claims originating elsewhere, 28 U.S.C. § 1397 specifically contemplates that competing actions may be brought in differing venues all across the country, and thus provides for federal jurisdiction in any district where any claimant resides; and Gomez himself resides in this district. ECF No. 1, ¶ 9 & Compl. Ex. B. That the other claimants reside elsewhere does not deprive this Court of jurisdiction; on the contrary, that is true in every statutory interpleader action, as the statute ***requires*** diverse claimants for jurisdiction. *See* 28 U.S.C. § 1335(a)(1). And Dr. Braid does not seek to avoid claimants' competing assertions; he seeks to squarely address them in a single unified proceeding. *C.f. Assoc. Tr. Co.*, 2009 WL 3444779, at *1 (finding interpleader proper where "the stakeholder has been dragged into the fracas by one of the parties who sued it in another forum").

Gomez next argues that Dr. Braid cannot bring this action because Rule 22 "mandates that the pleader be 'uninterested.'" Mot. at 3. First, Rule 22 does not apply because Dr. Braid has asserted *statutory* interpleader under § 1335, not rule interpleader under Rule 22. *See* ECF No. 1, ¶¶ 11, 14. Second, the text of Rule 22 directly contradicts Gomez's argument and states that interpleader will lie "even though" the plaintiff "denies liability in whole or in part to any or all of the claimants." FED. R. CIV. P. 22(a)(2). Third, while so-called "strict" interpleader under common law principles requires that a stakeholder lack any interest in the contested stake, 28 U.S.C. § 1335 expands that scope by authorizing actions "***in the nature of*** interpleader," meaning "those in which the plaintiff is not wholly disinterested with respect to the fund he has deposited in court." *State Farm Fire*, 386 U.S. at 533 n.9; *see Heller Fin., Inc. v. Prudential Ins. Co. of Am.*, 371 F.3d 944,

945 (7th Cir. 2004), *as amended*, (July 9, 2004) (interpleader plaintiff may assert interest in the stake); *Geneva Assur. Syndicate, Inc. v. Med. Emergency Servs. Assocs. (MESA) S.C.*, 92 C 1652, 1992 WL 97936, at *1 (N.D. Ill. May 5, 1992) ("[I]n a bill in the nature of interpleader, the stakeholder asserts some interest in the fund or denies liability to one or more claimants."). Dr. Braid has appropriately pleaded an action in the nature of interpleader here. *See, e.g.*, ECF No. 1, ¶ 6.

As the Court noted at the November 19 hearing, the Supreme Court has taken up consideration of federal courts' jurisdiction in two challenges to SB8. But in the meantime, Dr. Braid has been brought into three separate actions ***now***. He must expend the time and expense of litigating those multiple, duplicative cases and faces the prospect of more. Consequently, the Supreme Court's forthcoming decision does not change the importance of this case—the first action brought by a healthcare provider concerning their liability under SB8—or the need to consolidate the competing claims against Dr. Braid in a single action.

Interpleader provides an appropriate solution to the time and expense Dr. Braid faces in litigating over the same stake in multiple forums and the attendant risk of conflicting judgments. Gomez's motion does not provide any basis for avoiding it.

## V.    CONCLUSION

The Court should deny Gomez's motion to dismiss Dr. Braid's action in the nature of interpleader.

Dated: December 3, 2021

By: */s/ Katherine Peaslee*

| | | |
|---|---|---|
| Suyash Agrawal | Marc Hearron* | Neal S. Manne** |
| Alethea Anne Swift | CENTER FOR | Mary Kathryn Sammons** |
| MASSEY & GAIL LLP | REPRODUCTIVE RIGHTS | Abigail C. Noebels* |
| 50 E. Washington Street | 1634 Eye St., NW | Katherine Peaslee* |
| Suite 400 | Suite 600 | Richard W. Hess* |

Chicago, Illinois 60602
(312) 283-1590
sagrawal@masseygail.com
aswift@masseygail.com

Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
CENTER FOR
REPRODUCTIVE RIGHTS
199 Water Street
22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org

SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
(713) 653-7827
nmanne@susmangodfrey.com
ksammons@susmangodfrey.com
anoebels@susmangodfrey.com
kpeaslee@susmangodfrey.com
rhess@susmangodfrey.com

Shannon Rose Selden*
Meredith E. Stewart*
Ebony Ray*
DEBEVOISE & PLIMPTON
LLP
919 Third Ave.
New York, NY 10022
(212) 909-6000
srselden@debevoise.com
mestewart@debevoise.com
eray@debevoise.com

*Counsel for Interpleader Plaintiff Alan Braid, M.D.*
*Appearing *pro hac vice*
** *Pro hac vice* forthcoming

16

**<u>Certificate of Service</u>**

I certify that on December 3, 2021, a true and correct copy of this document was served on pro se parties and counsel of record who have appeared via electronic filing. A copy of this document was additionally served on the following party that is not listed as an E-Filer on the docket:

Wolfgang P. Hirczy de Mino

*via certified mail to*:
2038 ½ Lexington St.
Houston, TX 77098

*and via email, see* ECF No. 38, at:
wphdmphd@gmail.com


*/s/  Katherine Peaslee*                        

17