**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALAN BRAID, M.D., | |
| Interpleader Plaintiff, | |
| v. | Case No: 1:21-cv-05283 |
| OSCAR STILLEY; FELIPE N. GOMEZ; WOLFGANG P. HIRCZY DE MINO, PH.D., AKA TEXAS HEARTBEAT PROJECT, | Hon. Jorge L. Alonso |
| Interpleader Defendants. | |

<u>MEMORANDUM OF LAW IN SUPPORT OF INTERPLEADER PLAINTIFF ALAN BRAID, M.D.'S MOTION FOR SUMMARY JUDGMENT</u>

Table of Contents

Table of Authorities ......................................................................................................... iii

BACKGROUND ON S.B. 8 AND DR. BRAID ........................................................... 1

    I.    Texas Senate Bill 8 effects a near total ban on pre-viability abortions. ................. 2

    II.    Abortion providers' federal pre-enforcement challenges have been shelved. ....................................................................................................... 5

    III.    Interpleader Plaintiff Dr. Braid ............................................................... 9

    IV.    Interpleader Defendants Oscar Stilley, Felipe Gomez, and "Texas Heartbeat Project" ............................................................................ 9

ARGUMENT ............................................................................................................... 10

    I.    Interpleader Relief is Appropriate. ...................................................... 10

    II.    Section 3 of S.B. 8 Violates Dr. Braid's Patients' Substantive Due-Process Rights. ...................................................................................... 11

        A.    S.B. 8 prohibits abortion months before viability. ..................... 13

        B.    Interpleader Defendants seek to enforce S.B. 8's unconstitutional ban on abortion against Dr. Braid through state action. ...................................................................................... 13

    III.    S.B. 8's Enforcement Provisions Independently Violate Dr. Braid's Federal Constitutional Rights and Are Preempted by Federal Law. ................... 15

        A.    S.B. 8's enforcement regime is preempted by federal law. ....... 15

        B.    S.B. 8's statutory damages provision violates Dr. Braid's 14th Amendment rights under the void for vagueness doctrine. ....... 17

        C.    S.B. 8's enforcement provisions violate Dr. Braid's constitutional guarantee of equal protection. .............................. 19

            1.    The enforcement provisions discriminate against abortion providers. ...................................................... 20

            2.    The enforcement provisions violate Dr. Braid's Equal Protection rights. ........................................................ 22

    IV.    Section 4 of S.B. 8 Violates Dr. Braid's First Amendment Rights. ................. 23

A.    Section 4 of S.B. 8 violates Dr. Braid's right to petition the courts.................................................................................................24

B.    Section 4 of S.B. violates Dr. Braid's right to freedom of speech. ................................................................................................24

CONCLUSION.............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron v. Mahl,*
    550 F.3d 659 (7th Cir. 2008) ...............................................................11

*Barr v. Am. Ass'n of Pol. Consultants, Inc,*
    140 S. Ct. 2335 (2020)........................................................................24

*Beckles v. United States,*
    137 S. Ct. 886 (2017)..........................................................................17

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011)...........................................................................23

*City of Akron v. Akron Ctr. for Reprod. Health, Inc.,*
    462 U.S. 416 (1983)...........................................................................11

*City of Chicago v. Morales,*
    527 U.S. 41 (1999).............................................................................17

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985).....................................................................19, 22

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,*
    538 U.S. 188 (2003)...........................................................................23

*Cohen v. Cowles Media Co.,*
    501 U.S. 663 (1991)...........................................................................14

*Cooper v. Aaron,*
    358 U.S. 1 (1958)........................................................................15, 16

*Cross v. United States,*
    892 F.3d 288 (7th Cir. 2018) ...............................................................18

*Doe v. Bolton,*
    410 U.S. 179 (1973)...........................................................................11

*Giaccio v. Pennsylvania,*
    382 U.S. 399 (1966)...........................................................................18

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972).....................................................................17, 19

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) ................................................................................................ 22

*Jackson Women's Health Org. v. Dobbs*,
    945 F.3d 265 (5th Cir. 2019) ............................................................................... 12

*Jackson Women's Health Org. v. Dobbs*,
    951 F.3d 246 (5th Cir. 2020) ............................................................................... 13

*Johnson v. United States*,
    576 U.S. 591 (2015) ................................................................................................ 18

*JPMorgan Chase Bank, Nat'l Ass'n v. Black*,
    18-CV-03447, 2021 WL 4459482 (N.D. Ill. Sept. 29, 2021) ............................ 11

*June Med. Servs. LLC v. Russo*,
    140 S. Ct. 2103 (2020) ............................................................................. 11, 12, 16

*KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*,
    478 S.W.3d 111 (Tex. App.—[CITY OF COURT] 2015) ................................ 20

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ................................................................................................ 18

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001) ................................................................................ 23, 24, 25

*Little Rock Fam. Plan. Servs. v. Rutledge*,
    984 F.3d 682 (8th Cir. 2021) ............................................................................... 12

*MKB Mgm't Corp. v. Stenehjem*,
    795 F.3d 768 (8th Cir. 2015) ............................................................................... 13

*NAACP v. Button*,
    371 U.S. 415 (1963) ................................................................................................ 24

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................................ 14

*Nitro-Lift Techs., L.L.C. v. Howard*,
    568 U.S. 17 (2012) ........................................................................................... 15, 16

*Planned Parenthood of Cent. Mo. v. Danforth*,
    428 U.S. 52 (1976) .......................................................................................... 11, 14

*Planned Parenthood Minn., N. D., S. D. v. Daugaard*,
    799 F. Supp. 2d 1048 (D.S.D. 2011) ................................................................. 12

*Planned Parenthood S. Atl. v. Wilson,*
    520 F. Supp. 3d 823 (D.S.C. 2021)................................................................12, 15

*Planned Parenthood of Se. Pa. v. Casey,*
    505 U.S. 833 (1992)............................................................................ *passim*

*Planned Parenthood, Sioux Falls Clinic v. Miller,*
    63 F.3d 1452 (8th Cir. 1995) ...................................................................12

*In re Primus,*
    436 U.S. 412 (1978)................................................................................24

*Reed v. Town of Gilbert, Ariz.,*
    576 U.S. 155 (2015)................................................................................24

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson,*
    1 F.4th 552 (8th Cir. 2021) .....................................................................12

*Robinson v. Marshall,*
    415 F. Supp. 3d 1053 (M.D. Ala. 2019) ....................................................12

*Roe v. Wade,*
    410 U.S. 113 (1973)........................................................................... *passim*

*Romer v. Evans,*
    517 U.S. 620 (1996)................................................................................22

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995)................................................................................24

*Shelley v. Kraemer,*
    334 U.S. 1 (1948)...................................................................................14

*Smith ex rel. Smith v. Severn,*
    129 F.3d 419 (7th Cir. 1997) ...................................................................22

*U.S. Dep't of Agric. v. Moreno,*
    413 U.S. 528 (1973)............................................................................22, 25

*Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.,*
    448 F.2d 501 (7th Cir. 1971) ................................................................10, 11

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000)................................................................................25

*United States v. Texas,*
    No. 1:21-CV-796-RP, 2021 WL 4593319 (W.D. Tex. Oct. 6, 2021)............................7, 8, 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*,
    455 U.S. 489 (1982).................................................................17

*Wal-Mart Stores, Inc. v. Forte*,
    497 S.W.3d 460 (Tex. 2016)...............................................20

*Whole Woman's Health v. Hellerstedt*,
    579 U.S. 582 (2016)......................................................12, 16

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021).....................................................7, 8

*Whole Woman's Health v. Jackson*,
    No. 21-463 (Nov. 1, 2021) (Barrett, J)...........................16

*Whole Woman's Health v. Jackson*,
    No. 21A24, 2021 WL 3910722 (U.S. Sept. 1, 2021).............6

*Women's Med. Ctr. of Nw. Houston v. Bell*,
    248 F.3d 411 (5th Cir. 2001).............................................17

*Zablocki v. Redhail*,
    434 U.S. 374 (1978).......................................................22

**Statutes**

28 U.S.C. § 1335.........................................................10, 11

Tex. Civ. Prac. & Rem. Code §§ 10.001–.002 .....................21

Tex. Civ. Prac. & Rem. Code § 15.002 ..............................4, 20

Tex. Civ. Prac. & Rem. Code § 30.022
    .................................................................5, 23, 24, 25

Texas Health & Safety Code §§ 171.041–171.046.....................3

Texas Health & Safety Code §§ 171.201.........................2, 3, 13

Texas Health & Safety Code §§ 171.203.................................3

Texas Health & Safety Code § 171.204.........................2, 3, 13

Texas Health & Safety Code §§ 171.205.................................2

Texas Health & Safety Code § 171.208........................... *passim*

Texas Health & Safety Code § 171.209........................... *passim*

Texas Health & Safety Code § 171.210.........................................................................20

Texas Health & Safety Code § 171.212.........................................................................21

**Other Authorities**

U.S. Const. amend I ...............................................................................10, 23, 24, 25

U.S. Const. amend XIV ................................................................................ *passim*

Fed. R. Civ. P. 56................................................................................................10

Texas Senate Bill 8 ("S.B. 8") is an unconstitutional and unenforceable ban on pre-viability abortion that violates Interpleader Plaintiff Dr. Alan Braid's constitutional rights and the rights of his patients. Dr. Braid is entitled to summary judgment on his request for interpleader relief through a ruling that he does not owe any of the Interpleader Defendants the statutory damages they seek for his violation of S.B. 8 on the basis that the law violates longstanding constitutional protections and cannot be enforced against him or any other abortion care provider.

This unconstitutional law has been in effect for five months and continues to operate today to force Texans to continue pregnancies and give birth against their will. This Court should grant summary judgment and issue a declaratory judgment in Dr. Braid's favor because the facts and law are undisputed. Dr. Braid violated § 3 of S.B. 8, which bars Dr. Braid from performing an abortion after approximately six weeks of pregnancy. Section 3 of S.B. 8 also deputizes Interpleader Defendants (and indeed, any person) to enforce that prohibition by allowing them to sue a total stranger—here, Dr. Braid—to obtain an injunction prohibiting that stranger from violating S.B. 8 again and to collect a minimum $10,000 "statutory damages" award (in reality, a statutory penalty) for every abortion performed. And Section 4 of S.B. 8 authorizes Interpleader Defendants to seek attorney's fees and costs against Dr. Braid.

By granting Dr. Braid summary judgment on his request for declaratory judgment and his defenses to the Interpleader Defendants' claims, the Court will take the first step toward allowing Dr. Braid to resume providing constitutionally-protected patient care, to end five months of daily constitutional violations for him and his patients, and to vindicate the federal constitutional rights that the State of Texas has violated every day since September 1, 2021.

## BACKGROUND ON S.B. 8 AND DR. BRAID

The right of a pregnant person to terminate their pregnancy before viability is well established under current federal law, and has been for nearly 50 years. *See Roe v. Wade*, 410 U.S.

113 (1973); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992). No federal court of appeals has *ever* upheld a comprehensive, pre-viability abortion ban. Yet in 2021, Texas enacted S.B. 8, which creates an unconstitutional ban that prohibits doctors from performing otherwise lawful abortions after approximately six weeks of pregnancy. Pre-enforcement legal challenges to the law have not succeeded in reinstating abortion access in Texas and, with the exception of Dr. Braid, no doctor has dared to test the law by publicly breaking it.

**I.       Texas Senate Bill 8 effects a near total ban on pre-viability abortions.**

On September 1, 2021, Texas Senate Bill 8 ("S.B. 8"), codified as Texas Health & Safety Code ("THSC") §§ 171.201 *et seq*., took effect, effectively banning the majority of pre-viability abortions in Texas in violation of well-settled Supreme Court precedent.

Despite being styled as a civil law, S.B. 8 prohibits a physician from "knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child," or failed to perform a test to detect a so-called fetal heartbeat. THSC § 171.204(a). The sole exception is a very narrow "medical emergency" exception and does not include circumstances of rape, incest, or a physician's determinations of fetal conditions incompatible with sustained life after birth. THSC §§ 171.204(a), 171.205(a).

The Supreme Court has held that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Casey*, 505 U.S. at 879 (1992); *accord Roe*, 410 U.S. 113. Viability is generally understood as the point when a fetus, if born at that point in pregnancy, has a reasonable likelihood of sustained life after birth, with or without artificial support. *Roe*, 410 U.S. at 160; *see* 56.1 ¶ 1. Viability, while requiring an individual determination, generally will not occur until approximately 23–24 weeks after the first day of the person's last menstrual period ("LMP"). 56.1 ¶ 2. Notably, pre-existing Texas law prohibits abortion after 22 weeks LMP, a restriction with which Dr. Braid and other abortion providers in

2

Texas have complied for years. THSC §§ 171.041–171.046. Despite this, S.B. 8 bars performing abortions (and thus a patient's ability to exercise the "ultimate decision" authorized by *Casey* and *Roe*) beginning at approximately six weeks LMP—roughly **four months** before medically accepted viability. 56.1 ¶¶ 1–5.

S.B. 8 requires physicians to perform an ultrasound before providing an abortion, and it prohibits the abortion if the ultrasound detects a statutorily-defined "fetal heartbeat." THSC §§ 171.203(b), 171.204(a)). The term "heartbeat" in S.B. 8 covers not just a "heartbeat", but also early "cardiac activity . . . within the gestational sac," *id.* § 171.201(1)—more accurately, electrical impulses—present in an embryo before full development of the cardiovascular system, 56.1 ¶¶ 3–4. Using S.B. 8's "fetal heartbeat" definition, S.B. 8 prohibits nearly all abortions after approximately six weeks, which is before many individuals even learn of their pregnancy, and a time at which no pregnancy is viable (indeed there is only an embryo; a "fetus" does not yet exist). 56.1 ¶ 5.

In a deliberate effort to evade judicial review of state enforcement of unconstitutional laws, S.B. 8 recruits citizens to serve as vigilante enforcers. *See* 56.1 ¶¶ 6–7. Specifically, its enforcement provision empowers "Any person, other than an officer or employee of a state or local governmental entity [in Texas]" to bring a civil action against a physician who "performs or induces an abortion" in violation of S.B. 8, as well as against anyone who "knowingly engag[es] in conduct that aids or abets the performance or inducement of" an abortion that violates the statute, or who "intends" to provide, aid, or abet a prohibited abortion. THSC § 171.208(a)(1)–(2). S.B. 8 entices potential enforcers with a bounty: if any S.B. 8 claimant prevails, a court "***shall***" award: (1) injunctive relief barring the provider (or other defendant) from future violations; (2) a financial penalty of a minimum of $10,000 for each abortion that the defendant performed or induced in

violation of S.B. 8 (providing that a defendant can raise payment of the penalty for a given abortion as a defense to future suits over that same abortion), and (3) costs and attorney's fees. *Id.* § 171.208(b)(1)–(3). The statute does not set a maximum damages amount, nor are the statutory damages tied to any actual harm—either to the claimant, or to anyone else.

In addition to encouraging suits by complete strangers who have no connection to the provider or the patient, S.B. 8 weights its enforcement mechanisms against providers through a variety of mechanisms, including:

(1) Preferential venue provisions for claimants, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), such that abortion providers may be forced to defend cases in faraway venues and simultaneously defend multiple actions across different venues—as is the case for Dr. Braid;

(2) Purporting to prohibit defendants from asserting non-mutual issue or claim preclusion, or from relying as a defense on any other "state or federal court decision that is not binding on the court in which the action" was brought. *Id.* § 171.208(e)(4), (5);

(3) Placing what the statute itself calls "limitations" on the Supreme Court's articulation of the undue burden standard, requiring defendants to affirmatively demonstrate that enforcement against them will impose a substantial obstacle to a patient's ability to access to care, and to do so *without* relying on S.B. 8's effect on access to care from other Texas providers. THSC § 171.209(d)(2)[1];

(4) Making abortion care providers retroactively liable for conduct that was entirely legal at the time it was performed. THSC § 171.208(e)(3). For example, Dr. Braid performed abortion

---

[1] And even this distorted undue-burden affirmative defense can be retroactively taken away: it is "not available if the United States Supreme Court overrules *Roe v. Wade* . . . or *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), regardless of whether the conduct . . . occurred before the Supreme Court overruled either of those decisions." *Id.* § 171.209(e).

services during the two-day period in October 2021 when a federal court enjoined enforcement of S.B. 8. 56.1 ¶ 17. S.B. 8 purports to hold Dr. Braid liable for abortions performed during that time, despite the fact that no law then in effect prohibited them;

(5) Providing for one-way fee-shifting provision that benefits only the plaintiffs to these enforcement actions. *Id.* § 171.208(b)(3);

(6) Providing that anyone who challenges S.B. 8 *or any other* "law that regulates or restricts abortion" can be forced to pay the attorney's fees of the party defending the restriction unless they win on *every* claim they bring. Tex. Civ. Prac. & Rem. Code § 30.022. If the party defending the restriction prevails on a single claim—for instance, if the court rejects one claim pleaded in the alternative—the challenger *and* their attorney are liable for the proponent's attorney's fees.

Together, these enforcement mechanisms are designed to have an *in terrorem* effect on abortion providers; and they've worked. Abortion care providers, including Dr. Braid, cannot risk ruinous financial penalties or the risk to their medical licenses and practices. 56.1 ¶ 8. Consequently, post-cardiac-activity abortions—*i.e.* abortions later than approximately six weeks LMP, a benchmark that falls long before viability—have disappeared in Texas. 56.1 ¶ 8. This means Texas patients seeking abortions must travel, if they are able, to other states or countries to receive medical care; must take potentially dangerous steps to attempt to manage their care on their own, without the assistance of licensed healthcare professionals; or must otherwise be compelled to carry pregnancies to term in spite of risk to personal health or a desire to end the pregnancy for whatever reason. 56.1 ¶ 9. For months, clinics in neighboring states like Oklahoma, Louisiana, New Mexico, and Mississippi have been inundated with patients traveling from Texas, creating weeks if not months long waits for appointments. 56.1 ¶¶ 10.

## II. Abortion providers' federal pre-enforcement challenges have been shelved.

The State of Texas's effort to shield its unconstitutional ban from a pre-enforcement

challenge succeeded. On July 13, 2021—well before S.B. 8's September 1 effective date—Texas abortion providers, including Dr. Braid, brought suit in federal court against putative classes of state court judges and district court clerks to block S.B. 8's enforcement. 56.1 ¶ 18. On August 25, the District Court denied defendants' motion to dismiss and the providers prepared for an August 30 preliminary injunction hearing at which they would seek an injunction barring implementation of S.B. 8. 56.1 ¶ 19.

That hearing never happened because the District Court was not permitted to hold it. Defendants appealed the denial of their motions to dismiss on August 26. 56.1 ¶ 20. The next day, a Fifth Circuit panel granted "a temporary administrative stay" of the district court proceedings, including the injunction hearing. 56.1 ¶ 21.

Abortion providers filed emergency applications with the Fifth Circuit after midnight on August 29, which the appeals court denied 12 hours later. *Whole Woman's Health v. Jackson*, No. 21-50792, 2021 WL 3919252, at *1 (5th Cir. Aug. 29, 2021). The providers then sought an emergency application to the U.S. Supreme Court. At midnight on September 1, S.B. 8 took effect and effectively outlawed most abortions in Texas. Later that evening, a 5-4 Court denied the request for emergency injunctive relief. *Whole Woman's Health v. Jackson*, No. 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021).

The Supreme Court's 5-4 decision allowed S.B. 8 to continue in effect, and it remains so today. This is despite the fact that every Member of the Supreme Court had, at a minimum, "serious questions regarding the constitutionality of the Texas law at issue." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) (unsigned majority opinion). Chief Justice Roberts called the law "unusual and unprecedented" and accused Texas of attempting to "insulate the State from responsibility for implementing and enforcing the regulatory regime." *Id.* at 2496 (Roberts, C.J.,

dissenting). Although it chose not to enjoin the law at that time, the Court's majority emphasized that its September 1, 2021 order "is not based on any conclusion about the constitutionality of Texas's law, and in no way limits other procedurally proper challenges to the Texas law. . . ." *Id.* at 2495.

On September 9, the United States filed a new suit against Texas seeking to block enforcement of S.B. 8 and sought emergency injunctive relief. 56.1 ¶ 23. The District Court (Judge Pitman) held a hearing on October 1, heard three hours of argument and evidence (56.1 ¶ 24) and, on October 6, granted the preliminary injunction in a 113-page Order. *See United States v. Tex.*, No. 1:21-CV-796-RP, 2021 WL 4593319 (W.D. Tex. Oct. 6, 2021), *cert. granted before judgment*, 142 S. Ct. 14 (2021).

> Judge Pitman's Order directly addressed Texas's motivations underlying S.B. 8:
>
> A person's right under the Constitution to choose to obtain an abortion prior to fetal viability is well established. Fully aware that depriving its citizens of this right by direct state action would be flagrantly unconstitutional, the State contrived an unprecedented and transparent statutory scheme to do just that. The State created a private cause of action by which individuals with no personal interest in, or connection to, a person seeking an abortion would be incentivized to use the state's judicial system, judges, and court officials to interfere with the right to an abortion. Rather than subjecting its law to judicial review under the Constitution, the State deliberately circumvented the traditional process. It drafted the law with the intent to preclude review by federal courts that have the obligation to safeguard the very rights the statute likely violates.

*Id.* at *1. The State of Texas appealed the Order the same day. 56.1 ¶ 25. On October 9, the Fifth Circuit once again granted an administrative stay of Judge Pitman's ruling and on October 14, granted an emergency stay of the preliminary injunction. 56.1 ¶ 25. S.B. 8 once again became Texas law, and abortion providers in Texas once again were forced to stop providing care that is legal and constitutionally protected in 49 other states.

On October 22, 2021, the Supreme Court granted certiorari before judgment in both *U.S. v. Texas* and in *Whole Women's Health v. Jackson*. On December 10, 2021, after having heard oral

argument, a divided Supreme Court again failed to block S.B. 8. The majority held that Texas state court judges and district court clerks could not be enjoined from docketing or hearing S.B. 8 cases. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021). The U.S. Supreme Court then dismissed as improvidently granted its grant of certiorari in *U.S. v. Texas*. 142 S. Ct. 522 (2021).

Eight justices agreed that the *Whole Women's Health* lawsuit could proceed, but only against the Texas state licensing official defendants. 142 S. Ct. at 539. And despite a wish that, "[g]iven the ongoing chilling effect of the state law, the District Court should resolve this litigation and enter appropriate relief without delay," *Jackson*, 142 S. Ct. at 544 (Roberts, C.J., concurring in the judgment in part and dissenting in part), the case still has not returned to the District Court. Instead, the Fifth Circuit chose to certify questions to the Texas Supreme Court (despite having already been decided by the U.S. Supreme Court) regarding whether state licensing officials can enforce S.B. 8 under Texas law. *Whole Woman's Health v. Jackson*, 23 F.4th 380, 389 (5th Cir. 2022), *certified question accepted* (Jan. 21, 2022).

The result of all this is that, with the exception of two days in October, S.B. 8's six-week abortion ban has been in effect since September 1, 2021. For the past five and a half months, providers have been unable to lawfully provide, and patients have been unable to obtain, constitutionally protected health care in their home state after six weeks of pregnancy. 56.1 ¶ 11.

Dr. Braid is aware of only three federal lawsuits seeking to reinstate the constitutional rights of pregnant Texans. The first, *Whole Women's Health*, has been confined to a narrow challenge to the post-liability enforcement by state licensing officials, and any decision on the merits has been delayed while the Supreme Court of Texas considers the certified questions posed by the Fifth Circuit. In the second, *U.S. v. Texas*, Judge Pitman's Order has been indefinitely stayed by the Fifth Circuit, with next steps, if any, unclear. The third federal case is this one.

### III. Interpleader Plaintiff Dr. Braid

Dr. Braid is board-certified obstetrician and gynecologist licensed to practice medicine in the State of Texas. 56.1 ¶ 12. Dr. Braid has been providing reproductive healthcare, including abortion care, since the early 1970s. 56.1 ¶ 13.

On September 6, 2021, Dr. Braid provided an abortion to a patient who, though in her first trimester, had a pregnancy with detectible cardiac activity, thus falling within the scope of S.B. 8. 56.1 ¶ 14. Dr. Braid publicly disclosed this abortion in an op-ed published in the *Washington Post*, explaining why he chose to violate S.B. 8's ban: he had a duty of care to his patient and could not turn her away, having seen the devastating impact that can be caused by a lack of abortion care. 56.1 ¶ 15.

Dr. Braid has now been sued at least three times for that abortion, in three different courts and two different counties in Texas. 56.1 ¶¶ 26–28. Through this suit in the nature of interpleader he seeks to avoid the burden and confusion of defending himself in multiple venues, obviate the risk of conflicting judgments, and assert his constitutionally based defense to liability under S.B. 8.

### IV. Interpleader Defendants Oscar Stilley, Felipe Gomez, and "Texas Heartbeat Project"

One of the three lawsuits against Dr. Braid under S.B. 8 was brought by Oscar Stilley, a former attorney and resident of Arkansas. 56.1 ¶ 26. Mr. Stilley filed an S.B. 8 petition in state district court in Bexar County, Texas on September 20, 2021, seeking entitlement to the mandatory $10,000 minimum "statutory damages" awarded to a successful S.B. 8 claimant. 56.1 ¶ 26.

A second lawsuit was brought by Texas Heartbeat Project, which is the assumed name of Wolfgang P. Hirczy de Miño, a resident of Houston, Texas. 56.1 ¶ 27. Mr. Hirczy de Miño/Texas Heartbeat Project filed an S.B. 8 petition in state district court in Smith County, Texas on September 2, 2021, seeking entitlement to the mandatory, $10,000 minimum "statutory damages"

awarded to a successful S.B 8 claimant. 56.1 ¶ 27.

Felipe N. Gomez is a resident of Illinois. 56.1 ¶ 28. Mr. Gomez filed an amended S.B. 8 petition on September 23, 2021. Mr. Gomez has, variably, sought and denied entitlement to the mandatory, $10,000 minimum "statutory damages" awarded to a successful S.B. 8 claimant. 56.1 ¶ 28. Mr. Gomez filed his lawsuit in state district court in Bexar County, Texas. 56.1 ¶ 28.

## ARGUMENT

S.B. 8 imposes an unconstitutional ban on Dr. Braid's patients' right to pre-viability abortions after six weeks of pregnancy and violates Dr. Braid's equal-protection, due-process, and First Amendment rights, and other rights conferred by federal law—as well as the rights of other abortion care providers. Under this unconstitutional law, Interpleader Defendants each seek an award of the same single $10,000 statutory penalty against Dr. Braid and to enjoin Dr. Braid from providing any future abortions in violation of S.B. 8. Dr. Braid moves for summary judgment on his request for interpleader relief seeking declaratory judgment on his constitutional defenses to Interpleader Defendants' competing claims.

There is no "genuine dispute as to any material fact" regarding Dr. Braid's defenses: Interpleader Defendants seek to penalize and enjoin Dr. Braid for activity protected under the U.S. Constitution. Dr. Braid is "entitled to judgment as a matter of law" on all claims. Fed. R. Civ. P. 56(a); *see id.* 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery.").

## I. Interpleader Relief is Appropriate.

Actions in the nature of interpleader are appropriate where a party, here Dr. Braid, faces the potential for multiple conflicting claims and expensive, duplicative litigation. *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 448 F.2d 501, 504 (7th Cir. 1971). The interpleader statute, 28 U.S.C. § 1335, provides that "district courts shall have original jurisdiction of any civil action

of interpleader or in the nature of interpleader" filed by any plaintiff possessing a stake of $500 or more where, as here, (1) "[t]wo or more adverse claimants, of diverse citizenship . . are claiming or may claim to be entitled to such money or property," and (2) the plaintiff has deposited the contested money or property into the registry of the court. *Id.* § 1335(a).

Each Interpleader Defendant here has filed suit against Dr. Braid asserting a claim that, if successful, "shall" result in the imposition of a $10,000 minimum damages award; but under the statute, only one claimant can be entitled to the statutory penalty for the September 6 abortion Dr. Braid provided. S.B. 8 §§ 171.208(b)(2), (c); ECF No. 1, ¶¶ 24–29. Dr. Braid has deposited the contested $10,000 fund with the court, *see* ECF No. 17, and thus has met the requirements of 28 U.S.C. § 1335. Moreover, he has a "real and reasonable fear" of multiple liability or conflicting claims to a single fund by adverse claimants. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008); *Hamilton Steel Prods.*, 448 F.2d at 504. Interpleader provides an appropriate solution to the time and expense Dr. Braid faces in litigating over the same stake in multiple forums and the attendant risk of conflicting judgments and "must 'be liberally construed'" to effect its purpose. *JPMorgan Chase Bank, Nat'l Ass'n v. Black*, 2021 WL 4459482, at *5 (N.D. Ill. Sept. 29, 2021).

## II.    Section 3 of S.B. 8 Violates Dr. Braid's Patients' Substantive Due-Process Rights.

Under longstanding Supreme Court precedent and current law, the Constitutional protection of abortion is clear: the Fourteenth Amendment protects an individual's "right to terminate [] pregnancy before viability." *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2135 ((2020*)* (Roberts, C.J., concurring) (quoting *Casey,* 505 U.S. at 871).[2] The Supreme Court first

---

[2]    It is well-established that doctors and clinics have third-party standing to assert the rights of their patients. The Supreme Court has held as much three times in cases where, as here, the challenged law directly regulates the conduct of those providers in a way that burdens their patients' constitutional rights. *See City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 440 n.30 (1983), *overruled on other grounds by Casey*, 505 U.S. 833 (1992); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 62

established this right in *Roe* in 1973, and has reaffirmed it in an "unbroken line" of cases spanning

50 years, *Jackson Women's Health Org. v. Dobbs,* 945 F.3d 265, 269 (5th Cir. 2019), *cert. granted*,

No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021), including as recently as 2020, *see June*

*Med. Servs.*, 140 S. Ct. at 2135.

As the Supreme Court explained in *Casey*, "an undue burden exists, and therefore a

provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of

[an individual] seeking an abortion before the fetus attains viability." *Casey*, 505 U.S. at 878.

While many cases since *Casey* have tested precisely what constitutes a "substantial obstacle" or

"undue burden," it is beyond dispute that an outright ban on abortion prior to viability creates an

unconstitutional "undue burden" *See Casey*, 505 U.S. at 877.[3] Indeed, federal "courts have

'universally' invalidated laws that ban abortions beginning at a gestational age prior to viability."

*Planned Parenthood S. Atl. v. Wilson*, 520 F. Supp. 3d 823, 826 (D.S.C. 2021) (listing cases and

---

(1976); *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *June Med. Servs*., 140 S. Ct. at 2118 ("We have long permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations."); *id*. at 2135, 2142 (Roberts, C.J., concurring) (Louisiana law unconstitutionally burdened "women seeking previability abortions" where it regulated conduct of abortion providers).

[3] A pure financial penalty for provision of a legal, pre-viability abortion, is also unequivocally an undue burden. *See, e.g., Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1466–67 (8th Cir. 1995) (where statute would allow plaintiff to maintain an action for "ten thousand dollars in punitive damages," court found the "potential civil liability for even good-faith, reasonable mistakes is more than enough to chill the willingness of physicians to perform abortions" and "therefore . . . an undue burden on a woman's right to choose whether to terminate her pre-viability pregnancy"); *Planned Parenthood Minn., N. D., S. D. v. Daugaard*, 799 F. Supp. 2d 1048, 1074 (D.S.D. 2011) (where "physicians will be unwilling to perform abortions when faced with likely litigation" and "civil liability" for providing abortions not in compliance with prohibitive statute, undue burden established. *Cf. Whole Woman's Health v. Hellerstedt,* 136 S. Ct. 2292, 2317-8 (2016) (where abortion facilities faced with "considerable" costs to comply with statute resulting in closures, undue burden existed).

granting temporary restraining order of South Carolina six-week ban).[4]

### A. S.B. 8 prohibits abortion months before viability.

S.B. 8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac," and bans the provision of any abortion after "fetal heartbeat" has been detected. THSC §§ 171.201(1), 171.204. There is no genuine dispute that a prohibition on abortion after detection of a "fetal heartbeat," as defined in S.B. 8, is a pre-viability ban—and *per se* unconstitutional under binding precedent. *See supra* pp. 11–12; *see also MKB Mgm't Corp. v. Stenehjem*, 795 F.3d 768, 772–73 (8th Cir. 2015) (affirming grant of summary judgment because "there is no genuine dispute that [a six-week ban] generally prohibits abortions before viability"); *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246, 248 (5th Cir. 2020) (per curiam) (holding Mississippi's six-week ban unconstitutional, noting "all agree that cardiac activity can be detected well before the fetus is viable. That dooms the law.").

### B. Interpleader Defendants seek to enforce S.B. 8's unconstitutional ban on abortion against Dr. Braid through state action.

On September 6, 2021, Dr. Braid provided an abortion to a woman who, though still in her pregnancy and prior to the fetus's viability, was beyond S.B. 8's limit because the woman had a detectable "fetal heartbeat." 56.1 ¶ 14. Invoking the private right of action under S.B. 8, Interpleader Defendants now seek in state court to penalize Dr. Braid for providing his patient a pre-viability abortion protected under the U.S. Constitution, and to enjoin Dr. Braid from providing

---

[4] *See also Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*, 1 F.4th 552, 560, 564 (8th Cir. 2021), *reh'g en banc granted*, (July 13, 2021), *cert. denied sub nom. Schmitt[WHAT IS REST OF CAPTION]*, No. 21-3, 2021 WL 4509073 (U.S. Oct. 4, 2021) (affirming preliminary injunction of Missouri eight-week ban); *Little Rock Fam. Plan. Servs. v. Rutledge*, 984 F.3d 682, 688, 690 (8th Cir. 2021) (affirming preliminary injunction of Arkansas 18-week ban), *cert. filed*, No. 20-1434 (U.S. Apr. 13, 2021); *Robinson v. Marshall*, 415 F. Supp. 3d 1053, 1059 (M.D. Ala. 2019) (preliminary injunction of Alabama ban at all gestational ages).

13

patients any future constitutionally protected abortions. This lawsuit is the ***only*** pending federal court action in which a court is currently in the position to issue a declaratory judgment that S.B. 8 is unconstitutional and enjoin its enforcement by S.B. 8 claimants. *See supra*, pp. 5–8.

S.B. 8 empowers private plaintiffs to obtain injunctive relief prohibiting abortions before viability and to collect financial penalties from a defendant, even though the Fourteenth Amendment protects such conduct and prohibits states from imposing such burdens. But S.B. 8's enforcement is not ultimately in private hands: the relief Interpleader Defendants seek against Dr. Braid must necessarily be provided through Texas courts, which are state actors bound to act within the limits of the U.S. Constitution. *Shelley v. Kraemer,* 334 U.S. 1, 18 (1948). A Texas state court order enforcing S.B. 8 at the request of a private plaintiff constitutes a state action under the Fourteenth Amendment and is subject to its limits. *See id.* at 20 ("judicial action is not immunized from the operation of the Fourteenth Amendment"); *Cohen v. Cowles Media Co*., 501 U.S. 663, 668 (1991) (where "legal obligations would be enforced through the official power of the [] courts . . . that is enough to constitute 'state action' for purposes of the Fourteenth Amendment"); *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) (in a suit between private parties, where "courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms . . .[t]he test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised."). Texas state courts cannot grant relief that the Fourteenth Amendment forbids. *See Shelley* at 20 ("We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand."); *cf. Planned Parenthood of Cent. Mo*, 428 U.S. at 70 ("[W]e cannot hold that the State has the constitutional authority to give the . . . ability to prohibit the . . . terminat[ion] [of a] pregnancy,

14

when the State itself lacks that right."). But that is precisely what Interpleader Defendants seek and what S.B. 8 purports to allow: a state-provided order that would impose severe financial penalties on Dr. Braid for the provision of a constitutionally-protected pre-viability abortion and enjoin his provision of future pre-viability abortions—exactly the kind of ban, and burden, that *Casey* and *Roe* forbid. *See supra*; *Casey*, 505 U.S. at 846. Under *Casey*, *Roe*, and their progeny, state courts have no authority to grant the relief Interpleader Defendants seek.

Because any state court order granting the relief Interpleader Defendants request would itself be an unconstitutional state action in violation of substantive due process, Dr. Braid is entitled to a declaratory judgment that he may retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6.

## III. S.B. 8's Enforcement Provisions Independently Violate Dr. Braid's Federal Constitutional Rights and Are Preempted by Federal Law.

Because S.B. 8's prohibition on pre-viability abortions is unconstitutional, S.B. 8's enforcement mechanism serves no purpose and must fall along with the unconstitutional six-week ban. *See, e.g., Planned Parenthood S. Atl.*, 520 F. Supp. 3d at 825–27. But examined separately, the enforcement provisions alone are independently unconstitutional in multiple ways.

### A. S.B. 8's enforcement regime is preempted by federal law.

The Supremacy Clause of the U.S. Constitution establishes federal law as "the supreme Law of the Land," U.S. Const. art. VI, cl. 2, and it is the Supreme Court's "responsibility to say what" a constitutional provision "means." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012) (per curiam) (citation omitted). Federal rights declared by the Supreme Court "can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958).

S.B. 8 violates the Supremacy Clause and flouts the Supreme Court's jurisprudence by rewriting the Supreme Court's undue burden standard for state regulation of abortion.

*First*, S.B. 8 requires Dr. Braid in each action brought against him to prove affirmatively that an award of relief against him in that action will impose an undue burden on the constitutional right to abortion. THSC § 171.209(c). However, the Supreme Court has reiterated that an outright pre-viability abortion ban is *per se* unconstitutional without the need to show any burden. *See supra* pp. 11–13. Requiring Dr. Braid (and other S.B. 8 defendants like him) to instead prove that burden anew in every case effectively directs state courts to ignore the Supreme Court's direction on binding federal law. *Second*, S.B. 8 specifies only limited circumstances under which a court may find an undue burden and prohibits certain arguments to establish that burden. THSC § 171.209(c)–(d). For example, S.B. 8 states that an undue burden cannot be shown by "arguing or attempting to demonstrate that an award of relief against other defendants or other potential defendants will impose an undue burden on women seeking an abortion." THSC § 171.208(d)(2). These provisions direct state judges to close their eyes to the statewide impact of the law and instead look only to the burden created by an award of relief against the particular person sued (here, Dr. Braid) in that particular case. This directly contradicts Supreme Court case law mandating consideration of the real-world effect of statewide abortion restrictions, not just the impact of an award against Dr. Braid. *See Whole Woman's Health*, 136 S. Ct. at 2313 (applying undue-burden test to facially invalidate statewide abortion regulation that "led to the closure of half of Texas' clinics"); *see also June Med. Servs.*, 140 S. Ct. at 2140 (Roberts, C.J., concurring) (citing with approval this aspect of *Whole Woman's Health*'s analysis (citation omitted)). S.B. 8's enforcement provisions thus strip Dr. Braid of the "full constitutional defense" that the Supreme

Court has defined.[5]

The Supreme Court has sole authority to say what the federal Constitution means, and the Texas legislature may not interpose "limitations," such as those written in THSC § 171.209, on federal constitutional protections. *See Nitro-Lift Techs*, 568 U.S. at 21; *Cooper*, 358 U.S. at 17.

### B. S.B. 8's statutory damages provision violates Dr. Braid's 14th Amendment rights under the void for vagueness doctrine.

Under the Fourteenth Amendment's guarantee of due process, a law may be void for vagueness if it either "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality). This standard applies to civil statutes such as S.B. 8 that impose "quasi-criminal" penalties which are "prohibitory and stigmatizing." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 499 (1982); *see also Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001) (abortion regulations with "potentially significant civil and administrative penalties" were quasi-criminal and void for vagueness). And courts apply this standard "stringent[ly]" where, as here, a challenged law "threatens to inhibit the exercise of constitutionally protected rights." *Vill. of Hoffman Ests.*, 455 U.S. at 499.

S.B. 8's statutory penalty provision fails to inform abortion providers of the amount of liability they may face and openly invites arbitrary enforcement: it does not provide **any** "legally fixed standards" to govern the amount of liability, *Beckles v. United States*, 137 S. Ct. 886, 894 (2017), instead allowing for an open-ended penalty amount with no guidelines on what the imposed amount might be. S.B. 8 purports to make Dr. Braid liable for seemingly limitless

---

[5] *See* Transcript of Oral Argument at 14:19–15:5, *Whole Woman's Health v. Jackson*, No. 21-463 (Nov. 1, 2021) (Barrett, J), excerpt attached as Appendix B.

penalties to individuals (here, the Interpleader Defendants and potential countless others) to whom he has no connection, has never owed a duty, and has never caused any harm. Until Dr. Braid is required to pay the statutorily required penalty to any given S.B. 8 plaintiff, both the amount of the penalty and the person to whom it would have to be paid are completely unforeseeable and standardless. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 113–14 (1972) (statute's harm requirement, "demonstrated causality," and requirement that acts be "'willfully' done" inform the due-process inquiry). Although the statute limits Dr. Braid's minimum $10,000 payment to one S.B. 8 plaintiff, the penalty provision unconstitutionally invites arbitrary and discriminatory enforcement in determining the penalty's amount. *See Johnson v. United States*, 576 U.S. 591, 597 (2015) (statute's indeterminacy held to "invite[] arbitrary enforcement by judges" when determining a defendant's sentence); *Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966) (statute void for vagueness where it did not "place any conditions of any kind upon the jury's power to impose costs"); *Cross v. United States,* 892 F.3d 288, 306 (7th Cir. 2018) (statute void for vagueness because it impeded a person's efforts to "regulate his conduct so as to avoid particular penalties").

Not only does the statute provide no limit for the penalty that could be imposed, but also ***no basis whatsoever*** for determining the penalty's amount: the penalty is not tied to any harm suffered by any claimant or patient, and the statute is entirely silent as to what facts and circumstances might warrant a penalty above the minimum or what magnitude of increase a provider could reasonably expect to face. The financial consequences of liability under S.B. 8 are wholly unpredictable, left solely to the whims of a presiding judge. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) ("[T]he more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal

guidelines to govern law enforcement.") (internal quotations omitted); *see also supra* (citing *Johnson*, *Giaccio*, and *Cross*).

The statute is void for vagueness because it does not "place any conditions" for setting the penalties Dr. Braid may owe for the provision of the September 6 abortion.[6] On this basis too, Dr. Braid is entitled to summary judgment on his request for interpleader relief declaring that none of Interpleader Defendants is entitled to relief against him under S.B. 8.

### C.  S.B. 8's enforcement provisions violate Dr. Braid's constitutional guarantee of equal protection.

The Fourteenth Amendment's Equal Protection Clause directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). S.B. 8's enforcement provisions violate Dr. Braid's equal protection rights by subjecting him, his staff, and other abortion providers and supporters, to lawsuits in which the deck is stacked heavily against him in ways in which no other type of civil litigant in Texas is subjected. Not only has S.B. 8 allowed Dr. Braid to now be sued separately by three strangers (with potential for more suits) for the provision of a single abortion to which Interpleader Defendants have no connection, but it also purports to deprive him of the ability to mount a fair defense. No other class of civil litigants in Texas—or anywhere else—is subject to such a hostile legal framework full of unique

---

[6] S.B. 8 additionally violates void for vagueness doctrine because it creates impossible and unknowable risks for Dr. Braid and other providers in Texas: "[a]ids and abets" is undefined in the statute and has no uniform definition under Texas law; S.B. 8 imposes liability "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation" of the ban, THSC § 171.208(a)(2); and S.B. 8 imposes liability regardless of whether the person acted in reliance on a "court decision [that] had not been overruled when the defendant engaged in conduct that violates" S.B. 8, THSC § 171.208(e)(3). For Dr. Braid, as well as his staff—without whom he cannot legally provide abortion care under pre-existing Texas law—this creates an untenable situation. Due process does not permit such uncertainty, particularly where, as here, it will "lead citizens to steer far wider of the unlawful zone" to avoid S.B. 8's draconian penalties. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citations and internal quotation marks omitted).

rules designed to harass defendants and doom their defenses.

### 1.    *The enforcement provisions discriminate against abortion providers.*

S.B. 8's enforcement provisions discriminate against people who provide abortions.

S.B. 8 provides that Dr. Braid must pay a *minimum* of $10,000 for the September 6 abortion to one of the Interpleader Defendants should they succeed on their claims, even though none of them is connected to the abortion or has been harmed. THSC § 171.208(a)–(b). Dr. Braid knows of no other statute in Texas (or elsewhere) that purports to allow complete strangers to obtain seemingly unlimited damages without any connection to the alleged violation. Indeed, Texas courts examining statutes that imposed a civil penalty or statutory damages designed to penalize conduct have held that those penalties were actually punitive damages, which cannot be awarded to a private claimant unless the claimant recovers other damages (which requires a showing of harm). *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 464–67 (Tex. 2016); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 116–23 (Tex. App. 2015).

Additionally, S.B. 8 departs dramatically from generally applicable rules of civil procedure to maximize the burden on abortion providers and supporters.

*First*, S.B. 8 yokes defendants to a uniquely oppressive venue provision for enforcement actions. Venue in Texas usually lies only where the events giving rise to a claim took place or where the defendant resides, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), and a Texas state court may generally transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice," *id.* § 15.002(b). However, under S.B. 8, any Texan who sues can do so in their home county and can unilaterally veto a transfer of venue to a more appropriate and convenient forum. THSC § 171.210(a)(4), (b). Because "any person" can sue, this allows abortion providers to be sued multiple times for the same abortion by people in counties across the state. Indeed, here, Dr.

Braid has been sued in two different counties by the three Interpleader Defendants for the same abortion, and absent resolution here, will be forced to simultaneously defend those suits (and potentially others) across Texas.

S.B. 8 also purports to require courts to retry identical cases against abortion providers until the defendant loses and pays the $10,000 minimum penalty, so long as a different stranger files suit each time. *See id*. § 171.208(e)(5) (precluding defense of "non-mutual issue preclusion or non-mutual claim preclusion"). And people sued under S.B. 8 cannot rely "on any state or federal court decision that is not binding on the court in which the action has been brought." *Id*. § 171.208(e)(4). Indeed, S.B. 8 effectively directs state-court judges in enforcement actions to ignore judgments and injunctions issued by federal courts. *See* THSC § 171.212(e) (a "judicial injunction or declaration of unconstitutionality . . . is nothing more than an edict" that can be vacated by a court that "has a different understanding of the requirements of the . . . United States Constitution"). Thus, even if Dr. Braid is successful in his interpleader action before this Court, S.B. 8 purports to nullify any favorable decision by this Court in advance. These provisions create the real risk that Dr. Braid will have to defend multiple, vexatious lawsuits about the same abortion—even if he has overcome the Texas Legislature's scheme and prevailed in other suits about the same conduct. No one else in Texas must run this legal gauntlet.

*Next*, S.B. 8 further tips the scales by limiting the substantive defenses available to Dr. Braid in enforcement actions brought against him. As discussed above, it purports to disallow Dr. Braid from relying on the clear unconstitutionality of pre-viability abortion bans, and it mangles the undue-burden test by requiring courts to blind themselves to the ban's statewide impact. *See supra* at pp. 4–5, 16; THSC § 171.209(c), (d).

*Finally*, S.B. 8 awards costs and fees to prevailing claimants, even though every case they

bring would seek enforcement of a patently unconstitutional law, but it prohibits abortion providers and supporters from recouping the same if they defeat abusive vigilante lawsuits. *Id*. § 171.208(b), (i). This sharply departs from the generally applicable Texas rule allowing a prevailing defendant in a frivolous lawsuit, or a lawsuit brought to harass, to recover fees and costs incurred in opposing the litigation. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001–.002.

All these provisions, not typically found in Texas legislation, intend to chill and do in fact freeze the provision of constitutionally protected services. They do so by making S.B. 8 lawsuits uniquely difficult to defend and all but assuring that a lawsuit will to lead to liability, with multiple, ruinous and vexatious lawsuits in far-flung counties along the way. Because the statute treats S.B. 8 defendants differently than any other defendants in civil litigation, it violates the Equal Protection Clause. *City of Cleburne*, 473 U.S. at 439 ("all persons similarly situated should be treated alike").

2. ***The enforcement provisions violate Dr. Braid's Equal Protection rights.***

A challenged classification is subject to strict scrutiny if it burdens a fundamental right, meaning "one that is explicitly or implicitly protected by the Constitution." *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 429 (7th Cir. 1997) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–34 (1973)); *see also Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (applying strict scrutiny where "a statutory classification significantly interfere[d] with the exercise of a fundamental right"). S.B. 8's enforcement provisions burden the fundamental right to abortion, *supra* at pp. 11–13. Strict scrutiny thus applies, and the state must have a compelling interest and demonstrate that the statutory classification "fit[s] the compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate." *Grutter v. Bollinger*, 539 U.S. 306, 333 (2003) (internal quotation marks omitted). Even under rational-basis review, a law

that is plainly "drawn for the purpose of disadvantaging" a disfavored class is unconstitutional. *Romer v. Evans*, 517 U.S. 620, 633 (1996).

S.B. 8's enforcement scheme cannot survive any level of review because its transparent purpose is to suppress the exercise of protected constitutional rights. The State cannot possibly explain why subjecting abortion providers like Dr. Braid (and those who assist abortions) to uniquely burdensome lawsuits governed by gamed rules is necessary to achieve a legitimate, much less compelling, interest. "[I]f the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare [legislative] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *see also Romer*, 517 U.S. at 632 (striking down constitutional amendment for lack of a rational relationship to legitimate state interests).

S.B. 8 conflicts with Supreme Court interpretations of the federal constitution and infringes Dr. Braid's due process and equal protection rights. Dr. Braid is thus entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6.

## IV. Section 4 of S.B. 8 Violates Dr. Braid's First Amendment Rights.

Section 4 of S.B. 8 creates a standalone, one-way fee-shifting provision that is designed to deter and penalize anyone who challenges any Texas abortion restriction in state or federal court, including this Court, by seeking declaratory or injunctive relief preventing its enforcement. *See* Tex. Civ. Prac. & Rem. Code § 30.022. This provision purports to make Dr. Braid *and his attorneys jointly and severally liable* to pay the costs and attorney's fees of any other party to this litigation if the Court either dismisses Dr. Braid's claims for such equitable relief or enters judgment in one of the defendants' favor. Asserting these equitable remedies as part of his defense against

23

Interpleader Defendants' claims is a means for Dr. Braid and his attorneys to achieve lawful objectives through the court system and serves as a form of political expression. S.B. 8's deterrence scheme violates Dr. Braid's First Amendment free-speech and petition rights.

      **A.**    **Section 4 of S.B. 8 violates Dr. Braid's right to petition the courts.**

The First Amendment guarantees the right to petition the courts for redress of grievances. "Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 395 (2011). A state may not restrict the right to petition based on the content or viewpoint of a petitioner, *see City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003), or to insulate an unconstitutional act from review, *see Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001); *In re Primus*, 436 U.S. 412, 426, 432 (1978); *NAACP v. Button*, 371 U.S. 415, 429, 434 (1963) (recognizing that public-interest litigation "is a means for achieving . . . lawful objective[s]" that serves as "a form of political expression" and may not be curtailed to "smother[] all discussion looking to the eventual institution of litigation on behalf of the rights of members of an unpopular minority").

Under Section 4 of S.B. 8, if someone challenges any Texas abortion restriction and does not prevail every one of their claims, their opponent is deemed the "prevailing" party entitled to payment of their attorney's fees. Tex. Civ. Prac. & Rem. Code § 30.022. Thus, by asking this court to declare S.B. 8 unconstitutional, Dr. Braid could be forced to pay a successful S.B. 8 claimant's attorneys' fees even if Dr. Braid obtains full relief against an unconstitutional restriction, simply if one claim is dismissed or pleaded in the alternative. Constraining non-frivolous legal theories and claims available to civil-rights litigants is unconstitutional. *Velazquez*, 531 U.S. at 548.

      **B.**    **Section 4 of S.B. 8 violates Dr. Braid's right to freedom of speech.**

Section 4 also violates the First Amendment's Free Speech Clause and is subject to strict

scrutiny because it is as viewpoint- and "content-based as it gets." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2346 (2020); *see also Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015) (government regulations of content-based speech are subject to strict scrutiny); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995). S.B. 8 punishes litigants like Dr. Braid who are motivated to block the enforcement of a law that "regulates or restricts abortion." Tex. Civ. Prac. & Rem. Code § 30.022. In contrast, S.B. 8 does not impose a penalty on litigants whose seek to uphold such laws and to restrict access to abortion.

Ultimately, S.B. 8 seeks to suppress views that a majority of the Texas Legislature deemed unpopular and to avoid judicial scrutiny of the state's attempt to eviscerate abortion rights. Its goal cannot meet the rigors of strict scrutiny review: the State has no legitimate, much less compelling, interest in punishing advocates with whom it disagrees. *Moreno*, 413 U.S. at 534.[7] Additionally, the fee-shifting provision's broad sweep—purporting to apply in state and federal court, and forcing even litigants who obtain their requested relief to pay their opponents' fees—is antithetical to narrow tailoring. *See United States v. Playboy Ent. Grp., Inc*., 529 U.S. 803, 813 (2000) (where a "less restrictive alternative would serve the Government's purpose" in adopting a content-based restriction on speech, "the legislature must use that alternative").

By threatening Dr. Braid and his attorneys with massive liability for fees and costs, § 30.022 necessarily chills the exercise of his rights to free speech and to petition protected by the First Amendment, and he is entitled to declaratory relief that this provision is unconstitutional.

## CONCLUSION

The Court should grant Dr. Braid's motion for summary judgment.

---

[7] And as noted, Texas has no valid interest in insulating its unconstitutional laws from judicial review, *Velazquez*, 531 U.S. at 545.

Dated: February 17, 2022

Respectfully submitted,

*/s/ Katherine Peaslee*

Suyash Agrawal
Alethea Anne Swift
MASSEY & GAIL LLP
50 E. Washington Street
Suite 400
Chicago, Illinois 60602
(312) 283-1590
sagrawal@masseygail.com
aswift@masseygail.com

Marc Hearron*
CENTER FOR
REPRODUCTIVE RIGHTS
1634 Eye St., NW
Suite 600
Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
CENTER FOR
REPRODUCTIVE RIGHTS
199 Water Street
22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org

Neal S. Manne**
Mary Kathryn Sammons**
Abigail C. Noebels*
Katherine Peaslee*
Richard W. Hess*
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
(713) 653-7827
nmanne@susmangodfrey.com
ksammons@susmangodfrey.com
anoebels@susmangodfrey.com
kpeaslee@susmangodfrey.com
rhess@susmangodfrey.com

Shannon Rose Selden*
Meredith E. Stewart*
Ebony Ray*
DEBEVOISE & PLIMPTON LLP
919 Third Ave.
New York, NY 10022
(212) 909-6000
srselden@debevoise.com
mestewart@debevoise.com
eray@debevoise.com

*Counsel for Interpleader Plaintiff Alan Braid, M.D.*

*Appearing *pro hac vice*
** *Pro hac vice* forthcoming

**Certificate of Service**

I certify that on February 17, 2022, a true and correct copy of this document was served in accordance with the local rules on *pro se* parties and counsel of record who have appeared via electronic filing, and on Interpleader Defendant Wolfgang P. Hirczy De Mino via email in accordance with the Court's prior order.

/s/ *Katherine Peaslee*