IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALAN BRAID, MD                                              PLAINTIFF/
                                            COUNTERCLAIM DEFENDANT

v.                          Case No. 1:21-cv-05283

OSCAR STILLEY;                          INTERPLEADER DEFENDANT
                                            COUNTERCLAIM PLAINTIFF

FELIPE N. GOMEZ;
WOLFGANG P. HIRCZY DE MINO, PH.D.,
AKA "TEXAS HEARTBEAT PROJECT        INTERPLEADER DEFENDANTS

**INTERPLEADER DEFENDANT OSCAR STILLEY'S BRIEF IN RESPONSE
TO DR. BRAID'S MOTION FOR SUMMARY JUDGMENT**

Comes now Interpleader Defendant and Counterclaim Plaintiff Oscar Stilley,

(Stilley) and for his brief in response to Interpleader Plaintiff Alan Braid M.D.'s

motion for summary judgment, and states:

**TABLE OF CONTENTS**

# Contents

Background................................................................................................. 1

I.   The unconstitutionality of S.B.8 is an open secret..................................... 2

II.  S.B.8 is an assault on core constitutional rights. ..................................... 4

   A.   S.B.8 attacks the right of peaceful petition. ..................................... 4

   B.   S.B.8 attacks due process. ............................................................. 5

III. Source of political power for S.B.8........................................................... 7

   A.   Sabbaths and holy days rejected..................................................... 8

   B.   Religious myths loved and embraced............................................... 8

   C.   The result is a vicious attack on the foundations of western civilization. ..... 9

   D.   The moral foundations of S.B.8 are inherently contradictory. ................. 10

   E.   The religionists who supplied the political power for S.B.8 hate bastards, the genetically inferior, and social misfits as much as anyone else...................... 11

IV.  Braid seeks and should get appropriate declaratory relief. ........................... 15

   A.   An injunction is likely to be counterproductive................................... 15

   B.   S.B.8 has a sliver of constitutional merit, which should be respected. ........ 16

V.   S.B.8 is far from the first asymmetric attack on the constitution..................... 17

   A.   Stilley was denied the one direct appeal of his criminal conviction, to which he was and still is clearly entitled............................................................ 18

   B.   Stilley was routinely denied the ability to litigate meritorious legal claims against his captors, the DOJ-FBOP. .................................................... 20

   C.   Texas legislators have opportunities to show good faith. ............................ 22

      1.   Texas legislators have opportunity to prove lack of intent to finance S.B.8 by fraud. ................................................................................. 22

      2.   Texas legislators have opportunity to prove lack of intent to arbitrarily crush the fatherless or genetically inferior. ................................................ 23

   Conclusion ................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965) ........ 5

*Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 623 (7th Cir. 2002) ......................... 5

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ............................................ 1

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) .......... 5

**Statutes**

28 USC 2255 ............................................................................................. 19

Texas Health & Safety Code § 171.208(h) ....................................................... 5

Texas Health & Safety Code § 171.211(b-1) .................................................... 17

**Other Authorities**

1st Amendment ....................................................................................... 4

5th Amendment ...................................................................................... 9

English Bill of Rights of 1689 ..................................................................... 4

Exodus 19:16 ......................................................................................... 9

Exodus 20:12 ......................................................................................... 9

Exodus 20:17 ......................................................................................... 9

Exodus 21:21-23 ................................................................................... 11

I Cor. 11:20 ........................................................................................... 8

Jeremiah 42-44 ...................................................................................... 8

Magna Carta .......................................................................................... 4

Mark 7:9-13 ........................................................................................... 9

Background.

Interpleader Plaintiff Alan Braid brought this action, nominally as an interpleader. As a practical matter Braid's complaint is a challenge to the constitutional validity of Texas Senate Bill 8 (S.B.8), passed in 2021. S.B.8 is primarily the brainchild of Jonathan Mitchell, former Texas state solicitor general, and Bryan Hughes, a sitting Texas state senator.

S.B.8 masquerades as a law, but isn't. Anything repugnant to the Constitution is null and void. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) "It is emphatically the province and duty of the judicial department to say what the law is."

S.B.8 is comparable to Death Cap (*Amanita phalloides*) or Destroying Angel (several closely related species in the genus *Amanita)* mushrooms. These little fakers cause over 90% of deaths from poisonous mushrooms in the United States, precisely because they look so much like tasty edible mushrooms. The death they bring is horrifying and painful. Mushroom hunters are well served to *know the difference.*

S.B.8 wasn't even designed to be *a law*. It was contrived as a psychological operation (psych-op). It causes its victims to act contrary to their own interests. The goal was to cause a reaction similar to that known to medical science as an *allergy*. When the body launches an attack on an invader, disproportionate to the threat, and causes far worse problems than the perceived pathogen, we call it an "allergy." If the body can be convinced that the invader isn't the threat that it appears to be, the allergy can be "cured." The body simply ignores or greatly reduces

1

its reaction to such relatively innocuous substances as pollens, molds, the waste of dust mites, etc.

S.B.8 is a pure unadulterated *legislative fraud*. The promoters of S.B.8 knew this to be true. The legislators who voted on S.B.8 knew that a "yes" on S.B.8 was a plain and undeniable violation of their oath of office. Texas Attorney General Ken Paxton, defending S.B.8 in the federal court of US District Judge Robert Pitman, knew that he was *defending the indefensible*. Texas Governor Greg Abbott well knew S.B.8 to be a mischievous legal *nullity*, richly deserving of his veto pen.

## I. The unconstitutionality of S.B.8 is an open secret.

The legal world knew these facts as well as anyone. Stilley did everything in his power to get Interpleader Defendant Dr. Wolfgang P. Hirczy de Mino (de Mino) to recruit a Texas lawyer, or for that matter any lawyer at all, to assist in this litigation. After all, S.B.8 has a ridiculously lopsided attorney's fee provision. Pursuant to the terms of S.B.8, an attorney who prevails in *the slightest degree*, against an abortion provider, or anyone who "aids and abets" the provision of an abortion contrary to the terms of S.B.8, is entitled to attorney's fees not only against the party litigant, but also against any *lawyer and/or law firm* advocating for such party. If that doesn't constitute an attack on the constitutional right to counsel, in an action that is at least criminal/punitive *in character*, what does?

Stilley further offered Dr. de Mino any amount of assistance, to help him get CM/ECF permissions, enter his appearance in this litigation, draft pleadings according to rule and custom, and prosecute his claim of entitlement to $10,000 of

2

free money.  Stilley offered to subordinate all but three dollars of his claim to the interests of Dr. de Mino, on one condition.  Please recruit us a lawyer, preferably a crafty Texas lawyer, but if that's not possible, one with a pulse and a valid law license somewhere, *anywhere*.  Stilley knows all about that wonderful concept of attorneys *pro hac vice* (for this case only).

Why? Start with the fact that Dr. de Mino is the only *true believer* amongst the three musketeers defending S.B.8.  He is by all accounts actually supportive of S.B.8.  Nevertheless, his Texas state court case against Braid was dismissed without prejudice 3-1-2022, on de Mino's own motion.

In this federal case, de Mino first expertly dodged service, then defaulted when the Court authorized alternative service by email.  If our only *true believer* either can't be persuaded to recruit so much as token counsel, or can't succeed despite best efforts, what does that say about the merits of the cause?

Second, without a bar license amongst us, how do we ever test the right to attorney's fees for a "smidgen" of success?  Hughes, Mitchell & Company took the concept of "irrational exuberance" to new heights, in the drafting of the attorney's fee provisions.  Still, even at the height of their unrestrained euphoria they didn't think of authorizing "attorney's" fees for non-lawyers.

Despite the insanely stacked deck, in favor of Stilley, Gomez, and de Mino, the three of us can't seem to recruit a solitary *licensed* lawyer, whereas Dr. Braid apparently had no trouble recruiting, quite literally, *a dozen*. Then again, what's to fear, when the other side has no lawyers and thus no fees, has expended no costs

within the usual legal meaning of the term, and thus couldn't get so much as a nominal sum of fees and costs?

## II.    S.B.8 is an assault on core constitutional rights.

Consider now the core concepts of S.B.8.  It was without controversy an attack on human dignity, and an attack on property rights.  Abortion was the topic, but it wasn't the central issue.  The central issue was *procedural rights* guaranteed by the US Constitution.

### A.    S.B.8 attacks the right of peaceful petition.

The number one target of Hughes, Mitchell & Company was the 1st Amendment right of peaceful petition. Actually, this fundamental human right is easily traceable back 800 years to the Magna Carta, in 1215 CE.  This right received explicit protection in the English Bill of Rights of 1689, long before the American Revolution, which itself predates the Bill of Rights to the US Constitution, approved by the requisite ¾ of the states on December 15, 1791.

The proponents of S.B.8 attacked the right of peaceful petition by manufacturing plainly *penal* legal provisions concerning abortion, enforceable *solely* by private persons.  Stilley cannot within S.B.8 find a solitary provision, the object of which is compensatory in character.  S.B.8 is designed to *punish* those who *help* persons who avail themselves of the *constitutional right* to an abortion.

These causes of action were then distributed to the everyone in the world, *save and except* those who would naturally and probably enforce a penal law of the

4

State of Texas.  There is indeed a reason that Ken Paxton didn't intervene in this case to argue in favor of the constitutional validity of S.B.8.  He **can't**.  He is expressly forbidden to "…intervene in an action brought under this section."  See S.B.8, Texas Health & Safety Code ("THSC") § 171.208(h).

The job of arguing in favor of the constitutional validity of S.B.8 is delegated to nice people like Stilley, who of course intends to defend with zeal and vigor.  The proponents of S.B.8 expected Stilley to allow greed and covetousness, with a side of ideological irrationality, to control his thoughts and actions.  He was expected to enthusiastically argue in favor of a manifestly unconstitutional law, on the theory that it allows him to collect money from people he doesn't know, for *assisting others* in the exercise of fundamental, *natural* rights that Stilley himself has a *very long history of defending*. Zeal and vigor have a long reach, but perhaps not that long.

B.    S.B.8 attacks due process.

Second on the hit list of Hughes, Mitchell & Company is due process.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).  In *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 623 (7th Cir. 2002) the Court said "the essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'"

Persons facing the loss of an opportunity to obtain a needful abortion are denied the opportunity to be heard, in any meaningful way at all.  Everyone with a

5

stake in a needful abortion – the women, their spouses, significant others, parents, medical providers, friends, etc., all face the same fundamental challenge. The entire world has been deputized as their cold, heartless, impersonal enemy.  The entire world is authorized to sue anyone who *provided* an abortion, or *aided or abetted* in any way.

Except, of course, the woman who needed the abortion, and asked for it and got it and paid fair market value for it and was grateful for it. She is the one who makes the decision they hate, procures the deed they hate, and provides the revenue for continued provision of rational reproductive health care. The *modus operandi* of these enemies of the rule of law is to trash out the civil rights of *everyone who might help the woman*, in her greatest hour of need.

At common law, indictments had to allege that a crime was committed "against the peace and dignity of the state…"  Why else would the state have an interest in the matter?  Real murders naturally and probably disturb the peace, and can easily give rise to feuds.

Abortions do nothing of the sort. In doing research for this response, Stilley came across a story about a lawsuit by Hughes & Mitchell, acting as attorneys for Ashley Maxwell of Hood County and Sadie Weldon of Jack County.  Plaintiff's therein seek to depose Kamyon Conner, executive director of the Texas Equal Access Fund, and Neesha Davé, deputy director of the Lilith Fund for Reproductive Equity, two nonprofit abortion funds that provide financial assistance to patients seeking abortions. They think these records will allow them to sue people for

violating S.B.8.  They can't "generate leads" except by devious and oppressive means.

Just in case Hughes, Mitchell & Company has any interest in suing a defendant who **bites back**, Stilley on Monday, March 28, 2022 sent the sum of $104.24 to Texas Equal Access Fund.  Stilley in his statement of material facts says, under oath, that this money was donated to help someone get an abortion **forbidden** by S.B.8, but **protected** by the US Constitution.  If the apologists for S.B.8 want to make a point, this is their chance.

Why this amount?  That's the amount of Stilley's most recent royalty check for his book "Busting the Feds: How to Effectively Defend Yourself Against Federal Criminal Charges," sold on Amazon for $30 per copy.  Distilled to its essence, this book is an effort to help federal criminal defendants get that which S.B.8 deprives its victims – due process and peaceful petition, **without** unauthorized punishment or retaliation for standing firm in the claim of core constitutional rights.

## III.    Source of political power for S.B.8.

Whence came the political power for this mass hysteria?   Distilled to its essence, it is religion. Not *truth*, by any stretch of the imagination, nothing remotely close to *pure* religion, but *religion* nevertheless. Perhaps "religious harlotry" would be more accurate.  Consider just for a moment the foundations of the religion that has turned the constitution on its head.

### A.   Sabbaths and holy days rejected.

They despise the weekly sabbaths, the annual high sabbaths, (with the possible exception of a very tepid observance of Shavuot, AKA "Pentecost") Passover, and the rest of the appointments of Yahweh our Elohim.[1]  Indeed they virtually never use his name or his authorized titles, or the name of his son Yahshua the Messiah.  Virtually all bible translations (including those cited by Stilley herein) follow this pattern.

To understand why they eschew his name in favor of "the Lord" (which is essentially equivalent to "Baal") and eschew the name of Yahshua (meaning "Yahweh is Salvation") in favor of the ersatz translation of a translation "Jesus," read Jeremiah 42-44, especially 44:26.

### B.   Religious myths loved and embraced.

Having cast all of Elohim's holy days and celebrations behind their backs, they celebrate Mithra's birthday on December 25.  Their most important weekly meeting is on the first day of the week, known since time immemorial as Sun-day, Mithra's chosen day of worship.  Mithra is of course the elohim of the venerable sun, that great big ball of hydrogen up in the sky.  They disregard the 27 times Passover is mentioned in the New Testament, and seize upon "the Lord's supper" which is mentioned once in a sentence of negative construction.[2]  I Cor. 11:20. Of course, they enthusiastically celebrate Eostre's day, generally anglicized into "Easter."

---

[1]     "Elohim" is a transliteration of a Hebrew word meaning "mighty ones."  The singular is generally "El" or "Eloah."

[2]     Some translations find occasion to include the term "Lord's supper" more than once.

8

## C.   The result is a vicious attack on the foundations of western civilization.

They despise the tenth commandment,[3] against coveting.  How does one compel a woman to have a baby that will cost a half million dollars for every year the baby suffers through life on this earth?  By *coveting*.  You get the money at the barrel of a gun.  The vast sums required for such profound follies can't be raised by persuasion and guilt trips.

The fifth commandment,[4] about honoring father and mother, also must be fed into the rock crusher.  How else do they grab 15.3% off the top for their own devious vote-buying scams? How else do they nullify the salutary motivations cultivated by a society that *actually* honors father and mother, in the way explained by Yahshua the Messiah?[5]

They love the 9th commandment,[6] against perjury – until it comes time for them to obey it.  This should help us understand why 83 Texas State Representatives and 19 Texas State Senators made a complete mockery of their oath of office, by voting for S.B.8.  Every single legislator voting for S.B.8 rendered the 1st Amendment right of peaceful petition, and the 5th Amendment right of due process, a *de facto* nullity, with respect to the subject of S.B.8.

None of them honestly think their schemes are limited to abortion regulations.  They just thought up a scam to rip the linchpins out of western civilization, without much concern about the can of worms they'd open by their

---

[3]       Exodus 20:17
[4]       Exodus 20:12
[5]       Mark 7:9-13
[6]       Exodus 19:16

tactics. They've worked themselves into a lather over abortion. Logic, rationality, and legislative coherence go straight out the window. *Nothing else matters.*

> D.      The moral foundations of S.B.8 are inherently contradictory.

They don't believe their own story.  This can be proven with beliefs so universal that virtually none of them will attack the ideological underpinnings of the argument.

The logical underpinnings of S.B.8 are based on the idea that abortion is "murder."  Based on this theory they are virtually forced to say that a tragically defective embryo or fetus goes to "heaven" when it dies.  It matters not whether the death was spontaneous (a miscarriage) or an abortion.  Innocents go to heaven.

All or practically all of them believe that "God"[7] will give them a "new body."  This new body won't quite be an exact copy of the old body.  All defective or suboptimal sequences in the genetic code are replaced with brand new, ideal sequences, such that the entire genetic code is perfect.

Some women who thought they were childless will, upon entering heaven, discover to their great amazement that they have about three dozen of the most beautiful, healthy, and happy children imaginable.  Genetic inferiority has been converted into a great blessing, basically by the cogitations of religious "experts."

They believe all this because Baal (the LORD) has by their reading of the text promised it.  He does this because he loves humans so very much.

---

[7]      A Teutonic term about 1,500 years old, adopted by religionists who dislike the titles authorized in scripture.

Based on their theories, the greatest possible favor to a defective fetus is to abort it. Plus, this "sin" can be absolved by praying a prayer that can be prayed in the time it takes for an ordinary wage earner to earn fifty cents.[8] Everyone comes out better by following this strategy – in the absence of man-made prohibitions.

Their theories are contradicted by scripture. The covenant at Mt. Sinai gives *legal standing* to the husband/owner of the woman, and authorizes fair and reasonable *money damages only*, for loss of a fetus/embryo.[9] Of course, all these precepts can be **explained _away_** by the same professional religionists who **explained _away_** all of Yahweh's sabbaths and appointments, and **explained _in_** their beloved pagan celebrations.

Beware of elohim (mighty ones) that are mighty far away, in space and time, and pathetically weak up close and personal.

### E.      The religionists who supplied the political power for S.B.8 hate bastards, the genetically inferior, and social misfits as much as anyone else.

The proponents of S.B.8 don't like bastards any better than anyone else. Those who heed their propaganda do so at their own peril.

For example, Texas denies over 90% of applicants for Temporary Assistance to Needy Families (TANF). To qualify for TANF in Texas, a single caretaker with two children must have less than $1,000 in assets and bring in less than $188 per month. MSNBC is glad to tell you all about this story.

---

[8]      Thus Stilley's term "fifty cent prayer."

[9]      Exodus 21:22-25, NIV. Biblegateway.com makes it easy to compare versions.

Ordinarily, it costs about $240,000 to properly raise a child. The Texas legislature claims the ability to dispose of inconvenient economic realities by *legislative fiat*. In reality they create massive economic liabilities, and then dump as much liability as possible onto the taxpayers of the other 49 states.

Texas has special places for fatherless and genetically inferior persons. They're called "prisons." They've killed plenty of inmates with extreme heat, and permanently damaged many others. Fast Company explained the situation well. Incarcerated bastards who seek respite from deadly heat must quite literally prove that *their ass* is overheated, such that death or serious bodily injury is imminent.

Oral thermometers don't count because they don't care that they're about to fry some poor bastard's *brain*. The brains of the fatherless are quite expendable. In order to go to a cool area of the prison, you must prove that you have a *totally hot ass*, as demonstrated by a well calibrated *rectal* thermometer.

That's a dual purpose rule. First, it squanders medical resources, so the psychopaths in charge of the prisons can accuse of the prisoners of being the cause of inadequate medical care. Plus, it so utterly humiliates the inmates that some will be too far gone to save from death or permanent bodily injury, before they acquiesce to it.

Stilley rode a bus from the Oklahoma City Federal Transfer Center (OKC-FTC) to FCI Beaumont Low. Driving past a Texas state prison, he looked at the "yard." Stilley did not see a solitary tree or bush in the entire yard. Prisons are made of steel and concrete. Thus they basically become ovens in the Texas sun. Despite a virtually unlimited supply of practically free labor, Texas won't show

12

inmates the small kindness of the shade of a tree. According to the story in the previous link, the State of Texas chose to spend $7 million on legal fees in defense of this particular example of arbitrary cruelty, rather than to spend $4 million to install air conditioning. Know of a certainty that the inmates would work hard and pay every cent of the cost of air conditioning, given reasonable opportunity so to do.

Soon after Stilley arrived at Beaumont Low, he heard the Captain announce a new rule over the PA system. Inmates would henceforth be forbidden to bring salt, pepper, or condiments of any kind to the chow hall. Of course they had long forbidden any inmate to carry food out of the chow hall – if you wanted salt on your food, you had to carry it to chow hall with you.

The US Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) has official recipes which require the inclusion of salt and spices. FCI Beaumont Low made a complete mockery of that rule, so much that the food was almost completely unseasoned, and barely edible. Then again, FCI Beaumont Low made a complete mockery of most of the official rules that govern the operations of federal prisons.

Stilley carried his salt to the chow hall the next day. He made no attempt to hide the salt – he put it in his front pants pocket, not in a sock where he routinely stashed stuff he wanted to hide. The prison had about 20 or 30 guards in front of the chow hall, to enforce the new rule.

Stilley was immediately accosted by a sharp-eyed guard and asked to identify the suspicious bulge in his pants pocket. Stilley pulled it out with a smile, and explained that it was just a salt shaker he purchased from commissary.

13

The guard said "give me that!" Stilley politely asked "can I get a receipt?" This went back and forth a couple of times, whereupon Stilley was told to put his hands on the wall. Stilley immediately complied, all while keeping the salt shaker in his hands. A whole gaggle of guards, sensing an impending opportunity to manhandle a dissident, gathered round to demand the salt. Stilley kept repeating the question "can I get a receipt?" Stilley knew that DOJ-FBOP rules forbade the confiscation of inmate property without a receipt.

Stilley was grabbed off the wall, thrown to the concrete, and dogpiled. A guy Stilley knows only as "Lt. Fontenot," who weighed about 350 pounds, put his knee in Stilley's back and bore down on it. Faced with a serious likelihood of broken ribs, Stilley released his grip on the salt shaker.

Stilley went to SHU (Special Housing Unit, or jail for the prison) lost 27 days good time, and lost privileges.[10] Stilley's salt went to SHU with him, and was packed in his property and sent with him to his next prison, FCC Yazoo City Low, in Yazoo City, Mississippi.

Why does this matter? Partly because this was yet another battle over 1st Amendment peaceful petition and due process.[11] Partly because the DOJ-FBOP claims that Stilley has failed to exhaust a single remedy out of more than 50 attempts. Partly to show that the nice Texans running FCC Beaumont will spend

---

[10]    Stilley's challenge to this "shot" (formal disciplinary incident report) is at pages 15-18 of the record in Stilley v. Garland, 5th Cir. 21-60022. Stilley's exhibits in support are at pages 92-102.
[11]    Stilley filed a 69 page lawsuit, along with 285 pages of exhibits. Both documents have detailed tables of contents. Stilley is using the full record, which is 17 megabytes. Stilley v. Garland TOC;  Stilley v. Garland Exhibits TOC. Stilley's opening brief, in 5th Cir. 21-60022, the government's response brief, and Stilley's reply brief are also available. Unfortunately, the links to the record, in the briefs, don't work except within the 5th Circuit's internal system.

massive amounts of money for no purpose other than to make the lives of the fatherless more intolerable than that which is justifiable by their own economic interests. In other words, their behavior is the product of psychopathic tendencies.

Thus we can see that S.B.8 is the product of utterly irrational religious delusions, giving rise to public support and political power, in turn triggering an equally irrational and counterproductive attack upon the very foundations of western civilization.

## IV.   Braid seeks and should get appropriate declaratory relief.

Stilley has reviewed the Motion for Summary Judgment, (Dkt. 75) the brief in support, (Dkt. 75-1), the statement of material facts (Dkt. 75-2), and Appendix A, a well-organized set of 21 exhibits totaling 338 pages, and arrived at the following conclusion. By Stilley's reading, Dr. Braid seeks declaratory but not injunctive relief.

### A.      An injunction is likely to be counterproductive.

Actually, an injunction would be worse than useless. Hughes, Mitchell & Company would like nothing better than a permanent injunction against Stilley, ordering him to refrain from any S.B.8 litigation anywhere.

Why?  First because Stilley engages in plain speech concerning the pernicious motivations and disastrous effects of S.B.8.  Second, Stilley is the antidote for S.B.8. Stilley's lawsuit in Bexar County, Texas was brought for the purpose of defending the rights of peaceful petition and due process against a devious attack.  When that suit ceases to further that goal, it will be dismissed "*without prejudice*."

15

That's not because of any disagreement with Braid. That's because a dismissal *with* prejudice would bar Stilley from providing Braid with the prophylactic judgment described in US v. Texas, TXWD 1:21-cv-796, Dkt. 48, pgs. 5-7. Hughes, Mitchell & Company are presumably smart enough to know why recruiting any other plaintiff is a lost cause, in the face of that threat.

We also need to know that the Baal[12] Belt, top to bottom stem to stern, is clamoring each for some new and improved iteration of S.B.8. For example, Arkansas State Senator Jason Rapert just can't wait for a whole keg of Texas Kool-Aid. Actually, Rapert is not interested in the legal intricacies of S.B.8. Rapert is happy to rush in where angels fear to tread. Damn the torpedoes, here comes Rapert, full speed ahead!

He wants a $100,000 fine, 10 years in prison, and "felon" status for a doctor who aborts a severely defective embryo produced by a rapist who used a date rape drug, that would live 10 miserable years, wreck the woman's ability to produce and enjoy healthy children, and cost taxpayers $5 million in medical costs.

Is this an overstatement? Take a look at Arkansas Act 309, especially page 4, and tell me what I got wrong. Count the co-sponsoring senators, and remember that the Arkansas Senate only has 35 members. Basically, they're falling over themselves, trying to see who can be the first, the harshest, and the most hateful.

B.      S.B.8 has a sliver of constitutional merit, which should be respected.

---

[12]     It is hardly fair to call this geographic region the "Bible Belt" since they make such a mockery of the Holy Writ, and maintain such hostility to reading, rumination, or repentance from sin *as their Creator defines sin*.

S.B.8 does in fact have the tiniest sliver of validity, which Stilley is pleased to show this Honorable Court. That sliver can be adequately protected by what this Court *does not do*. Consider now THSC § 171.211(b-1), which reads as follows:

> (b-1) If any court declares or finds a provision of this chapter facially unconstitutional, when ***discrete applications*** of that provision can be enforced against a person, group of persons, or ***circumstances*** without violating the United States Constitution and Texas Constitution, those applications shall be severed from all remaining applications of the provision, and the provision shall be interpreted as if the legislature had enacted a provision limited to the persons, group of persons, or ***circumstances*** for which the provision's application will not violate the United States Constitution and Texas Constitution. (Emphases added)

When Stilley sues Braid or other abortion providers, under the ***circumstances*** described in US v. Texas, TXWD 1:21-cv-796, Dkt. 48, pgs. 5-7, so as to inoculate the provider against any other attackers at minimal cost, Stilley's litigation efforts do not violate the constitution. On the contrary, such litigation honors the 1st Amendment right of peaceful petition, the right of due process, and other constitutional rights.

This Court can protect the tiny sliver of constitutionality inadvertently included in S.B.8, by the grant of suitably worded declaratory relief.

## V.    S.B.8 is far from the first asymmetric attack on the constitution.

It would be a mistake to conclude that S.B.8 is a brand new idea. Powerful people have been using deceitful tricks to deprive their adversaries of the natural rights of peaceful petition and due process, for a long time. Our own federal government is one of the worst offenders. Their hands are far from clean.

A.     Stilley was denied the one direct appeal of his criminal conviction, to which he was and still is clearly entitled.

After more than ten years in federal prison, Stilley was sent to home confinement. Home confinement gave him access to computers and peripherals, which is the only reason Stilley is able to prepare this pleading so as to be reasonably presentable.

Stilley has prepared a full set of the pleadings and papers filed in his failed effort to get the one direct appeal to which he was and still is entitled. This set has added ordinal numbers with links to the underlying documents, for the convenience of the reader. 10th Circuit Docket 10-5057 This record plainly shows that Stilley put forth every reasonable effort, in conformity with the applicable rules, but was wrongfully denied the one direct appeal to which he is by law entitled.

After coming to home confinement, Stilley filed a motion for reduction of his sentence (Dkt. 694) along with a timeline (Dkt. 694-4)[13] and a brief in support. Dkt. 695 One of the key elements of this submission was the Proposed Preliminary Order. Stilley in the proposed order and otherwise made it clear that his goal was to *first get an accurate record*. A ruling could be had afterward.[14]

Both Special Assistant US Attorney Charles Anthony O'Reilly, California Bar # 160980, who prosecuted Stilley, and Stephen P. Friot, who presided in the criminal case, knew of a certainty that Stilley's judgment and conviction cannot

---

[13]     The filed version of this document has corrupted links. They work badly within the court's computer system, and not at all for everyone else. That's why this document is not filemarked.

[14]     Stilley has prepared a partial docket including all material items filed since Stilley left prison, with links. Dkt. 693-730 A stacked full set, consisting of over 400 pages, is available here.

survive a ***truthful record***. That's why they opposed it and defeated Stilley's efforts to get it.

Both said that Stilley would lose his motion for reduction of sentence, with or without a truthful record. Technically, they were right. They weren't worried about ***that motion***. They had that covered.

They were justifiably worried about ***what was coming next***. They knew that Stilley would use the accurate record to get Stilley's judgment and commitment order ([Dkt. 338](#)) overturned and set aside altogether.

Stilley later filed an 81 page motion to set aside his conviction under 28 USC 2255. [Dkt. 701](#) O'Reilly moved to dismiss, and Judge Friot granted it. Judge Friot also "dismissed" a motion to compel the government to turn over the physical address, phone number, and email address of Stilley's co-defendant Lindsey Kent Springer. [Dkt. 702](#)

Stilley appealed. He asked the 10th Circuit Court to order the government to turn over Springer's contact information. This was denied on grounds that Stilley hadn't shown legal authority for the request. Stilley filed a 5,180 word [motion for reconsideration](#), showing the circuit judges that their own local rules required that this information be kept current. Stilley showed that the government was deliberately obstructing Stilley's access to *evidence* that would necessarily require Stilley's immediate release.

This was [denied](#) without waiting for a response from the government. Basically, the point of the order was that the law and facts don't matter. Stilley's not going to get due process even where their own rules plainly require it.

Stilley's enemies and adversaries know for a fact that he is innocent. They know of a certainty that his conviction cannot survive an ***honest record***.

### B. Stilley was routinely denied the ability to litigate meritorious legal claims against his captors, the DOJ-FBOP.

Stilley filed well over 50 administrative remedy requests while in federal prison. The government argued, and the district court agreed, that Stilley had gone ***zero for 50***, with respect to his administrative remedies.[15]

Stilley spent some 19 years practicing law, much of it as a national practice in federal courts. Stilley learned and followed a new set of rules for almost every new case. Yet the DOJ-FBOP claims that Stilley could not learn and follow procedural rules, even when his very liberty depended upon it.

Let me translate. The mighty US Department of ***In***Justice is saying that no matter your skill, experience, determination, or effort, we will virtually never ***admit*** that you have exhausted any meritorious administrative remedy requests. It's our left-handed way of complimenting the merits of your claims, at the same time we tell you that you will not, under any circumstances, get the "keys to the courthouse" so as to litigate your claims.

Consider the following summary of some of Stilley's efforts to get due process in federal prison, for himself and/or others:

---

[15]    At page 472 of the record in Stilley v. Garland, Lisa Singleton says, in paragraph 12, that "Stilley failed to comply with and complete the Bureau's administrative remedy program for any one remedy series. In paragraph 13 she says that "…he failed to exhaust his administrative remedies for the claims in his complaint." Taken together, those statements allege that Stilley had at the time exhausted no remedies out of more than 50 attempts.

1) Stilley prepared about 40 tort claims for fellow inmates at FCC Forrest City Low, helped file lawsuits, etc. Stilley was shipped to FCI Oakdale-1, which caused his string of litigation to collapse.[16] That was the goal of the transfer.

2) Stilley prepared about 15 tort claims at FCI Oakdale-1, for which he was again subjected to a retaliatory transfer. This time they stole his paper tort claim files, kept in a set of neatly labeled manila envelopes. They "timed out" his Trulincs files, so he couldn't re-create the files by printing again. DOJ-FBOP personnel knew exactly what to steal, and what to ignore.

3) Stilley has been in SHU (Special Housing Unit, or jail for the prison) on hunger strike, for an aggregate total of more than 400 days of actual hunger strike, not counting time eating to get off hunger strike. The first 4 hunger strikes were self-declared, but most of the remainder were retaliation for constitutionally protected activities. Stilley has been force fed with a nasogastric tube 8 times, and threatened with it many more times.[17] The great majority of this hunger striking was related to Stilley's efforts to get due process and reasonable access to the courts, for himself and/or for others.

---

[16]     Stilley still has the list, compacted to 4 pages per page while in prison for reasons of space. This list, which is not made public here, contains the cryptic stories of a lot of shattered hopes and dreams.
[17]     The DOJ-FBOP has been promising, since 2011, to provide a set of Stilley's medical records. Other than the videos of 2 force feedings, they still haven't turned over these records, despite repeated polite request.

### C. Texas legislators have opportunities to show good faith.

Stilley hereby provides to the Texas legislature two opportunities to show that S.B.8 was not the product of total defiance to the constitutions of the United States and the great State of Texas.[18]

### 1. Texas legislators have opportunity to prove lack of intent to finance S.B.8 by fraud.

Texas has arrogated to itself the power to compel women to give birth to babies, against their own better judgment, even when the cost of keeping the baby alive will be many millions of dollars, early death is a certainty, etc. Of course they have no intention of presenting the bill to *Texas* taxpayers – at least not the lion's share of it. They intend to finance their adventures primarily on *federal* money. The Texas legislature relies on the federal tax system to finance its utopian dreams.

Those who supported S.B.8 now have a chance to prove that they do not intend to finance their dreams by way of utter frauds against criminal defendants. Our justice system provides a simple method for anyone to exhibit their opposition to the ethical violations of attorneys.

This can be done by the simple expedient of sending a copy of docket # 699, or Stilley's motion for reconsideration of denial of co-defendant's contact information, or some other suitable pleading, to the appropriate attorney ethics authorities of California, Oklahoma, or Colorado, as a formal complaint against the attorneys

---

[18] Stilley's due process to these legislators ranks right up with the due process accorded to the targets of S.B.8. If the 4th Estate doesn't give them notice and opportunity to be heard, they probably won't even know this was written.

22

whose ethical violations now keep Stilley falsely imprisoned. Texas legislators have the opportunity of showing their constituents that they will not **_knowingly_** finance the follies of S.B.8 by sending innocent people to prison for acts that are, by the government's own admission, not a crime alleged in the purported indictment.

If that's too much work, they can accomplish the same result by simply _speaking the word_, to Oscar Stilley. Stilley by his education and experience is well adapted to such tasks.

Stilley's appeal brief on his motion to vacate, set aside, or correct his sentence (also requesting a certificate of appealability) is due 4-18-2022. Stilley submits that this is sufficient time for the proponents of S.B.8 to either accept or decline this opportunity. Opportunities come and go – they don't last forever.

>   2.    Texas legislators have opportunity to prove lack of intent to arbitrarily crush the fatherless or genetically inferior.

Second, all these wonderful Texas legislators can demonstrate, in a tangible way, that they do not intend to crush the fatherless or the genetically inferior, in contravention of the Standards and Expected Practices of the American Correctional Association (ACA). There is no need to spend any of the tax money of their constituents to achieve this objective.

Stilley has on about 10 occasions caused the submission of an offer to donate 10 computers, software, support, etc., to the DOJ-FBOP. Stilley sent the letter in his own name, then recruited others to send essentially the same letter in their respective names. Stilley explained that the hard part was getting permission. Inmates would gladly pay all the costs, if permission could be procured.

23

The cover letter used to make this offer is Appendix 10 to *Busting the Feds*. The offer itself is Appendix 11.

The DOJ routinely acknowledges receipt of these communications. They just won't say anything else. They zip their lips, because they know that anything they say will condemn them for their evil deeds. Much like Texas "correctional" authorities, they are arbitrarily cruel to the fatherless. They waste or misappropriate money appropriated to help the fatherless and the genetically inferior gain marketable skills, and raise themselves above their former condition.

The idea that air conditioning, other means of moderating extreme temperatures, quality educational resources, etc., necessarily requires the economic resources of Texas **taxpayers** is not accurate. Prison inmates are grown men. They have sufficient saleable skills to pay for such things – if they aren't obstructed from access to reasonable economic opportunity. Various Standards and Expected Practices of the ACA require that inmates have access to reasonable economic opportunities. Those requirements are honored mostly in the breach.

## Conclusion

Dr. Braid is entitled to declaratory judgment, not inconsistent with the very few constitutionally sound applications of S.B.8.

Respectfully submitted.


By: /s/ Oscar Stilley                    March 28, 2022
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 cell phone
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Oscar Stilley by his signature above certifies that on the date stated above he filed and served this pleading via CM/ECF, and that all parties entitled to service will be served electronically. Stilley also will serve Wolfgang P. Hirczy de Mino, Ph.D., with a filemarked copy via email at wphdmphd@gmail.com, promptly upon receiving the filemarked version of the document.