

FILED

4/25/2022

AK

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# United States District Court

## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| **ALAN BRAID, Plaintiff**<br><br>v<br><br>**OSCAR STILLEY, FELIPE GOMEZ, et al.**<br>**Defendants** | **Case No: 21 cv 5283**<br><br><br><br>Hon. Judge Jorge L Alonso |

### GOMEZ MOTION FOR JUDICIAL NOTICE OF TEXAS COURT ORDERS CONFIRMING DISMISSAL OF *DEMINO v GOMEZ, 4-21-00017, GOMEZ v BRAID, 21CI19920, BEXAR CO. TX,* AND *THP v BRAID, 21-2276-C/B, SMITH CO. TX* AND OF COMPLAINT [1]

### NOW COMES "INTERPLEADER" DEFENDANT GOMEZ and REQUESTS

**AND HEREBY MOVE**S for FRE 201 Judicial Notice of the attached Texas Court

Orders, and The Complaint [1] as Presented Hereby:

1. 3.1.22 Smith Co., Texas, District Court Order Affirming Dismissal of *"THP" v Braid, 21-2276-C/B* (*Attachment A*).

2. 4.19.22 Texas Fourth Appeals Court Order Affirming Dismissal of *Gomez v Braid 21-CI19920*. (*Attachment B*).

3. Plaintiff's Relief Sought at 10.5.21 Braid Complaint [1] at Page 23, Section V.b., (*Attachment C, without attachments*) specifically Dr. Braid's request that the Court engage in:

   "b. Determining who among the parties is entitled to the statutory damages award associated with a successful suit against Dr. Braid for his performance of the September 6 [sic - *complete date missing in original*] abortion, or any part of that award;".

FRE 201 Notice Respectfully Requested By:    *s/Felipe Gomez, Pro Se*    Date: 4.25.22

Felipe Gomez

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

Undersigned Felipe Gomez, Pro Se, hereby certifies that he personally filed the foregoing Motion, as well as this Certificate by way of the U.S. District Court for the Northen Illinois CM/ECF e-filing system, and that a full e-copy is e-mailed to the other parties of record by way of the CM/ECF system, on this date.

CERTIFIED BY: *Felipe Gomez,Pro Se*
Dated: 4.25.22

Felipe Gomez
PO Box 7139
Villa Park, IL 6181
312.509.2071
fgomez9592@gmail.com

**ATTACHMENT A**

**3.1.22 SMITH COUNTY COURT ORDER AFFIRMING DEMINO NON-SUIT OF 21-2276-C/B**

Case No. 21-2276-C/B

| | | |
|---|---|---|
| TEXAS HEARTBEAT PROJECT, | § | IN THE DISTRICT COURTS |
| *Plaintiff*, ("THP") | § | |
| | § | |
| v. | § | OF SMITH COUNTY, TX |
| | § | |
| ALAN BRAID, M.D., | § | |
| *Defendant*. | § | _____ JUDICIAL DISTRICT |

# NONSUIT ORDER

Plaintiff, TEXAS HEARTBEAT PROJECT ("THP"), having given notice of nonsuit as to the SB8 claim asserted by THP against Defendant, ALAN BRAID, MD, to be effective Monday, February 28, 2022, at noon Central Standard Time, and such pending claim not have been disposed of otherwise by that time, the nonsuit is hereby granted and rendered effective. It is accordingly ORDERED, ADJUDGED, and DECREED that THP's SB8 claim against Alan Braid, MD, is hereby DISMISSED ~~with prejudice~~ / without prejudice.

---

**RULE 162.   DISMISSAL OR NON-SUIT**

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21a on any party who has answered or has been served with process without necessity of court order.

Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court. Any dismissal pursuant to this rule which terminates the case shall authorize the clerk to tax court costs against dismissing party unless otherwise ordered by the court.

---

SIGNED THIS THE _____ DAY OF _____03/01/2022_____, 2022

_____
Presiding Judge or acting pursuant to TEX. CONST. art. V, § 11,
TEX. GOV'T CODE § 74.094(a), TEX.R. CIV. P. 330(e)(f)(g)(h).

**ATTACHMENT B**

**4.19.22 Order**

**Texas 4th Court Appeals**



# Fourth Court of Appeals
## San Antonio, Texas

April 19, 2022

No. 04-22-00017-CV

Wolfgang P. Hirczy **DE MINO**, Ph.D.,
Appellant

v.

Felipe N. **GOMEZ**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI19920
Honorable Cathleen M. Stryker, Judge Presiding

## O R D E R

Sitting:     Rebeca C. Martinez, Chief Justice
             Patricia O. Alvarez, Justice
             Lori I. Valenzuela, Justice

On February 16, 2022, this court issued an opinion and judgment dismissing this appeal for lack of jurisdiction. Also on February 16, 2022, appellant filed a motion for rehearing. After considering the motion for rehearing, the motion for rehearing is DENIED.

On February 24, 2022, appellant filed "Appellant's TRAP 10.5(a) Motion Regarding Irregularities in the Record." After considering the motion, the motion is DENIED.

It is so ORDERED on this 19th day of May, 2022.

PER CURIAM

ATTESTED TO: _____
MICHAEL A. CRUZ,
Clerk of Court

**ATTACHMENT C**

**Braid Complaint [1]**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALAN BRAID, M.D., | |
|            Interpleader Plaintiff, | |
|     v. | Case No: |
| OSCAR STILLEY; FELIPE N. GOMEZ; WOLFGANG P. HIRCZY DE MINO, PH.D., AKA TEXAS HEARTBEAT PROJECT, | |
|            Interpleader Defendants. | |

**COMPLAINT FOR INTERPLEADER AND**
**DECLARATORY JUDGMENT**

Interpleader Plaintiff Alan Braid, M.D. brings this action for interpleader and declaratory judgment and states as follows:

I. **PRELIMINARY STATEMENT**

1.     On September 1, 2021, Texas Senate Bill 8 ("SB8"), codified as Texas Health & Safety Code §§ 171.201 *et seq*., took effect, implementing a near total ban on pre-viability abortions in Texas in defiance of nearly fifty years of Supreme Court precedent and the protections enshrined in the United States Constitution. The Supreme Court has made clear that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992); *accord Roe v. Wade*, 410 U.S. 113 (1973). Texas's ban directly conflicts with this well-settled law and subjects abortion providers to ruinous monetary penalties through a civil enforcement

1

scheme uniquely crafted to evade judicial review and to harass abortion providers by subjecting them to enforcement proceedings in which they have no fair prospect of defending themselves.

2.      In an attempt to evade pre-enforcement review, Texas's ban bars government officials—such as district attorneys or the health department—from directly enforcing the prohibition and instead subjects abortion providers to civil actions that can be brought by "[a]ny person," seeking injunctive relief, a statutory penalty of at least $10,000, and costs and attorney's fees.  Tex. Health & Safety Code §§ 171.207(a), 171.208(a)–(b).

3.      The Texas Legislature and the law's proponents intended SB8 to interfere with healthcare providers' provision of abortion care by making it too costly and risky for providers to provide that care. So far, the law has had its desired effect. To date, nearly all Texas abortion providers have ceased providing healthcare prohibited by SB8, leaving women in Texas unconstitutionally deprived of abortion access.

4.      Interpleader Plaintiff Alan Braid, M.D., a licensed physician in Texas who has practiced as an OB/GYN for the past 50 years, is the exception. On September 18, 2021, the Washington Post published an opinion authored by Dr. Braid. In it, he described the difficult experiences his patients have encountered over decades of providing reproductive health care. Dr. Braid explained why, on September 6, 2021, he provided an abortion to a patient in violation of SB8's abortion ban.

5.      Three conflicting SB8 claims have now been asserted against Dr. Braid by three different claimants (the "Interpleader Defendants") from three different states in three different suits, each seeking the same damages award pursuant to SB8 for Dr. Braid's admitted violation on September 6. To SB8's proponents, the likelihood of strangers filing multiple, overlapping lawsuits against a provider is a feature of SB8, and not an accident. However, SB8 provides that,

2

for any given violation, a physician may be required to pay statutory damages only once. The three suits against Dr. Braid thus each assert entitlement to a single damages award; and Dr. Braid asserts that none of them has any right to damages because the law requiring that payment violates the United States Constitution.

6.     Dr. Braid brings this action in the nature of interpleader to determine who among the Interpleader Defendants and Dr. Braid has a right to the contested damages award and to avoid wasteful, vexatious and duplicative litigation and potentially conflicting rulings regarding entitlement to that stake.  Because Dr. Braid challenges the constitutionality of SB8 as a basis for asserting that none of the Interpleader Defendants is entitled to any recovery, he is filing and serving a notice of constitutional question under Fed. R. Civ. P. 5.1 concurrently with this Complaint.

## II.     THE PARTIES

7.     Dr. Braid is an individual residing in San Antonio, Texas and a citizen of Texas for diversity purposes. Dr. Braid is a licensed physician who has been providing reproductive health care, including abortion services, since the 1970s.

8.     Interpleader Defendant Oscar Stilley is an individual residing in Cedarville, Arkansas and a citizen of Arkansas for diversity purposes. On information and belief, Stilley has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

9.     Interpleader Defendant Felipe N. Gomez is an individual residing in Chicago, Illinois and a citizen of Illinois for diversity purposes. On information and belief, Gomez has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

10.     Interpleader Defendant Wolfgang P. Hirczy de Mino, Ph.D., aka Texas Heartbeat Project ("THP"), is an individual who resides in Bellaire, Texas and a citizen of Texas for diversity purposes. On information and belief, THP has no prior connection to Dr. Braid or the patient for whom Dr. Braid provided care on September 6, 2021.

III.    **JURISDICTION AND VENUE**

11.     The Court has jurisdiction because Dr. Braid brings this Complaint for Interpleader and Declaratory Judgment pursuant to 28 U.S.C. §§ 1335, 1397, and 2361, with respect to the parties' competing claims to the $10,000 minimum penalty sought in Interpleader Defendants' respective complaints filed pursuant to SB8, Tex. Health & Safety Code § 171.208(a).

12.     Federal law authorizes Dr. Braid's claim for injunctive relief in 28 U.S.C. §§ 2202 and 2361. Dr. Braid's claim for declaratory relief is authorized by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Dr. Braid's claims for equitable relief are further authorized by the general legal and equitable powers of the Court.

13.     The claimants in this action are of minimally diverse citizenship as required for statutory interpleader actions; the amount in controversy exceeds $500.00; and Dr. Braid will, on the Court's authorization, deposit the amount in controversy with the Court's registry pending this action's resolution.

14.     Venue is proper in this District under 28 U.S.C. § 1397 because this is a civil action of interpleader or in the nature of interpleader under 28 U.S.C. § 1335 and is brought in a judicial district in which Gomez, one of the claimants, resides.

IV.     **FACTS**

    A.      **SB8 Authorizes Individuals to Bring Civil Suit Against Healthcare Providers for Performing Prohibited Abortions.**

    15.    SB8 § 3 added Subchapter H to Chapter 171 of the Texas Health & Safety Code. Newly-added § 171.204(a) of the Texas Health & Safety Code prohibits a physician from "knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child," or failed to perform a test to detect a so-called fetal heartbeat. The statute provides no exception for pregnancies resulting from rape or incest, or for fetal health conditions that are incompatible with sustained life after birth. Rather, the only exception is a very narrow "medical emergency" exception. Tex. Health & Safety Code §§ 171.204(a), 171.205(a).

    16.    SB8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." *Id*. § 171.201(1). Embryonic cardiac activity can typically be detected beginning at approximately six weeks of pregnancy, measured from the first day of a patient's last menstrual period ("LMP"). Consequently, using SB8's "fetal heartbeat" definition, SB8 prohibits nearly all abortions after six weeks, which is before some individuals even learn of their pregnancy, and several months before viability.

    17.    The embryonic cells that produce early cardiac activity described in SB8 have not yet formed a heart. The term "heartbeat" in SB8 thus covers not just a "heartbeat," but also early cardiac activity—more accurately, electrical impulses—present before full development of the cardiovascular system. Similarly, a developing pregnancy is properly referred to as an "embryo" until approximately ten weeks LMP, when it becomes a "fetus." So, despite SB8's use of the phrase "*fetal* heartbeat," the statute forbids abortion even when cardiac activity is detected in an embryo. *See id*. §§ 171.201(1), 171.201(7), 171.204(a) (emphasis added).

18.     No embryo is viable at the first point when cardiac activity can first be detected by ultrasound. Rather, viability generally does not occur until approximately 24 weeks LMP—approximately four months after the cutoff for abortions under SB8.

19.     SB8's enforcement provision empowers "Any person, other than an officer or employee of a state or local governmental entity" in Texas to bring a civil action against a physician who "performs or induces an abortion" in violation of SB8, as well as anyone who "knowingly engag[es] in conduct that aids or abets the performance or inducement of" an abortion that violates the statute, or who "intends" to provide, aid, or abet a prohibited abortion. Tex. Health & Safety Code § 171.208(a)(1)–(2). Liability for aiding and abetting abortion applies "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of" the statute. *Id*. § 171.208(a)(2).

20.     If a claimant prevails in an action brought pursuant to SB8's enforcement provision, a court "shall" award:

> (1)  injunctive relief sufficient to prevent the defendant from violating this subchapter or engaging in acts that aid or abet violations of this subchapter;
>
> (2)  statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter. . . and
>
> (3)  costs and attorney's fees.

*Id.* § 171.208(b)(1)–(3).

21.     Consequently, claimants filing suit pursuant to § 171.208(a) are awarded a minimum of $10,000 if they prevail on their suit. The statute does not set a maximum damages amount. However, while any person in the world may sue under SB8, only one claimant will be entitled to collect the statutory penalty for any given violation of SB8: Under § 171.208(c), a

6

court may not award relief in response to a violation of SB8 if the defendant shows that he or she previously paid statutory damages for that particular abortion performed or induced in violation of SB8.

**B. Interpleader Defendants Filed Competing Suits Against Dr. Braid Alleging That He Violated SB8.**

22.     Dr. Braid is a physician who has been providing reproductive healthcare since 1972. On September 18, 2021, the Washington Post published Dr. Braid's op-ed entitled "Why I Violated Texas's Extreme Abortion Ban." In it, Dr. Braid described his and his patients' experiences and stated, "that is why, on the morning of Sept. 6, I provided an abortion to a woman who, though still in her first trimester, was beyond the state's new limit." Indeed, on September 6, 2021, Dr. Braid provided an abortion to a patient in her first trimester after detecting cardiac activity in the patient's pregnancy.

23.     After the Washington Post published Dr. Braid's opinion piece, three claimants—the Interpleader Defendants—filed competing suits against him, alleging that he provided abortion care in violation of SB8.

24.     Stilley filed his complaint ("Stilley Complaint") captioned *Oscar Stilley v. Alan Braid, MD*, Case No. 2021CI19940, in the 438th Judicial District Court of Bexar County, Texas, on September 20, 2021. A copy of the Stilley Complaint is attached as Exhibit A.

25.     The Stilley Complaint alleges that "On or about September 6, 2021," Dr. Braid performed an abortion and that "[t]he aborted fetus had a detectable heartbeat at the time of the abortion." The Stilley Complaint states that this violated SB8 and seeks "in no case less than the statutory minimum of $10,000," as well as an injunction prohibiting Dr. Braid from further violations of SB8 and costs and fees.

26.     Gomez filed his complaint captioned *Felipe N. Gomez v. Dr. Alan Braid*, Case No. 2021CI19920, in the 224th Judicial District Court of Bexar County, Texas, on September 20, 2021. Gomez then filed an amended complaint ("Gomez Complaint"), adding additional defendants Planned Parenthood, South Austin; the United States; and the State of Texas, on September 23, 2021. A copy of the Gomez Complaint is attached as Exhibit B.

27.     The Gomez Complaint alleges that Dr. Braid performed an abortion "on or about 9.6.21 where his patient was more than 6 weeks pregnant, and/or where the fetus had a detectable heartbeat, which Sec. 171.208(a)(1) declares is illegal." The Gomez Complaint cites to § 171.208, the enforcement provision of SB8 that provides that the court "shall award" injunctive relief, a minimum $10,000 damages payment for each violation, and costs and fees to a successful claimant.

28.     THP filed its complaint ("THP Complaint") captioned *Texas Heartbeat Project v. Alan Braid, M.D.*, Cause No. 21-2276-C, on September 22, 2021 in the 7th Judicial District Court of Smith County, Texas. A copy of the THP Complaint is attached as Exhibit C.

29.     The THP Complaint alleges that "before September 19, 2021, Defendant ALAN BRAID, M.D., knowingly performed an abortion in violation of SB8 and subsequently disclosed and/or publici[z]ed that fact. . ." The THP Complaint seeks a $10,000 statutory damages payment. While the THP Complaint does not identify September 6 as the date of the alleged abortion, the September 6 abortion is the only abortion that Dr. Braid performed after the effective date of SB8 and "disclosed and/or publici[z]ed" before September 19, 2021. Additionally, THP served a Request for Admission concurrently with his Complaint requesting an admission that "on or about September 6, 2021 you performed or induced an abortion on a patient after you detected cardiac activity in the fetus/embroy/unborn [sic] child in that patient's

womb." Ex. C at 6. On information and belief, the THP Complaint seeks damages for Dr. Braid's performance of the September 6 abortion.

### C. An Interpleader Action Is Required to Resolve Conflicting Claims and to Avoid Duplicative Proceedings.

30. Each of the Interpleader Defendants, through their respective complaints (Exs. A–C), assert entitlement to a statutory damages payment for the abortion Dr. Braid disclosed performing on September 6, 2021. However, pursuant to § 171.208(c), Dr. Braid can only be required to pay the penalty in response to <u>one</u> claimant's suit and can assert that payment to one claimant as a defense to any other suits seeking damages for the September 6 abortion.

31. SB8 violates the United States Constitution in light of, *inter alia*, the rights guaranteed under *Roe v. Wade*, 410 U.S. 113 (1973), and Dr. Braid is entitled to avoid or keep any payment allegedly owed for his violation of SB8.

32. At least three claimants—the three Interpleader Defendants—each assert entitlement to the statutory damages payment for Dr. Braid's performance of the September 6 abortion, and Dr. Braid asserts that he is entitled to retain that money. Dr. Braid also faces a real risk of additional claimants, particularly in light of his highly publicized statements regarding the September 6 abortion and the fact that SB8 has a four-year statute of limitations, allowing for suits over this single act well into the future. Pursuant to § 171.208(c), only one claimant can collect the payment; Dr. Braid asserts that none can.

### D. The Texas State Legislature Designed SB8 to Avoid Judicial Review Despite the Statute's Use of Judicial Officers to Implement Constitutional Violations.

33. The Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), establish that a state may not prohibit abortion before viability, and nearly 50 years of unbroken precedent has reaffirmed this

principle. Before SB8, courts have uniformly invalidated every state law that bans abortion at a point in pregnancy prior to viability.

34.     In light of SB8's clear violation of constitutionally protected rights, the Texas State Legislature has attempted to insulate SB8 from judicial review by shifting enforcement from the state to private citizens. SB8 thus does not provide for direct enforcement by law enforcement officials (and indeed purports to prohibit it), but instead deputizes private citizens to act as bounty hunters and sue any person whom the claimant believes has provided or aided or abetted an abortion in violation of the statute—or whom the claimant believes "intends" to do so.

35.     Public statements by SB8's drafters and supporters confirm that the intent behind the law was to "insulate the State from responsibility for implementing and enforcing the regulatory regime," *Whole Woman's Health v. Jackson*, 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021) (Roberts, C.J., dissenting). For example, the legislative director of Texas Right to Life stated that one of the "main motivations" for SB8's design is to block judicial review. *See* Emma Green, What Texas Abortion Foes Want Next, The Atlantic (Sept. 2, 2021), https://www.theatlantic.com/politics/archive/2021/09/texas-abortion-ban-supreme-court/619953/ (asserting that S.B. 8 was crafted out of "frustrat[ion]" with courts that "block[] pro-life laws because they think they violate the Constitution or pose undue burdens") (last visited Sept. 29, 2021).

36.     One of the attorneys principally involved in advising Texas on SB8 stated: "It is practically impossible to bring a pre-enforcement challenge to statutes that establish private rights of action, because the litigants who will enforce the statute are hard to identify until they actually bring suit." Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va. L. Rev. 933,

1001 n.270 (2018), https://www.virginialawreview.org/wp-content/uploads/2020/12/Mitchell_Online.pdf (last visited Sept. 29, 2021).

37.  And Texas State Senator Bryan Hughes, one of the principal architects of SB8 in the Texas Legislature, confirmed this purpose when he informed reporters that he structured SB8 to avoid the fate of other "heartbeat" bills that have been struck down as unconstitutional. *See* Jacob Gershman, Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea, The Wall Street Journal (Sept. 4, 2021, 9:38 A.M.), https://www.wsj.com/articles/behind-texasabortion-law-an-attorneys-unusual-enforcement-idea-11630762683 (last visited Sept. 9, 2021). Senator Hughes made the point succinctly: "We were going to find a way to pass a heartbeat bill that was going to be upheld." *Id*. Senator Hughes elsewhere deemed the statute a "very elegant use of the judicial system." Jenna Greene, Column: Crafty lawyering on Texas abortion bill withstood SCOTUS challenge, Reuters (Sept. 5, 2021, 1:52 P.M.), https://www.reuters.com/legal/government/crafty-lawyering-texas-abortion-bill-withstood-scotus-challenge-greene-2021-09-05/ (last visited Sept. 29, 2021).

38.  While Texas has gone to unprecedented lengths to hide its attack on constitutionally protected rights behind a nominally private cause of action, it nonetheless has compelled its judicial branch to serve an enforcer's role. "It is doubtless true that a State may act through different agencies," including "its legislative, its executive, or its judicial authorities; and the prohibitions of the amendment extend to all actions of the State denying equal protection of the laws, whether it be action by one of these agencies or by another." *Virginia v. Rives*, 100 U.S. 313, 318 (1879). Awarding the monetary relief that SB8 authorizes (to plaintiffs who need not demonstrate any injury or other connection to the underlying abortion procedure) constitutes state activity designed to violate the Fourteenth Amendment rights of women in Texas. "That the

11

action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of th[e] [Supreme] Court." *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948). The Texas Legislature's attempt to distance government actors from any enforcement of its unconstitutional ban on pre-viability abortions, and thus to evade judicial review, ignores that judicial officers are government actors, too.

39. Additionally, under the state-action doctrine, private actors may be found to function as agents or arms of the state itself and thus are bound by the Constitution's restrictions on state action. *See, e.g., Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). SB8 vests individuals with law-enforcement authority—a power traditionally reserved exclusively to a sovereign—in a manner that appears to be "unprecedented," *Whole Woman's Health v. Jackson*, 2021 WL 3910722, at *2 (Roberts, C.J., dissenting). Among other things, SB8 grants individuals with unsupervised authority to police SB8 violations, and enables them to obtain so-called statutory damages against violators without any showing of personal injury or even connection to an SB8 lawsuit.

40. These individuals are also state actors to the extent they are significantly involved in conduct that would be unconstitutional if engaged in by the state itself or where Texas has sanctioned their conduct. *See, e.g., Reitman v. Mulkey*, 387 U.S. 369, 380-81 (1967) (finding state action where law "authorize[d] . . . racial discrimination in the housing market"). SB8 implicates this doctrine by expressly authorizing—indeed, empowering—individuals to engage in conduct that violates the constitutional rights of women throughout Texas when the state, itself, could not.

**E. The Unique Enforcement Mechanisms and Procedures Provided in SB8 Weight Actions Brought Under the Statute Heavily Against Providers.**

41.     SB8 provides for enforcement mechanisms that differ significantly from those that typically apply to Texas litigants and which heavily tilt SB8 lawsuits strongly toward claimants. While the law contemplates that enforcement actions will be initiated by private actors, SB8's enforcement proceedings use Texas courts to enforce this unconstitutional law while imposing significant and unique burdens on defendants. These burdens help insulate SB8 plaintiffs from any costs or consequences of bringing suit, furthering the likelihood that defendants will face multiple, vexatious litigations over a single potential damages award.

42.     Venue in Texas usually lies only where the events giving rise to a claim took place or where the defendant resides, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), and a Texas state court may generally transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice," *id.* § 15.002(b).

43.     SB8 diverges from the general venue rules applicable in Texas. It allows "any person" to file an enforcement action in *their own* county of residence (if they are a Texas resident) and then block transfer to a more appropriate venue. *See* Tex. Health & Safety Code § 171.210(a)(4) (permitting suit in the claimant's county of residence if "the claimant is a natural person residing in" Texas); *id*. § 171.210(b) (providing that SB8 "action may not be transferred to a different venue without the written consent of all parties"). The claimant filing an enforcement action need not have any connection whatsoever to the defendant named in their suit—indeed, here, three claimants with no link to either Dr. Braid, the patient for whom he provided care, or to any patient of Dr. Braid's generally, filed separate enforcement actions in different counties after learning about the September 6 abortion from media outlets. As a result

of SB8's unique venue provision, abortion providers such as Dr. Braid may need to defend themselves in multiple, simultaneous enforcement proceedings in courts across the state.

44.     SB8 creates further imbalance by providing for one-way fee shifting in favor of SB8 claimants. Anyone who successfully brings a claim under the statute is entitled to recover costs and attorney's fees.  Yet defendants sued under SB8 cannot be awarded costs or attorney's fees if they prevail, regardless of how many times the defendant may have been sued or how meritless the claimant's suit may be in light of its contravention of federal law. *Id.* §§ 171.208(b)(3), 171.208(i).

45.     SB8 rigs proceedings against defendants in an astonishing manner by purporting to bar defendants from raising certain defenses. These include (1) that the defendant believed the law was unconstitutional; (2) that they relied on a court decision, later overruled, that was in place at the time of the acts underlying the suit; or (3) that the patient consented to the abortion. *Id.* § 171.208(e)(2), (3), (6). The statute also purports to prohibit defendants from asserting non-mutual issue or claim preclusion, or from relying as a defense on any other "state or federal court decision that is not binding on the court in which the action" was brought. *Id.* § 171.208(e)(4), (5). These provisions, not typically found in Texas legislation, are plainly intended to chill the provision of constitutionally protected services by making suits under SB8 uniquely difficult to defend such that a filed action is all but assured to lead to liability, with multiple, ruinous and vexatious litigation along the way.

46.     SB8 similarly contains a provision applying draconian, one-way fee-shifting measures to deter legal challenges to Texas abortion restrictions, including SB8, penalizing anyone who tries to bring such a challenge. Tex. Civ. Prac. & Rem. Code § 30.022 (this provision is the codification of SB8 § 4). Under this provision, anyone who seeks declaratory or

injunctive relief from enforcement of SB8 or any other "law that regulates or restricts abortion" can be forced to pay the attorney's fees of the party defending the restriction unless they win on *every* claim they bring. *Id*. If a court dismisses a claim brought by the law's challenger, regardless of the reason, or enters judgment in the other party's favor on that claim, the party defending the abortion restriction is deemed to have "prevail[ed]." *Id*. Even if a court enjoins the challenged abortion restriction, so long as the party defending the restriction prevails on a single claim—for instance, if the court rejects one claim pleaded in the alternative or dismisses another rendered moot by circumstance—the challenger and their attorney will be liable for the proponent's attorney's fees. No other law in Texas awards attorney's fees to the losing party or makes a party's own attorney jointly and severally liable for those fees.

47.     SB8 further treats abortion providers differently from other civil defendants by creating new rules of statutory construction and severability that only apply to state abortion laws and regulations. Tex. Health & Safety Code §§ 171.206, 171.212.

48.     The Texas Legislature's efforts to tip SB8 cases in claimants' favor have resulted in a statute that attempts to rewrite federal law. Under a consistent line of Supreme Court cases, states may regulate abortion services provided prior to viability, but they may not ban abortions. *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 269 (5th Cir. 2019), *cert. granted*, No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021). To determine the constitutionality of a state's abortion regulations, the Court has articulated an undue-burden balancing standard. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877–78 (1992). But as every court to consider a similar ban, including the Fifth Circuit, has concluded, a ban at six weeks can never survive constitutional review. *Jackson Women's Health Org. v. Dobbs* ("Jackson Women's II"), 951 F.3d 246, 248 (5th Cir. 2020) (striking six-week ban because "cardiac activity can be detected

well before the fetus is viable [and] [t]hat dooms the law"). Despite this precedent holding that pre-viability bans necessarily impose an undue burden, SB8 requires state courts to evaluate the burden anew *in every case* as part of an "affirmative defense" in enforcement actions—and even then would fundamentally "limit[]" that test. S.B. 8 § 171.209(c), (d).

49. SB8 additionally directs state-court judges to ignore judgments and injunctions issued by federal courts, for example, by telling state courts to refuse to apply non-mutual collateral estoppel based on such judgments, and by mandating that they ignore whether a federal injunction expressly permitted activity by an abortion provider or other person sued in SB8 proceedings. Tex. Health & Safety Code § 171.208(e)(4), (5). In this manner too SB8 attempts to overrule federal authority via state law.

### FIRST CLAIM FOR RELIEF

### (Interpleader)

50. Dr. Braid incorporates by reference the allegations in the above paragraphs.

51. The Interpleader Defendants and Dr. Braid assert conflicting claims to the statutory damages mandated by SB8 for Dr. Braid's performance of the September 6 abortion procedure. Dr. Braid cannot determine which of Interpleader Defendants is entitled to the statutory damages, as he believes none of them, or at most one of them, is entitled to those funds.

52. Continued litigation of Interpleader Defendants' conflicting claims in separate courts will potentially expose Dr. Braid to conflicting judgments. It will further waste party and judicial resources, as Dr. Braid will be forced to defend simultaneously multiple actions over a single damages award.

53. In the event one or more of Interpleader Defendants' claims are resolved, Dr. Braid will nevertheless be exposed to potential further vexatious litigation in light of his well-

publicized decision to violate SB8's provisions and the expansive enforcement mechanism allowing "any person" to sue for redress. While SB8 prohibits awarding the same statutory penalty for any given abortion more than once, the fact of prior payment is a defense to a lawsuit, not a bar to a new claimant initiating one. Dr. Braid may thus be forced to defend against multiple actions for the next four years, in addition to the three lawsuits he faces today.

54.     Dr. Braid will, on authorization from the Court, deposit the contested funds with the registry of the Court.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment – Fourteenth Amendment Substantive Due Process Defense)

55.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

56.     The Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), and decades of subsequent precedent, provide a constitutionally protected right to terminate a pregnancy before viability.

57.     SB8 prohibits pre-viability abortion when a "fetal heartbeat," as defined in the statute, is detectable. This occurs months before viability. SB8 consequently violates the substantive due process rights of Dr. Braid's patients to pre-viability abortion, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

58.     SB8 mandates that Texas's state judicial officers participate in and facilitate constitutional violations by requiring them to dispense remedies pursuant to SB8 that undeniably burden constitutionally protected rights.

59.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot not be subject to any other damages or injunction associated with the care he provided on

September 6, because SB8 is void for being in violation of the United States Constitution's substantive due process guarantee.

### THIRD CLAIM FOR RELIEF

**(Declaratory Judgment – Fourteenth Amendment Equal Protection Defense)**

60.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

61.     The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, thereby requiring the law to treat similarly situated persons in the same manner.

62.     SB8 treats abortion providers—and people who "aid or abet" the constitutionally protected right to abortion or "intend" to do so—differently from all other defendants in civil litigation in Texas.

63.     SB8 alters the procedural rules and limits the substantive defenses and arguments available to defend against suits filed under SB8, thereby singling out SB8 defendants for different treatment in violation of the United States Constitution's equal protection clause based solely on aiding patients in exercising a constitutional right. SB8's venue and fee-shifting provisions, its contemplation of claimants without any connection to an abortion, its elimination of defenses and arguments, and its attempt to rewrite federal law, each individually and in concert with one another subject SB8 defendants to disparate treatment.

64.     SB8's discriminatory enforcement provisions serve no legitimate government interest. Rather, they are animated by animus and are designed to burden the exercise of constitutional rights. SB8's enforcement provisions are also not narrowly tailored. On the contrary, they allow for broad enforcement by any person in the world against any person who provides, or aids and abet, or intends to do any of those things, without inquiry into actual harm

caused or other attendant circumstances. SB8's enforcement scheme consequently violates Dr. Braid's equal protection rights.

65.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6, because SB8 is void for violating the United States Constitution's equal protection clause.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment – Fourteenth Amendment Void for Vagueness Defense)

66.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

67.     SB8 imposes quasi-criminal penalties on persons who provide an abortion in violation of the statute's terms, aids or abets an abortion that violates those terms, or intends to do these things. These penalties include a punitive minimum damages award of $10,000, without any showing of harm and no maximum; an injunction prohibiting a provider from providing abortion care; and a requirement that the defendant pay costs and attorneys' fees.

68.     A law that imposes quasi-criminal penalties is void for vagueness, and thus violates the federal guarantee of due process, if it authorizes or encourages arbitrary and discriminatory enforcement, or fails to provide fair warning of its prohibitions so that ordinary people may conform their conduct accordingly.

69.     SB8 empowers arbitrary and discriminatory enforcement in violation of the Constitution by authorizing private individuals to enforce state law in violation of clearly established constitutional rights. Its terms incentivize plaintiffs to force abortion care providers—or even individuals a claimant believes "intend" to provide or assist an abortion—into court to

defend themselves, and to do so without the legal, procedural, and practical controls that might provide some check on government enforcement.

70.     SB8 fails to adequately inform regulated parties or potential claimants of what conduct the statute prohibits. Under SB8's terms, defendants may be held liable for violating the statute if a court decision permitting their conduct at the time it occurred is later overruled on appeal or by a subsequent court. Tex. Health & Safety Code § 171.208(e)(3). Similarly, under SB8, aiding-and-abetting liability may attach "regardless of whether [a] person knew or should have known that the abortion" they aided "would be performed or induced in violation" of the statute's ban. *Id.* § 171.208(a)(2). And the statute does not limit what conduct may constitute "aiding or abetting" a violation, leaving yet further questions as to what is prohibited. It does, however, provide liability for aiding or abetting a prohibited abortion—including by paying for it—"regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter." Imposing quasi-criminal penalties under such circumstances compounds the statute's failure to provide notice of what is prohibited.

71.     In all of these circumstances, the only way for people to ensure they do not run afoul of SB8 is by refusing to perform or assist with any abortion (or "intend" to do either)—though in light of the arbitrary enforcement mechanism allowing for any citizen to bring suit based on a defendant's perceived "intent," it is not clear how healthcare providers can ever ensure they will avoid suit. Due process does not permit such uncertainty, particularly where, as here, the challenged law threatens to inhibit the exercise of constitutionally protected rights.

72.     Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on

September 6, because SB8 is void for vagueness under the Fourteenth Amendment of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment – Federal Preemption Defense)

73.     Dr. Braid incorporates by reference the allegations in the above paragraphs.

74.     The United States Constitution is the supreme law of the land, and the Supreme Court is the final arbiter of its meaning. State statutes inconsistent with rights conferred by the United States Constitution or other federal law must give way. SB8 defies this core principle undergirding the rule of law.

75.     SB8's terms require the defendant in an enforcement action to affirmatively prove that an award of relief in that action will impose an undue burden in order for that defendant to argue that the statute's terms violate the constitutional right to abortion. This conflicts with the Supreme Court's constitutional precedents, which hold that states may not prohibit pre-viability abortions and that the undue burden test should not be applied on a case-by-case basis in the face of such a ban.

76.     SB8's terms also disregard and purport to redefine the undue-burden standard articulated by the U.S. Supreme Court, in conflict with the Supreme Court's constitutional precedents, specifying the limited circumstances under which a court may find an undue burden and purporting to prohibit certain arguments to establish burden. Tex. Health & Safety Code § 171.209(c)–(d).

77.     SB8 additionally directs state-court judges to ignore judgments and injunctions issued by federal courts, *id.* § 171.208(e)(4), (5), contrary to decades of U.S. Supreme Court precedent. States cannot simply give federal-court judgments in federal-question cases "whatever

effect they would give their own judgments," but instead "must accord them the effect" that federal law provides. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001).

78. SB8 violates the Supremacy Clause and is preempted because it is contrary to the Fourteenth Amendment to the U.S. Constitution.

79. Dr. Braid is entitled to declaratory judgment that he is entitled to retain the contested statutory damages award associated with the September 6 abortion, and that he cannot be subject to any other damages or injunction associated with the care he provided on September 6, because SB8 conflicts with U.S. Supreme Court interpretations of the federal constitution that confer clear rights on Dr. Braid and his patients.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment - First and Fourteenth Amendments, Freedom of Speech and the Right to Petition)

80. Dr. Braid incorporates by reference the allegations in the above paragraphs.

81. Section 4 of SB8, codified at Texas Civil Practice & Remedies Code § 30.022, would make Dr. Braid and his attorneys jointly and severally liable to pay the costs and attorney's fees of any other party to this litigation if the Court either dismisses Dr. Braid's claim for such equitable relief or enters judgment in that party's favor. Asserting these equitable remedies as part of his defense against Interpleader Defendants' claims is a means for Dr. Braid and his attorneys to achieve a lawful objectives through the court system and serves as a form of political expression.

82. Under § 30.022, only litigants seeking to block the enforcement of laws that "regulate[] or restrict[] abortion" or laws that provide funding to entities who "perform or promote" abortion are punished for taking a particular litigation position. In contrast, SB8 does

not impose a penalty on litigants whose goal is to uphold such laws, or who challenge laws that expand access to abortion or provide funding to abortion providers or advocates.

83.     In both its purpose and effect, § 30.022 is a viewpoint- and content-based restriction on Dr. Braid's expression in petitioning this Court. By threatening Dr. Braid and his attorneys with massive liability for fees and costs, § 30.022 necessarily chills the exercise of rights to free speech and to petition protected by the First Amendment.

## V.     PRAYER FOR RELIEF

WHEREFORE, Interpleader Plaintiff Alan Braid, M.D., requests that the Court enter an order or judgment against Interpleader Defendants including the following:

a.     Authorizing Dr. Braid to deposit the contested minimum damages amount of $10,000 to the registry of the Court;

b.     Determining who among the parties is entitled to the statutory damages award associated with a successful suit against Dr. Braid for his performance of the September 6 abortion, or any part of that award;

c.     Restraining all claimants from instituting or prosecuting any proceeding in any State or United States court affecting the contested damages award until further order of the Court;

d.     Discharging Dr. Braid of any further liability under SB8 for the care he provided to his patient on September 6;

e.     Declaring that Dr. Braid's conduct does not support imposition of an injunction restraining Dr. Braid's ability to provide abortion care;

f.     Declaring the Texas Heartbeat Act, §§ 171.201 *et seq*., unconstitutional;

g.     Awarding Dr. Braid costs and reasonable attorney's fees; and

h.    Granting any further relief as may be just and proper under the circumstances of

this case.

Dated: October 5, 2021

Respectfully submitted,

*/s/ Suyash Agrawal*

| | | |
|---|---|---|
| Suyash Agrawal | Marc Hearron* | Neal S. Manne* |
| Alethea Anne Swift | CENTER FOR | Mary Kathryn Sammons* |
| MASSEY & GAIL LLP | REPRODUCTIVE RIGHTS | Abigail C. Noebels* |
| 50 E. Washington Street | 1634 Eye St., NW | Katherine Peaslee* |
| Suite 400 | Suite 600 | Richard W. Hess* |
| Chicago, Illinois 60602 | Washington, DC 20006 | SUSMAN GODFREY LLP |
| (312) 283-1590 | (202) 524-5539 | 1000 Louisiana Street |
| sagrawal@masseygail.com | mhearron@reprorights.org | Suite 5100 |
| aswift@masseygail.com | | Houston, TX 77002 |
| | Molly Duane* | (713) 653-7827 |
| | CENTER FOR | nmanne@susmangodfrey.com |
| | REPRODUCTIVE RIGHTS | ksammons@susmangodfrey.com |
| | 199 Water Street | anoebels@susmangodfrey.com |
| | 22nd Floor | kpeaslee@susmangodfrey.com |
| | New York, NY 10038 | rhess@susmangodfrey.com |
| | (917) 637-3631 | |
| | mduane@reprorights.org | Shannon Rose Selden* |
| | | Meredith E. Stewart* |
| | | Ebony Ray* |
| | | DEBEVOISE & PLIMPTON LLP |
| | | 919 Third Ave. |
| | | New York, NY 10022 |
| | | (212) 909-6000 |
| | | srselden@debevoise.com |
| | | mestewart@debevoise.com |
| | | eray@debevoise.com |

*Counsel for Interpleader Plaintiff Alan Braid, M.D.*
*Application for admission *pro hac vice* forthcoming